**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KARMEL AL HAJ and<br>TIMOTHY A. WOODHAMS, individually<br>and on behalf of all others similarly situated,<br>    Plaintiffs,<br>v.<br><br>PFIZER INC.,<br>    Defendant. | ORAL ARGUMENT REQUESTED<br><br><br><br>Case No. 1:17-cv-06730<br><br>Judge: Honorable Gary Feinerman<br>Magistrate: Honorable Susan E. Cox |

**<u>DEFENDANT PFIZER INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE CLAIMS OF KARMEL AL HAJ</u>**

This lawsuit is a quintessential example of the excesses of consumer litigation. Plaintiff Karmel Al Haj contends that Maximum Strength Robitussin Cough+Chest Congestion DM ("Maximum Strength Robitussin") is misleadingly advertised as stronger than Regular Strength Robitussin Cough+Chest Congestion DM ("Regular Strength Robitussin"), even though plaintiff's own allegations make clear that *a dose* of Maximum Strength Robitussin delivers more active ingredient – specifically, more guaifenesin, an expectorant – than *a dose* of Regular Strength Robitussin. According to plaintiff, the description "Maximum Strength Robitussin" is nonetheless misleading because, in essence, a *bottle* of Maximum Strength Robitussin costs more than the same size bottle of Regular Strength Robitussin, but contains fewer doses. Plaintiff fails to state a plausible claim for relief for several reasons.

*First*, plaintiff's claims under the consumer fraud statutes of New Jersey and other states necessarily fail because the governing choice-of-law principles provide that his claims are governed by Illinois law.

*Second*, plaintiff's claim under the Illinois Consumer Fraud Act ("ICFA") fails because he has not pled the required elements of such a claim. Specifically, his claims of misrepresentation fail as a matter of law because the same Robitussin packaging he maligns expressly and accurately discloses dose amounts, including the dosing volume and the amount of active ingredients in each dose. Nor has he sufficiently pled causation because, although he claims that the Maximum Strength Robitussin label was somehow misleading, he does not allege that he ever actually read the label or any related advertising, or how it deceived him personally. And his claims are in any event barred because Pfizer's conduct was "specifically authorized" by federal law and therefore cannot give rise to a claim under the ICFA.

*Third*, Mr. Al Haj's unjust enrichment claim is barred because it is premised on the same

alleged misconduct as his failed consumer fraud claims.

## BACKGROUND

Plaintiff Al Haj, an Illinois resident, and plaintiff Woodhams, a Michigan resident, allegedly purchased Maximum Strength Robitussin in their respective home states. (Compl. ¶¶ 8, 9.)[1] Both Maximum Strength Robitussin and Regular Strength Robitussin contain two active ingredients: dextromethorphan hydrobromide ("DXM Hbr"), a cough suppressant, and guaifenesin, an expectorant. (*Id.* ¶¶ 11-13, 15.)

According to the Complaint, a dose of Maximum Strength Robitussin contains 20 mg of DXM Hbr and ***400 mg*** of guaifenesin, and may be taken once every four hours, up to six times every 24-hour period. (*Id.* ¶¶ 27-28.) This is the highest dose for each active ingredient permitted by FDA regulations governing over-the-counter cough-and-cold medications. *See* 21 C.F.R. § 341.74(d)(1)(iii) (specifying dosage for DXM Hbr); *id.* § 341.78(d) (specifying dosage for guaifenesin). A dose of Regular Strength Robitussin also contains 20 mg of DXM Hbr, but only ***200 mg*** of guaifenesin, and also may be taken once every four hours, up to six times every 24-hour period. (*Id.* ¶¶ 25-26.) As such, Al Haj affirmatively pleads that Maximum Strength Robitussin delivers more guaifenesin per dose than Regular Strength Robitussin.

Al Haj nevertheless alleges that the labeling on Maximum Strength Robitussin is deceptive because one dose of Maximum Strength Robitussin has a higher volume than one dose of Regular Strength Robitussin: ***20 ml*** versus ***10 ml*** for Regular Strength Robitussin. (*See id.*) In other words, a consumer who follows the dosing instructions would take four teaspoons of Maximum Strength Robitussin every four hours versus two teaspoons of Regular Strength

---

[1] The Court lacks personal jurisdiction over plaintiff Woodhams' claims because he is a resident of Michigan and his claims do not relate to or arise from any conduct of Pfizer in the state of Illinois, as set forth in Pfizer's separate motion to dismiss Mr. Woodhams' claims for lack of personal jurisdiction.

