UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARMEL AL HAJ and TIMOTHY A. WOODHAMS, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | 17 C 6730 |
| Plaintiffs, | ) | |
| | ) | Judge Gary Feinerman |
| vs. | ) | |
| | ) | |
| PFIZER INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On behalf of themselves and a putative nationwide class, Karmel Al Haj and Timothy

Woodhams allege in this diversity suit that Pfizer Inc., which markets and distributes Robitussin

cough syrup, deceives consumers by charging more for "Maximum Strength" Robitussin even

though it contains a lower concentration of one of its two active ingredients than does "Regular

Strength" Robitussin.  Doc. 1.  Pfizer moves to dismiss Woodhams's claims for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2), to dismiss Al Haj's claims under

Rule 12(b)(6), and to strike the complaint's class claims under Rule 12(f).  Docs. 15, 17, 20.  The

motion to dismiss Woodhams's claims is granted, and the two other motions are denied.

**Background**

In resolving the Rule 12(b)(2) motion, the court considers the complaint's well-pleaded

allegations and the evidentiary materials submitted by both sides.  No party has requested an

evidentiary hearing, so the court must accept Woodhams's factual averments and resolve all

factual disputes in his favor.  *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012)

("[W]here, as here, the issue of [personal jurisdiction] is raised on a motion to dismiss, the

plaintiff need only make a prima facie showing of jurisdictional facts.  We therefore accept as

true all well-pleaded facts alleged in the complaint and resolve any factual disputes … in favor of the plaintiff.") (citation omitted); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

In resolving the Rule 12(b)(6) and Rule 12(f) motions, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016); *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Al Haj's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Al Haj as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Al Haj is a citizen and resident of Illinois. Doc. 1 at ¶ 8. On April 16, 2017, he purchased an 8-fluid ounce bottle of Maximum Strength Robitussin at a Walmart in Illinois. *Ibid*. Woodhams is a citizen and resident of Michigan. *Id*. at ¶ 9. On December 23, 2016, he purchased an 8-fluid ounce bottle of Maximum Strength Robitussin at a Harding's Market in Michigan. *Ibid*. Relying on what they believed to be Pfizer's representation that the product— by virtue of its being called "Maximum Strength"—contained a higher concentration of its two active ingredients than did Regular Strength Robitussin, they paid more than they would have for the same-sized bottle of Regular Strength Robitussin. *Id*. at ¶¶ 8-9.

Pfizer is a Delaware corporation with its principal place of business in New York. *Id*. at ¶ 10. Its Consumer Healthcare division, which markets and distributes Robitussin, maintains its principal place of business in New Jersey. *Ibid*.

Both Maximum Strength Robitussin and Regular Strength Robitussin contain two active ingredients: dextromethorphan hydrobromide ("DXM Hbr") and guaifenesin. *Id*. at ¶¶ 17-18. DXM Hbr combines DXM—the most widely used antitussive, or cough suppressant, in the United States—with an antihistamine, which is used to treat typical allergy and cold symptoms. *Id*. at ¶¶ 12-13. Guaifenesin is an expectorant, which thins bronchial secretions to make coughing more productive. *Id*. at ¶ 15.

The recommended adult dose of Regular Strength Robitussin is 10 ml; each dose contains 20 mg of DXM Hbr and 200 mg of guaifenesin. *Id*. at ¶¶ 25-26. The same volume of Maximum Strength Robitussin contains the same amount of guaifenesin (200 mg), but only half as much DXM Hbr (10 mg). *Id*. at ¶¶ 27-29. Maximum Strength Robitussin thus has a lower concentration of DXM Hbr and the same concentration of guaifenesin than does Regular Strength Robitussin. *Id*. at ¶¶ 29-31.