2

Robitussin. As a result, there are fewer doses in a bottle of Maximum Strength Robitussin than the same size bottle of Regular Strength Robitussin.

All of this information – the amount of active ingredient per dose, as well as the volume of each dose – is expressly disclosed in the FDA-designated areas of the drug labeling. *See generally* 21 C.F.R. § 201.66.[2]

The Maximum Strength Robitussin label provides as follows (with circles for emphasis):

 

(*See* Decl. of Gregory S. Bailey ("Bailey Decl."), Ex. 1.)

By contrast, the Regular Strength Robitussin label provides as follows (with circles added for emphasis):

---

[2] Although plaintiffs failed to include the labels in their Complaint, the labels are properly considered on a motion to dismiss in this context, because they are part of the same product packaging that is alleged to be misleading and are therefore "referred to in the plaintiff's complaint and central to [his] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Gubala v. CVS Pharm., Inc.*, No. 14 C 9039, 2015 WL 3777627, at *2 n.3 (N.D. Ill. June 16, 2015) (considering label on motion to dismiss).

3



(*See id.* Ex. 2.)

Plaintiff Al Haj's claim that the Maximum Strength Robitussin label is misleading because *a bottle* of "Regular Strength Robitussin actually contains *more* or the same amount of the active ingredients than Maximum Strength Robitussin" (Compl. ¶ 30) does not address the fact that consumers take Robitussin (of any variety) *by the dose*, not *by the bottle*, or that dosing requirements may vary from one product to the next. Moreover, to the extent plaintiff is suggesting that a consumer could save money if he or she were advised to buy Regular Strength Robitussin and simply double the dose, that suggestion is contradicted by the labeling – and would violate federal regulations – because doing so would provide double the maximum allowable amount of cough suppressant per dose for products that can be taken every four hours, as acknowledged in the complaint. (*See* Compl. ¶ 14 (recognizing that the recommended dose of DXM Hbr is 10 to 20 mg every 4 hours, with a daily maximum of 120 mg).) *See also* 21 C.F.R. § 341.74(d)(1)(iii) (setting that limitation by regulation). Notably, FDA regulations specific to cold and cough medicines that combine active ingredients *squarely prohibit* directions that

4

would lead the consumer to "exceed any maximum dosage limits established for the individual ingredients." 21 C.F.R. § 341.85(d).

Plaintiff asserts causes of action for consumer fraud in violation of the New Jersey Consumer Fraud Act ("NJCFA") (*see id.* ¶¶ 47-54); consumer fraud in violation of state consumer protection acts (*see id.* ¶¶ 55-59); and unjust enrichment (*see id.* ¶¶ 60-66).

## ARGUMENT

In order "[t]o survive a motion to dismiss [for failure to state a claim under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plaintiff Al Haj's claims for consumer fraud are also subject to the heightened pleading requirements of Rule 9(b), which provide that claims sounding in fraud must be pled with particularity. *See, e.g.*, *Melecio v. Kia Motors Corp.*, No. 05 C 3599, 2005 U.S. Dist. LEXIS 27048, at *6 (N.D. Ill. Nov. 9, 2005) (dismissing claim under the Illinois Consumer Fraud Act for lack of particularity under Rule 9(b)). The Seventh Circuit has explained that the particularity requirement requires the plaintiff to plead "the who, what, when, where, and how" of the alleged fraud. *Banks v. Kale*, No. 13-cv-1336-JPG-PMF, 2014 U.S. Dist. LEXIS 95350, at *8 (S.D. Ill. July 14, 2014) (citation omitted).

As set forth more fully below, Mr. Al Haj's claims fail under these standards for a number of reasons.

5

**I.      MR. AL HAJ'S CLAIM FOR VIOLATION OF THE NJCFA (COUNT I) FAILS BECAUSE HIS ALLEGATIONS ARE GOVERNED BY ILLINOIS LAW.**

Mr. Al Haj's cause of action under the NJCFA should be dismissed because the law of Illinois – not New Jersey – governs his claims. In diversity cases, a federal court must apply the forum state's choice-of-law rules in determining the applicable substantive law. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006). Illinois follows the choice-of-law analysis of the Restatement (Second) of Conflict of Laws, which adheres to the "most significant relationship" test. Under that test, "[w]hen the plaintiff has suffered pecuniary harm on account of [a plaintiff's] reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received," that state's law generally governs unless some other state has a more significant relationship. *See* Restatement (Second) of Conflict of Laws § 148 (1971); *see also Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007) ("[U]nder Illinois choice-of-law rules, the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue.") (citation omitted).