**Table 1: Quantity of active ingredient per 10 ml**

| Product | DXM Hbr | Guaifenesin |
|---|---|---|
| Regular Strength | 20 mg | 200 mg |
| Maximum Strength | 10 mg | 200 mg |

Then how, one might ask, can Pfizer call Maximum Strength Robitussin "Maximum Strength" and Regular Strength Robitussin "Regular Strength"? The answer would be obvious to any reasonably competent carnival game operator: Pfizer fixes the recommended adult dose of Maximum Strength Robitussin at *20 ml*, double the recommended adult dose of Regular Strength

Robitussin. *Id*. at ¶¶ 27-28. This results in the recommended adult dose of Maximum Strength Robitussin having the same amount of DXM Hbr (20 mg) and twice as much guaifenesin (400 mg) as does the recommended adult dose of Regular Strength Robitussin. *Ibid*. The rub is that Maximum Strength Robitussin contains only 5.9 doses per four-ounce bottle, while Regular Strength Robitussin contains double that—11.8 doses per four-ounce bottle. *Id*. at ¶ 31. Yet a bottle of Maximum Strength Robitussin, with half as many doses as Regular Strength Robitussin, is more expensive at retail than a bottle of Regular Strength Robitussin. *Id*. at ¶¶ 33-35. Using the prices alleged in the complaint, *id*. at ¶ 34, a purchaser of Maximum Strength Robitussin is charged approximately twenty percent more per mg of guaifenesin, and more than *twice* as much per mg of DXM Hbr, than is a purchaser of Regular Strength Robitussin.

To differentiate the two products, the Maximum Strength Robitussin package contains a large red bar within which the phrase "Maximum Strength" is printed in white letters, and it places the word "MAX" in red letters underneath the letters "DM." *Id*. at ¶¶ 17-19.



The complaint contains three counts, each brought on behalf of Plaintiffs individually and a putative nationwide class of "[a]ll persons that paid for Maximum Strength Robitussin Cough+Chest Congestion DM for personal, family or household uses." *Id*. at ¶ 36.  Count I alleges that Pfizer has violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq*. *Id*. at ¶¶ 47-54.  Count II alleges, in the alternative, that Pfizer has violated all fifty States' consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. *Id*. at ¶¶ 55-59.  Count III alleges that Pfizer has violated the unjust enrichment laws of all fifty States.  *Id*. at ¶¶ 60-66.

## Discussion

## I.     Personal Jurisdiction over Woodhams's Claims

"District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015).  The Illinois long-arm statute allows for the exercise of "jurisdiction to the limit set by the Due Process Clauses of the Constitution." *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016); *see* 735 ILCS 5/2-209(c) ("A court may … exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.").  Thus, a federal court sitting in Illinois asks "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[T]he statutory question merges with the constitutional one—if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so.").

"The plaintiff bears the burden of establishing personal jurisdiction." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014).

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts" with the forum State. *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). Woodhams relies on both types of personal jurisdiction, which are addressed in turn.

### A.    General Jurisdiction

"General jurisdiction is 'all-purpose'; it exists only 'when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State.'" *Kipp v. Ski Enter. Corp. of Wis., Inc*. 783 F.3d 695, 697-98 (7th Cir. 2015) (quoting *Daimler*, 134 S. Ct. at 751). "In recent years, the Supreme Court has … raised the bar for this type of jurisdiction. Because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, the Court has emphasized that it should not lightly be found." *Id*. at 698. "The 'paradigm' forums in which a corporate defendant is 'at home,' … are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 134 S. Ct. at 760). Nevertheless, "[t]he exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Ibid*. (quoting *Daimler*, 134 S. Ct. at 761 n.19). Qualifying as an "exceptional case" "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Kipp*, 783 F.3d at 698 (quoting *Daimler*, 134 S. Ct. at 761). Instead, "[t]he Due Process Clauses of the Fifth and Fourteenth Amendments permit courts … to exercise general jurisdiction only when 'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit … on

causes of action arising from dealings entirely distinct from those activities.'"  *Ibid.* (quoting

*Daimler*, 134 S. Ct. at 761) (first alteration added) (emphasis omitted).

Woodhams does not allege that Pfizer is incorporated in Illinois or that it (or its

Consumer Healthcare division) maintains its principal place of business in Illinois.  Doc. 1 at

¶ 10.  Thus, the question becomes whether Pfizer's ties to Illinois are sufficient to make this the

exceptional case where Pfizer is nevertheless "at home" in Illinois.  They are not.  The complaint

alleges only that Pfizer's Consumer Healthcare division "is among the largest over-the-counter

(OTC) health care companies in the world with a global footprint in more than 90 countries."