"According to § 148(1) of the Restatement, where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies." *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010). As such, courts applying the "most significant relationship" test have repeatedly found that the consumer protection laws of a consumer's home state – i.e., the state where he or she likely purchased the product at issue – applies to his or her claims. *See, e.g.*, *id.* ("[A]pplying Illinois' choice-of-law rules leads to the application of each state's consumer protection laws."); *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL

6

1196990, at *37 (N.D. Ill. Mar. 31, 2017) ("[T]he State with the strongest interest in regulating such conduct is the State where the consumers – the residents protected by *its consumer-protection laws* – are harmed by it.") (citation omitted); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("If recovery for . . . consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters.").

Further, courts applying the "most significant relationship" test have repeatedly rejected the argument that the law of the defendant's home state or states can be applied to consumer fraud claims of consumers who reside elsewhere in the country. *See, e.g.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208-09 (3d Cir. 2013) (applying the Restatement § 148 to determine that plaintiff's "home state, in which he received and relied on [the defendant]'s alleged fraud, ha[d] the 'most significant relationship' to his consumer fraud claim"); *Warm Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380 (JLL), 2010 WL 1424014, at *4 (D.N.J. Apr. 8, 2010) (applying the Restatement § 148 and finding that plaintiff's "consumer fraud claim bears the most significant relationship to Illinois" where the plaintiff was "an Illinois resident, who purchased the [product] in Illinois, for use in Illinois"); *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (holding that under the Restatement, the plaintiff, "who purchased the television in his home state of Arizona, [was] not entitled to sue under the New Jersey consumer fraud statute" because "[t]he transaction in question b[ore] no relationship to New Jersey other than the location of [the defendant]'s headquarters"); *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1365-66 (S.D. Fla. 2007) ("[the Restatement] persuades this [c]ourt that it should apply the law of the state in which each [p]laintiff rented a vehicle, rather than the law of New Jersey, the state in which [the defendant]

7

is headquartered").

Pursuant to these principles, the law of Illinois – Mr. Al Haj's home state and the place where he presumably purchased the Maximum Strength Robitussin product at issue (*see* Compl. ¶ 8) – governs his claim.[3] Accordingly, Mr. Al Haj's claims under the NJCFA must be dismissed. *See Maniscalco*, 709 F.3d at 211 (affirming the district court's finding that the plaintiff's claims under the NJCFA failed as a matter of law where the applicable choice-of-law principles demonstrated that the law of the plaintiff's home state of South Carolina governed his consumer fraud allegations).

## II. MR. AL HAJ'S CLAIMS FOR VIOLATIONS OF STATE CONSUMER PROTECTION ACTS (COUNT II) FAIL BECAUSE MR. AL HAJ HAS NOT SUFFICIENTLY PLED A CAUSE OF ACTION.

In addition to his NJCFA claim, Mr. Al Haj alleges a cause of action under the consumer fraud acts of all 50 states and the District of Columbia. As set forth above, however, his claims are governed solely by the law of Illinois; therefore, he cannot state a claim under any other state's consumer fraud statute. Further, Mr. Al Haj's claim under the ICFA also fails because: (1) he has not sufficiently alleged a misrepresentation; (2) he has not adequately pled causation; and (3) his claims are barred by the ICFA's safe-harbor provision for statements "specifically authorized" by federal law.

### A. Mr. Al Haj Has Not Sufficiently Alleged Deception.

Mr. Al Haj's ICFA claim is insufficiently pled because he has not made any plausible allegation of deceptive conduct; to the contrary, he has only alleged that the Maximum Strength Robitussin packaging, taken in its "totality," accurately states dosing information that incontrovertibly establishes that one dose of Maximum Strength Robitussin is stronger – i.e.,

---

[3]     Application of New Jersey law would be especially inappropriate here because Pfizer's home state is New York, not New Jersey, making New Jersey's connection to the dispute even more attenuated.

8

contains more medicine – than one dose of Regular Strength Robitussin.