*Ibid*.  From this allegation, it is reasonable and likely correct to infer that Pfizer sells substantial

quantities of over-the-counter medications, including Robitussin, in Illinois.  Doc. 23 at p. 4, ¶ 7

(admitting that Pfizer does business in Illinois); Doc. 32 at 10 (discussing evidence showing that

Pfizer "transacts business in Illinois and has offices and employees here").

The Supreme Court has made clear, however, that even a substantial volume of sales

activity in a given State does not make a corporation at home in that State.  In *Daimler*, for

example, the American distributor of Mercedes-Benz vehicles, MBUSA, made more than ten

percent of its sales in California, and "MBUSA's California sales account[ed] for 2.4% of

Daimler's [MBUSA's German parent company] worldwide sales."  134 S. Ct. at 752.  On this

factual predicate, and even imputing to Daimler all of MBUSA's activities in California, the

Court held that Daimler was not subject to general jurisdiction in California:

> If [those] activities sufficed to allow adjudication of this Argentina-rooted
> case in California, the same global reach would presumably be available in
> every other State in which MBUSA's sales are sizable.  Such exorbitant
> exercises of all-purpose jurisdiction would scarcely permit out-of-state
> defendants "to structure their primary conduct with some minimum assurance
> as to where that conduct will and will not render them liable to suit."

*Id.* at 761-62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The same result obtains here: Pfizer's "'continuous [business] activity'" in Illinois in the form of product sales "'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017) ("While the California market may be important for YMC, Appellants failed to submit evidence to support a finding that YMC is 'at home' in California."); *Kraft Chem. Co. v. Salicylates & Chems. Private Ltd.*, 149 F. Supp. 3d 897, 901 (N.D. Ill. 2015) (holding that an Illinois court could not assert general jurisdiction over a defendant, even though "2% of its global sales [could be] attributed to its … sales in Illinois").

Urging the contrary result, Woodhams observes that Pfizer, in another case in this District, admitted to having "employees who are Illinois residents living within this district; and … an agent within this district for receipt of corporate correspondence." Doc. 32 at 10-11. Woodhams further observes that Pfizer has been sued in federal court in Illinois 186 times between 2003 and the present. *Id.* at 10. These observations, while factually accurate, are immaterial. The presence of a defendant's employees in a forum State does not, by itself, create general jurisdiction in that State over that defendant. *See BNSF*, 137 S. Ct. at 1559 (holding that the defendant's having "over 2,000 miles of railroad track and more than 2,000 employees in Montana … does not suffice to permit the assertion of general jurisdiction over claims … that are unrelated to any activity occurring in Montana"); *Daimler*, 134 S. Ct. at 752, 760 (holding that the defendant's several physical locations in California did not subject it to general jurisdiction in California). Nor does the presence in the forum State of an agent authorized to receive corporate correspondence. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640-41 (2d Cir. 2016)

(expressing skepticism that a corporation's registration to do business in Connecticut, and the consequent appointment of an agent for service of process, could subject the corporation to general jurisdiction in Connecticut); *Perez v. Air & Liquid Sys. Corp.*, 2016 WL 7049153, at *6 (S.D. Ill. Dec. 2, 2016) ("[M]any district courts in this Circuit have held that registering to do business or maintaining a registered agent is not enough to confer general jurisdiction over a foreign corporation.") (citing cases).