Under the ICFA, "a plaintiff must allege conduct that plausibly could deceive a reasonable consumer." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, No. 16 C 5802, 2017 WL 3642076, at *4 (N.D. Ill. Aug. 24, 2017) (Feinerman, J.); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("To prevail on their consumer fraud claims . . . Plaintiffs must establish that [the] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances."). It "is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 2017 WL 3642076, at *5 (quoting *Fink*, 714 F.3d at 741).

For purposes of state consumer protection statutes, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The "allegedly deceptive act must be looked upon in light of the ***totality of the information*** made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) (emphasis added); *see also Fink*, 714 F.3d at 742 ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial . . . the presence of a disclaimer or similar clarifying language may defeat a claim of deception."); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014) ("[T]he analysis [under the ICFA] must consider whether the act was deceptive as reasonably understood in light of *all the information* available to plaintiffs."). Accordingly, "[w]here a plaintiff contends that certain aspects of a product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat

9

the claim." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 2017 WL 3642076, at *5.

Mr. Al Haj's allegations are legally insufficient under these principles. Mr. Al Haj generally alleges that labeling the product "'maximum strength' was deceptive and misleading." (Compl. ¶ 21.) This is not true for several reasons. ***First***, the "maximum strength" label on Maximum Strength Robitussin is factually true. As described on the Maximum Strength Robitussin and Regular Strength Robitussin labels, the dosage instructions result in a product purchaser consuming 400 mg of guaifenesin (the maximum dose for medicine taken every four hours) if he or she takes Maximum Strength Robitussin and 200 mg of guaifenesin if he or she takes Regular Strength Robitussin.[4] (*Id.* ¶¶ 25, 27.) *See also* 21 C.F.R. §§ 341.74(d)(1)(iii); *id.* § 341.78(d). Because Maximum Strength Robitussin provides twice the amount of guaifenesin as Regular Strength Robitussin – and at the maximum amount allowed (per dose and per day) by the applicable federal regulations for both active ingredients in cough suppressants and expectorants sold over the counter – it is in fact both stronger than Regular Strength Robitussin and "maximum strength." Moreover, a consumer cannot merely double the dosage of Regular Strength Robitussin to match the Maximum Strength Robitussin's amount of guaifenesin – as plaintiff suggests – because this would result in the consumer taking too much DXM Hbr. (*Id.* ¶ 14.) *See also* 21 C.F.R. §§ 341.74(d)(1)(iii), 341.85(d).

***Second***, while Mr. Al Haj alleges that "dosage instructions are merely a ploy" to hide the fact that there are fewer doses in a bottle of Maximum Strength Robitussin than Regular Strength Robitussin (Compl. ¶ 31), this allegation is also not sufficiently or plausibly pled because both

---

[4]   These instructions provide for one dose every four hours, consistent with federal regulations. If the consumer were to take one dose every four hours, he or she would receive 2,400 mg of guaifenesin in 24 hours (the daily maximum set by the FDA) if taking Maximum Strength Robitussin, but only 1,200 mg of guaifenesin in 24 hours if taking Regular Strength Robitussin.

products explicitly list the dosage and the amount of active ingredients per dosage, and both warn against ingesting amounts beyond the instructed dosage. (*See* Bailey Decl. Exs. 1, 2.) Mr. Al Haj had access to the specific amount of active ingredients in the Maximum Strength Robitussin on the "back side of the box." (Compl. ¶ 27.) And the most elementary mathematical principles make it plain to the reasonable consumer that Maximum Strength Robitussin contains fewer doses per bottle than Regular Strength Robitussin because the bottles are the same size but the labels announce, in bold, large letters, that the dose for Maximum Strength Robitussin is "**20 ml**," while the dose for Regular Strength Robitussin is "**10 ml**." (*See* Bailey Decl. Ex. 1.) For this reason too, Mr. Al Haj's ICFA claim is "doomed." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 2017 WL 3642076, at *2, *6 (dismissing consumer protection claims where ingredients were listed "on the back of the container").

In short, the Robitussin packaging is not deceptive because it provides all the information necessary to determine the amount of medicine delivered – and to determine both that Maximum Strength Robitussin delivers more medicine and that it contains fewer doses per bottle than Regular Strength Robitussin.

### B. Mr. Al Haj Has Not Sufficiently Alleged Proximate Causation.

Mr. Al Haj also fails to state a claim under the ICFA because he does not allege that any claimed misrepresentation actually caused him to purchase Maximum Strength Robitussin.