As for Pfizer's prior lawsuits in this District, Woodhams cites and the court is aware of no authority for the "dubious proposition" that being a party to some number of lawsuits in a State can create general jurisdiction over that party in that State. *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004). To the contrary, courts that have considered that proposition have rejected it, and rightly so. *See Torrent Pharm. Ltd. v. Daiichi Sankyo, Inc.*, 196 F. Supp. 3d 871, 877 (N.D. Ill. 2016) ("By failing to object to jurisdiction in a case brought by one plaintiff in 2012, Defendants did not waive their right to contest personal jurisdiction in 2016 in a separate—though similar—case brought by different plaintiffs."); *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 908 (N.D. Ill. 2006) ("As for retaining Illinois counsel to settle a tax dispute in an Illinois court, this Court has previously held that, absent persuasive evidence to the contrary, involvement in an unrelated lawsuit will not support a finding of general jurisdiction."); *Merlino v. Harrah's Entm't, Inc.*, 2006 WL 401847, at *3 (E.D. Pa. Feb. 17, 2006) ("Filing even nineteen lawsuits, without more, cannot constitute continuous and systematic activity so as to establish general jurisdiction."); *Rozenblat v. Sandia Corp.*, 2005 WL 1126879, at *2 (N.D. Ill. May 2, 2005) ("[T]he fact that the Sandia Defendants appeared as Defendants in another action in the Northern District of Illinois does not mean that they waived all personal jurisdiction requirements for future actions."), *aff'd*,

2006 WL 678923 (Fed. Cir. Mar. 17, 2006); *Mallinckrodt Med., Inc. v. Sonus Pharm.*, Inc., 989 F. Supp. 265, 271 (D.D.C. 1998) ("It would be ludicrous to suggest that Sonus and ImaRx consented to the jurisdiction of this Court for all time, with respect to all potential competitors, and for all purposes, simply because they once chose to sue the FDA here.").

Woodhams thus has failed to show that Pfizer is subject to general jurisdiction in Illinois.

## B.     Specific Jurisdiction

"The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "Specific jurisdiction [therefore] requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017); *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State.") (internal quotation marks and brackets omitted); *N. Grain Mktg.*, 743 F.3d at 492 (same).

Accordingly, even if there is no question that Pfizer directed its activities at Illinois, Woodhams still must show that there is a nexus between those activities and his injury. *See Bristol-Myers*, 137 S. Ct. at 1781 (holding that, in the absence of the required "affiliation between the forum and the underlying controversy, … specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State") (citation and internal quotation marks omitted); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 732-33 (7th Cir. 2013) ("Specific jurisdiction requires that the plaintiff's cause of action relate to the defendant's contacts with the forum."); *Felland*, 682 F.3d at 676 ("Even where a defendant's conduct is

purposefully directed at the forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts."). Yet Woodhams's injury—purchasing Maximum Strength Robitussin, Doc. 1 at ¶ 9—occurred in Michigan, where he lives, and the pleadings reveal no links between that injury and Pfizer's efforts to distribute or market Robitussin in Illinois.

Woodhams nevertheless contends that he can satisfy the nexus requirement because his claims are "identical" to those of Al Haj, over whose claims the court indisputably has specific jurisdiction. Doc. 32 at 11. The Supreme Court's recent holding in *Bristol-Myers* defeats this argument. *Bristol-Myers* considered a suit (actually eight suits, but that detail is immaterial) jointly brought in California by numerous plaintiffs, some from California and the rest from other States, against a pharmaceutical manufacturer not subject to general jurisdiction in California, alleging that they suffered harm from Plavix, one of the manufacturer's drugs. 137 S. Ct. at 1778. "The nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California." *Ibid.* The manufacturer moved to dismiss the nonresidents' claims for want of personal jurisdiction, and the California Supreme Court held that there was specific jurisdiction over those claims because they were "similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested)." *Id.* at 1779. The United States Supreme Court reversed, holding that there was no "adequate link between [California] and the nonresidents' claims" given that "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781. The Court explained that "[t]he mere fact that other plaintiffs were prescribed, obtained, and ingested

Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Ibid.* And because the nonresident plaintiffs did not "claim to have suffered harm in" California and the "conduct giving rise to [their] claims occurred elsewhere," the Court ruled that "the California courts cannot claim specific jurisdiction" over those claims. *Id.* at 1782.