Under the ICFA, a plaintiff must allege actual damages or an ascertainable loss "*as a result of*" the defendant's unfair or deceptive practices. *See* 815 Ill. Comp. Stat. 505/10a (emphasis added). As noted above, claims under the ICFA "'are subject to the same heightened pleading standards as other fraud claims'" and therefore "'must satisfy the particularity requirement of Rule 9(b).'" *Ibarolla v. Nutrex Research, Inc.*, No. 12 C 4848, 2012 U.S. Dist. LEXIS 155721, at *5-6 (N.D. Ill. Oct. 31, 2012) (citation omitted). To "properly plead the

11

element of proximate causation in a private cause of action for deceptive advertising brought under [the ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002).

Applying this causation requirement, courts have held that ICFA claims based on fraudulent marketing fail where a plaintiff "does not allege that he saw, heard or read any of defendant's ads" before purchasing the product in question. *Oliveira*, 776 N.E.2d at 163; *accord Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) (ICFA claim failed where plaintiffs did "not allege that any deceptive advertising by [defendant] was received by any plaintiff"). This is so because a plaintiff who never read or heard any of the defendant's allegedly misleading statements would be "unable to show that he was deceived" and would thus be "too far removed from the wrongdoing as a matter of law to establish the 'immediate' and 'direct' relationship between the wrongdoing and the injury that is required for proximate causation." *Oliveira*, 776 N.E.2d at 161.

This case is no different. Although Mr. Al Haj claims that Pfizer made allegedly misleading claims on its label (*see* Compl. ¶ 19), he does not allege that he read any of these purported misrepresentations prior to purchasing the product. Likewise, while plaintiff alleges that Pfizer's "marketing campaigns" were misleading (*see, e.g.*, *id.* ¶ 42), he does not point to any specific marketing endeavor – much less allege where or when (if at all) he saw those materials. For all that can be gleaned from the pleadings, it is at least as plausible that plaintiff purchased Maximum Strength Robitussin for reasons entirely unrelated to any representation at issue – e.g., the recommendation of a physician or pharmacist. As such, plaintiff has failed to allege any "'direct' relationship" between Pfizer's alleged wrongdoing and his supposed injuries sufficient to establish proximate causation. *Oliveira*, 776 N.E.2d at 161.

12

### C. Mr. Al Haj's Allegations Are Foreclosed By The ICFA's Safe-Harbor Provision.

Finally, regardless of the sufficiency of Mr. Al Haj's allegations concerning the fundamental elements of an ICFA claim, such a claim cannot proceed because the conduct at issue was "specifically authorized" by the FDA.

The ICFA expressly provides that liability cannot lie for "[a]ctions . . . specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1). There is no question that this safe-harbor provision applies to FDA-approved drugs. "The pharmaceutical industry is highly regulated" at the federal level, and, "recognizing the primacy of federal law in this field, the Illinois statute itself protects companies from liability if their actions are authorized by federal law." *Bober*, 246 F.3d at 942. Thus, the ICFA cannot be construed to "impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations," and compliance with FDA requirements will generally bar liability except where there is merely "technical compliance with federal regulations," and the conduct at issue is "so misleading or deceptive in context that federal law itself might not regard them as adequate." *Id.* at 941.

The ICFA's safe-harbor provision clearly applies here. The Code of Federal Regulations has an entire part that is dedicated to the labeling requirements applicable to cold, cough, allergy, bronchodilator and antiasthmatic medications. *See* 21 C.F.R. pt. 341. There is no question that these regulations "specifically authorize" the statements of the doses of DXM Hbr and guaifenesin in the product labeling; indeed, they expressly require such statements. *See id.* §§ 341.74, 341.78, 341.85. It is also clear based on other regulatory statements that the FDA understands "maximum strength" to refer to the maximum doses it establishes by regulation. *See, e.g.*, FDA, *Questions And Answers About Oral Prescription Acetaminophen Products To Be*

13

*Limited To 325 mg Per Dosage Unit*, https://www.fda.gov/Drugs/DrugSafety/InformationbyDrugClass/ucm239871.htm (referring to the maximum amount of acetaminophen allowed by regulation as the "maximum strength" of the drug, and further noting that while no similar "changes to the dosing of acetaminophen products marketed OTC" were going into effect, the FDA planned to address that subject through separate action). This regulatory statement, combined with the fact that the FDA has not taken action against the use of the "Maximum Strength" phrase as used in Maximum Strength Robitussin and many other over-the-counter products, indicates that the FDA considers the phrase to be appropriate under federal regulations.