Under *Bristol-Myers*, the identity between Al Haj's and Woodhams's claims is not enough to confer personal jurisdiction on an Illinois court over Woodhams's claims. As in *Bristol-Myers*, the fact that Al Haj "sustained the same injur[y]" as Woodhams "does not allow [Illinois] to assert specific jurisdiction over [Woodhams's] claims," given that Woodhams does not "claim to have suffered harm in [Illinois]" and "all the conduct giving rise to [his] claims occurred" in Michigan. 137 S. Ct. at 1781-82; *see also Greene v. Mizuho Bank, Ltd.*, __ F. Supp. 3d __, 2017 WL 7410565, at *3-4 (N.D. Ill. Dec. 11, 2017) (applying *Bristol-Myers* to dismiss for want of personal jurisdiction the claims of a nonresident plaintiff who did not assert an injury in Illinois even though his claims were identical to those of an Illinois plaintiff).

Woodhams responds that *Bristol-Myers* does not apply here because it involved a state court mass tort suit, not a federal putative class action. That distinction makes no difference. Nothing in *Bristol-Myers* suggests that it does not apply to named plaintiffs in a putative class action; rather, the Court reaffirmed a generally applicable principle—that due process requires a "connection between the forum and the specific claims at issue." *Bristol-Myers*, 137 S. Ct. at 1781. That principle applies whether or not the plaintiff is a putative class representative. *See Greene*, 2017 WL 7410565, at *4 (applying *Bristol-Myers* to named plaintiffs in a putative class action). Accordingly, the identity between Woodhams's claims and Al Haj's does not, on its own, confer personal jurisdiction over Woodhams's claims on an Illinois court.

Because neither general jurisdiction nor specific jurisdiction lies over Woodhams's claims, they are dismissed for lack of personal jurisdiction.

## II.    Merits of Al Haj's Individual Claims

Pfizer argues that Al Haj's individual claims are governed by Illinois law, while Al Haj contends that New Jersey law applies.  Doc. 18 at 7-9; Doc. 36 at 21-25.  Because this case was filed in Illinois, Illinois choice-of-law rules guide the inquiry into which State's law governs. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law.").  "Illinois has adopted the approach found in the Second Restatement of Conflict of Laws." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007).  Under the Second Restatement, the law of the State that "retains the most significant relationship to the occurrence and the parties" governs. *Ibid*. (internal quotation marks omitted).  Assuming, favorably to Al Haj, that Pfizer's representations concerning Maximum Strength Robitussin emanated from New Jersey, and given that his "'actions in reliance [on those representations] took place'" in Illinois, the most significant relationship analysis turns on: "'(a) the state where plaintiff acted in reliance upon defendant's representations, (b) the state where plaintiff received the representations, (c) the state where defendant made the representations, (d) the domicile, residence, place of incorporation, and place of business of the parties, and (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time.'" *Id*. at 922-923 (quoting *Restatement (Second) of Conflict of Laws* § 148(2)).

Applying these principles yields the conclusion that Illinois has the most significant relationship to Al Haj's individual claims.  Because Al Haj purchased Maximum Strength

Robitussin in Illinois in reliance on Pfizer's "Maximum Strength" representation, Doc. 1 at ¶ 8, the first, second, and the fifth factors plainly point to Illinois. So, too, does the fourth factor. *See Barbara's Sales*, 879 N.E.2d at 923 ("'The domicil[e], residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant'" because "'a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.'") (quoting *Restatement (Second) of Conflict of Laws* § 148, cmt. i). Although the third factor points to New Jersey—where, Al Haj contends, Pfizer made the relevant representations and where its Consumer Healthcare division maintains its principal place of business, Doc. 1 at ¶ 10; Doc. 36 at 22—the Restatement emphasizes that "'this place is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations.'" *Barbara's Sales*, 879 N.E.2d at 923 (quoting *Restatement (Second) of Conflict of Laws* § 148, cmt. g). For these reasons, Illinois law governs Al Haj's claims.