Here, as noted above, it is undisputed that Maximum Strength Robitussin offers the highest amount of DXM Hbr and guaifenesin permitted under the applicable regulations per dose (and per day if taken at the directed dosing interval of four hours). *See* 21 C.F.R. §§ 341.74(d)(1)(iii), 341.78(d).[5] In short, the conduct at issue was "specifically authorized" by federal law and thus cannot form the basis of an ICFA claim.

### III.  MR. AL HAJ'S CLAIM FOR UNJUST ENRICHMENT (COUNT III) FAILS BECAUSE THIS DISPUTE IS GOVERNED BY A CONTRACT.

Mr. Al Haj's unjust enrichment claim also fails because "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*, 631 F.3d 436, 447 (7th Cir. 2011). As such, "when the plaintiff's

---

[5]  Mr. Al Haj asserts that federal regulations generally require that drug labeling not be "'misleading'" by, for example, failing to "'reveal the proportion of, or other fact with respect to, an ingredient present in such drug.'" (Compl. ¶ 23 (quoting 21 C.F.R. § 201.10(c)(2).) But the FDA's regulations elsewhere specify in exacting detail how the active ingredients of over-the-counter and cough-and-cold medications are to be disclosed, *see* 21 C.F.R. §§ 201.66, 341.74(d)(1)(iii), 341.78(d), and it is undisputed that the labels on Maximum Strength Robitussin comply with those requirements. For these and the other reasons set forth in part II.B, above, the packaging and labeling of Robitussin Maximum Strength do not violate § 201.10.

14

particular theory of unjust enrichment is based on alleged fraudulent dealings and [the court] reject[s] the plaintiff's claims that those dealings . . . *were* fraudulent, the theory of unjust enrichment that the plaintiff has pursued is no longer viable." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (affirming dismissal of unjust enrichment claim because "resolution of the fraud issue was dispositive of the unjust enrichment claim"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 631 F.3d at 447 (affirming dismissal of unjust enrichment claim because "dismissal of the fraud claim took the unjust enrichment claim with it"); *Hillen v. Blistex, Inc.*, No. 17 C 2074, 2017 WL 2868997, at *4 (N.D. Ill. July 5, 2017) ("Plaintiff's failure to plead any actionable deception eviscerates not only her fraud claims but her unjust enrichment claim as well."). Here, Mr. Al Haj's unjust enrichment claim is based on the same allegations underlying his claims for breach of state consumer fraud statutes. (*See* Compl. ¶ 65 (alleging that "Defendant accepted or retained the non-gratuitous benefits . . . with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, [p]laintiffs . . . were not receiving product of high quality, nature, fitness or value that had been represented by Defendant").) As set forth above, Mr. Al Haj's claims for violations of consumer fraud statutes fail; thus, his unjust enrichment claim should also be dismissed.

## **CONCLUSION**

For the foregoing reasons, Mr. Al Haj's claims against Pfizer should be dismissed.

Dated: October 18, 2017　　　　　　　　　　　　Respectfully submitted,

/s/ John H. Beisner　　　　　　　　　　　　　/s/ Gregory S. Bailey
John H. Beisner　　　　　　　　　　　　　　Gregory S. Bailey
Jessica Davidson Miller　　　　　　　　　　SKADDEN, ARPS, SLATE,
SKADDEN, ARPS, SLATE,　　　　　　　　　　MEAGHER & FLOM LLP
　MEAGHER & FLOM LLP　　　　　　　　　155 North Wacker Drive
1440 New York Avenue, N.W.　　　　　　　Chicago, Illinois 60606
Washington, D.C. 20005-2111　　　　　　　(312) 407-0700
(202) 371-7000　　　　　　　　　　　　　　gregory.bailey@skadden.com
john.beisner@skadden.com

15

ATTORNEYS FOR DEFENDANT PFIZER INC.

Case: 1:17-cv-06730 Document #: 18 Filed: 10/18/17 Page 17 of 18 PageID #:75

ATTORNEYS FOR DEFENDANT PFIZER INC.

## **CERTIFICATE OF SERVICE**

I, Gregory S. Bailey, hereby certify that the foregoing Memorandum of Law in Support of Motion to Dismiss the Claims of Karmel Al Haj was served on counsel of record through the CM/ECF system on October 18, 2017.

s/Gregory S. Bailey
Gregory S. Bailey
Counsel for Pfizer Inc.