This would appear at first glance to spell trouble for Count I of the complaint, which alleges that Pfizer violated the NJCFA, New Jersey's consumer protection law. Yet Count II alleges in the alternative that Pfizer violated all fifty States' consumer protection laws, including the NJCFA and the ICFA, Illinois's consumer protection law. Because Count I's allegations are encompassed in Count II's, dismissing Count I at this stage would have no material effect on this suit. Moreover, because this suit is a putative class action on behalf of a putative class that includes New Jersey residents, it would be premature to dismiss the complaint's NJCFA claim. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (holding, for purposes of analyzing commonality under Civil Rule 23(a)(2), that although multiple state consumer protection laws were at issue, "[t]he claims of every class member [would] rise or fall on the resolution" of the "question whether the [defendant's] packaging was likely to deceive a

reasonable consumer"). If the court denies class certification, Pfizer may renew its motion to dismiss Count I.

Al Haj's claim arises under the ICFA, and the parties agree that "a statement is deceptive" under that statute "if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001); *see also In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 921 (N.D. Ill. 2017) (same) (citing cases). "[I]n analyzing whether [the] plaintiff[] sufficiently alleged a deceptive act or practice … the analysis must consider whether the act was deceptive as reasonably understood in light of all the information available to [her]." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. 2014) (emphasis omitted); *see also Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff."); *Parmesan Cheese*, 275 F. Supp. 3d at 921 (same) (citing cases).

Pfizer contends that the "Maximum Strength" label is not deceptive under the ICFA because "one dose of Maximum Strength Robitussin is stronger—i.e., contains more medicine—than one dose of Regular Strength Robitussin." Doc. 18 at 9-10. Pfizer's premise (one dose of Maximum Strength Robitussin has more medicine than one dose of Regular Strength Robitussin) is right, but its conclusion (that the "Maximum Strength" label therefore is not deceptive under the ICFA) is wrong, at least at the pleading stage when all reasonable inferences must be drawn in Al Haj's favor.

To survive a Rule 12(b)(6) motion, a plaintiff need only "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (holding that, to defeat a

Rule 12(b)(6) motion, "[i]t is enough to plead a plausible claim, after which 'a plaintiff receives that benefit of imagination, so long as the hypotheses are consistent with the complaint'") (quoting *Twombly*, 550 U.S. at 563); *Unchageri v. YuppTV USA, Inc.*, 2018 WL 1184737, at *2 (N.D. Ill. Mar. 7, 2018) (same) (citing cases). And it is at least plausible that a reasonable consumer would construe an assertion about a product's relative strength ("Regular" vs. "Maximum") as one that concerns the product's relative potency and therefore that depends on the *concentration* of the product's active ingredients, not the total *quantity* consumed. *Compare Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 129 F. Supp. 2d 351, 356, 364 (D.N.J. 2000) (holding, under section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), that "the product name, Mylanta 'Night Time *Strength*,' necessarily implie[d] a false message: *it falsely represents that it possesses a quality that is particularly efficacious* for those suffering from heartburn at night. But that is not true. Additional [acid neutralizing capacity] … does not make the product any better whether it is used during the day or the night," and noting that it would not have been misleading to market the product as "Maximum Strength" because it contained "more active ingredient per teaspoon than other antacids") (emphasis added), *aff'd*, 290 F.3d 578 (3d Cir. 2002), *with Bober*, 246 F.3d at 937, 940 (holding that drug labels were not misleading under the ICFA where "Zantac 75" contained 75 mg of ranitidine and "Zantac 150" contained 150 mg of ranitidine); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, 144 F. Supp. 3d 699, 704 (E.D. Pa. 2015) (noting that "one tablet of Extra Strength Tylenol contains 500 mg of acetaminophen while a tablet of Regular Strength Tylenol contains only 325 mg of acetaminophen per tablet"). It is therefore at least plausible that a reasonable consumer would expect that Maximum Strength Robitussin contains more DXM Hbr and guaifenesin per unit of volume than does Regular Strength Robitussin. Al Haj alleges

that he had that expectation, that this expectation was not met, and that he was consequently deceived by Pfizer's representation that the product he purchased was "Maximum Strength" and paid more as a result.  Doc. 1 at ¶¶ 8, 21, 29-35.  No more is needed to survive Pfizer's Rule 12(b)(6) motion.

Pfizer emphasizes that a *dose* of Maximum Strength Robitussin contains more DXM Hbr and guaifenesin than a *dose* of Regular Strength Robitussin.  But, as noted above and as Pfizer itself concedes, that is only because the recommended dose for Maximum Strength Robitussin is twice the volume of the recommended dose for Regular Strength Robitussin—20 ml vs. 10 ml.  Doc. 18 at 11.  And it is at least plausible that a reasonable consumer would not expect that a product is fairly represented as "Maximum Strength," and is properly priced higher than its "Regular Strength" cousin, if the consumer gets more of its active ingredients only by consuming more of it.  *See Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 585 (S.D.N.Y. 1987) (rejecting the "argument that, in comparing the effectiveness of the two drugs, a dose of two tablets of Extra-Strength Tylenol (1000 mg.) should be compared with one tablet of Advil (200 mg.), because these are the dosages recommended by their respective package instructions"); *see also Novartis*, 129 F. Supp. 2d at 356, 364.

Pfizer also contends that it did not act deceptively because "both" Regular Strength Robitussin and Maximum Strength Robitussin "explicitly list the dosage and the amount of active ingredients per dosage."  Doc. 18 at 11-12.  But unlike the circumstances in *Parmesan Cheese*, where a reasonable consumer could obtain all relevant information from a single product's ingredient label, *see* 275 F. Supp. 3d at 923 ("Reasonable consumers would thus need more information before concluding that the labels promised only cheese and nothing more, and they would know exactly where to look to investigate—the ingredient list.  Doing so would

inform them that the product contained non-cheese ingredients."), a reasonable consumer could ascertain the key information about Robitussin—that the Maximum Strength version contained a *lower* concentration of DXM Hbr and the same concentration of guaifenesin as the Regular Strength version—only by taking two products off the shelf and comparing their labels. It is reasonable to expect that a consumer would do the former, at least where something about the observable context of the product's retail presentation—shelf-stable, unrefrigerated cheese, for example, or shelf-stable, unrefrigerated orange juice—should prompt suspicion that the product might not be 100% cheese or fresh-squeezed juice. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); *Parmesan Cheese*, 275 F. Supp. 3d at 923 (holding that a reasonable consumer would look to the ingredients list on the back of a grated cheese container because "[t]he products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese"); *Veal v. Citrus World, Inc.*, 2013 WL 120761, at *4 n.4 (N.D. Ala. Jan. 8, 2013) ("The plaintiff makes much ado about believing the packaged containers of orange juice contained 'fresh squeezed' orange juice. As a matter of common sense, whatever is in a container on a store shelf with an expiration date some weeks hence cannot contain 'fresh' anything. Even if the product began its life as 'fresh squeezed orange juice,' common sense dictates that by the time the same makes its way to a grocery store and sits on a shelf waiting purchase, it is no longer 'fresh.'"). Here, by contrast, the pleadings do not suggest that anything about Maximum Strength Robitussin's retail presentation would prompt similar suspicion from a reasonable consumer. Absent some kind of context clue, and drawing appropriate inferences in Al Haj's favor, it is not reasonable to expect a consumer to cross-check a product's ingredient list against *another* product's list and then

perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities it purports to have.

Pfizer next argues that Al Haj has not alleged proximate cause. Doc. 18 at 12-14. "To properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the [ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) ("[A] damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception."). Al Haj alleges that he "purchased Maximum Strength Robitussin based on Pfizer's representation that the product was, in fact, maximum strength, containing more of the active ingredients than in the regular version," that he was "deceived" because the product did not satisfy that expectation, and that he was injured by having to pay more for Maximum Strength Robitussin than he would have paid for the Regular Strength version. Doc. 1 at ¶¶ 8, 21, 29-35. Al Haj has therefore done all he needs to do to plead proximate cause at this stage of the lawsuit. *See Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 991 (N.D. Ill. 2013) ("[I]t suffices at the pleading stage to allege that the plaintiff incurred a financial injury upon purchasing a product based on the defendant's deceptive statements.") (citing cases).

Pfizer is also mistaken in contending that the ICFA's safe harbor provision requires dismissal. Doc. 18 at 14-15. The provision states that the ICFA does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). Although Food and Drug Administration regulations obligate drug manufacturers to indicate a drug's recommended and required doses, *see* 21 C.F.R. §§ 341.74 & 341.78, federal law does not

require them to use the term "Maximum Strength," *see ibid.*, and in fact forbids them from using "misleading" labels, *see* 21 U.S.C. § 352(a); 21 C.F.R. § 201.10(c). Because the complaint plausibly alleges that designating the product as "Maximum Strength" Robitussin was misleading, the ICFA's safe harbor provision does not shield Pfizer from liability, at least at this stage of the lawsuit.

In sum, Al Haj's ICFA claim survives dismissal. And because Pfizer seeks dismissal of Al Haj's unjust enrichment claim solely on the ground that the ICFA claim fails, Doc. 18 at 15-16, Al Haj's unjust enrichment claim survives as well.

## III.   Merits of Class Allegations

Finally, Pfizer moves to strike the complaint's class allegations, contending that variation in state consumer protection and unjust enrichment law categorically precludes class certification. Doc. 21 at 1-2. Pfizer is correct that the Seventh Circuit has cautioned against certifying nationwide classes in consumer fraud cases. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-19 (7th Cir. 2002); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001). But those cases were decided on Rule 23(f) appeals from orders, made on a developed record, certifying or refusing to certify a class; here, by contrast, the case is at the pleading stage.

True enough, Rule 23(c)(1)(A) provides that the court may reject a plaintiff's attempt to represent a class as soon as it becomes obvious that he will be unable to satisfy Rule 23. *See* Fed. R. Civ. P. 23(c)(1)(A) ("At an early practicable time after a person sues … as a class representative, the court must determine by order whether to certify the action as a class action."). In limited circumstances, that time can arise at the pleading stage. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Hill v. Wells Fargo Bank, N.A.*,

946 F. Supp. 2d 817, 829-30 (N.D. Ill. 2013). Those circumstances are not present here. Despite expressing caution about certifying multistate consumer protection or warranty claims in *Aqua Dots*, *Bridgestone*, and *Szabo*, Seventh Circuit precedent teaches that such certifications are not categorically prohibited. *See Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (noting, in a state law warranty and consumer fraud case, that *Bridgestone* "did not mean that nationwide classes are impermissible as a matter of law"); *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) ("While consumer fraud class actions present problems that courts must carefully consider before granting certification, there is not and should not be a rule that they never can be certified."). To the contrary, the Seventh Circuit has upheld decisions to certify a nationwide class so long as "the central questions in the litigation are the same for all class members." *Pella Corp.*, 606 F.3d at 394.

In *Pella Corp.*, for example, the Seventh Circuit affirmed the district court's certification of multistate classes seeking recovery under state consumer protection law. In so doing, the court acknowledged *Bridgestone* and similar decisions, but held that "those cases did not opine that class certification was *never* appropriate in consumer fraud cases, only that it was inappropriate in the circumstances before [the court]." *Id.* at 393; *see also Suchanek*, 764 F.3d at 761-62 (in reversing the grant of summary judgment to the defendant, noting that "[a]ll of the applicable consumer protection laws at issue … may be satisfied by proof that a statement is likely to mislead a reasonable consumer"). Class certification analysis is necessarily contextual, and the context—including whether and how to create subclasses—is in this instance better explored under Rule 23, on a developed record, than under Rule 12(f). *See Pella Corp.*, 606 F.3d at 396; *Alea v. Wilson Sporting Goods Co.*, 2017 WL 5152344, at *7 (N.D. Ill. Nov. 7, 2017).

Pfizer's motion to strike the complaint's class allegations is therefore denied, without prejudice to Pfizer raising its arguments in opposition to any Rule 23 motion filed by Al Haj or at some other appropriate juncture.  *See Alea*, 2017 WL 5152344, at *7.

## Conclusion

Pfizer's motion to dismiss Woodhams's claims for lack of personal jurisdiction is granted, and Pfizer's two other motions are denied.

April 13, 2018

_____
United States District Judge