## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KARMEL AL HAJ, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

PFIZER INC.,

        Defendant.

No. 17-cv-6730

Hon. Gary Feinerman

Magistrate Judge Susan E. Cox

## MEMORANDUM LAW IN SUPPORT OF PLAINTIFF'S MOTION
## FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

## [REDACTED VERSION FILED ON PUBLIC DOCKET
## UNREDACTED VERSION FILED UNDER SEAL UNDER
## AGREED CONFIDENTIALITY ORDER (Dkt. # 51)]

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE PROPOSED CLASSES .................................................................................4

III.  SUMMARY OF FACTS COMMON TO THE ENTIRE CLASS ......................5

    A.    Through Project Accelerate, Pfizer Reformulated Maximum Strength Robitussin to Contain Less Active Ingredients Per Bottle Than Regular Robitussin.................................................................................5

    B.    Pfizer Launched the Reformulated Maximum Strength Robitussin .......................9

    C.    Plaintiff Was Deceived When She Purchased Maximum Strength Robitussin ......................................................................................................10

IV.  LEGAL STANDARDS FOR CLASS ACTIONS ...............................................10

V.   THE PROPOSED CLASSES SATISFY RULE 23(A) .......................................11

    A.    The Rule 23(a) Standards...................................................................................11

    B.    Pfizer Sold Millions of Bottles of Maximum Strength Robitussin, Making Joinder of Purchasers Impracticable.............................................................12

    C.    Pfizer's Uniform Conduct Affected All Class Members ..................................12

    D.    Plaintiff's Claims Are Typical as They Arise from Pfizer's Conduct .................13

    E.    Plaintiff and Her Counsel Will Adequately Protect Class Members' Interests ...........................................................................................................14

VI.  COMMON QUESTIONS OF LAW OR FACT PREDOMINATE ...................16

    A.    Common Questions of Law or Fact Predominate for the Nationwide Class ................................................................................................................17

         1.    New Jersey law applies nationwide given New Jersey's significant relationship to Project Accelerate. ..........................................17

         2.    Common questions of law predominate for the Nationwide Class.......................................................................................................19

         3.    Common questions of fact predominate for the Nationwide Class.......................................................................................................20

B.  Alternatively, Common Questions of Law or Fact Predominate for
    the Consumer Protection Multi-State Class .................................................23

    1.  Each state employs nearly identical objective standards for
        deception. ..............................................................................................24

    2.  Plaintiff can prove deception under an objective standard using
        Pfizer's documents—evidence that will not vary from state to state ........26

    3.  The issue of causation may be resolved in a multi-state class by
        grouping the states into two categories. .....................................................29

C.  Common Questions of Law Predominate for the Claims of the Unjust
    Enrichment Multi-State Class ................................................................32

D.  Common Questions of Law Predominate for the Illinois Subclass .....................33

E.  Plaintiff's Method for Calculating Damages Satisfies *Comcast* ...........................35

VII.    A CLASS ACTION IS SUPERIOR TO INDIVIDUAL CASES.....................................38

VIII.   THE CLASS IS OBJECTIVELY DEFINED ...................................................39

IX.     HAGENS BERMAN SOBOL SHAPIRO LLP SHOULD BE APPOINTED CLASS
        COUNSEL UNDER FED. R. CIV. P. 23(G) ...................................................40

X.      CONCLUSION...................................................................................40

010706-11 1090340 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al Haj v. Pfizer Inc.*,
No. 17 C 6730, 2018 U.S. Dist. LEXIS 62487 (N.D. Ill. Apr. 13, 2018) ....................... *passim*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................................10, 24

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ........................................................................................................11, 16

*Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*,
398 Ill. App. 3d 773 (2009) ...................................................................................................35

*Aspinall v. Philip Morris Cos.*,
813 N.E.2d 476 (Mass. 2004) ...............................................................................................25

*Barnes v. Air Line Pilots Ass'n*,
310 F.R.D. 551 (N.D. Ill. 2015) (Feinerman, J.) .......................................................12, 32, 39

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................................................36

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
No. 09-MD-2023 ALL, 2012 U.S. Dist. LEXIS 186527 (E.D.N.Y. July 20,
2012) ......................................................................................................................................16

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) .................................................................................12, 13, 14

*Bernal v. NRA Grp., LLC*,
318 F.R.D. 64 (N.D. Ill. 2016) (Feinerman, J.) ....................................................................15

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) .................................................................................................25

*Bosland v. Warnock Dodge, Inc.*,
964 A.2d 741 (N.J. 2009) .......................................................................................................20

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
280 F.R.D. 408 (N.D. Ill. 2012) (Feinerman, J.) .......................................................12, 14, 38

*Bowe v. Pub. Storage*,
318 F.R.D. 160 (S.D. Fla. 2015) ............................................................................................32

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ...................................................................35

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ...................................................................38

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ...........................................................25, 26, 27, 29

*Casavant v. Norwegian Cruise Line, Ltd.*,
919 N.E.2d 165 (Mass. Ct. App. 2009) ...................................................29

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015) .............................................................32

*In re Checking Account Overdraft Litig.*,
No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 200108 (S.D. Fla. July 18,
2012) ........................................................................................................14

*Chroniak v. Golden Inv. Corp.*,
983 F.2d 1140 (1st Cir. 1993) ..................................................................25

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra
Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *aff'd sub nom. Briseno v.
ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ...................................13, 27

*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (1996) ....................................................................30, 31, 34

*Costello v. BeavEx, Inc.*,
810 F.3d 1045 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2289 (2017).....................16

*Daaleman v. Elizabethtown Gas Co.*,
390 A.2d 566 (N.J. 1978).........................................................................20

*Dix v. Am. Bankers Life Assur. Co. of Fla.*,
415 N.W.2d 206 (Mich. 1987).............................................................25, 29

*Downing v. Riceland Foods, Inc.*,
No. 4:13CV321 CDP, 2015 U.S. Dist. LEXIS 34154 (E.D. Mo. Mar. 19,
2015) ........................................................................................................33

*Dubey v. Pub. Storage, Inc.*,
395 Ill. App. 3d 342 (2009) .....................................................................33

*Elias v. Ungar's Food Prods., Inc.*,
252 F.R.D. 233 (D.N.J. 2008).............................................................18, 19

*Fenwick v. Ranbaxy Pharms., Inc.*,
No. 3:12-cv-07354 (PGS)(DEA), 2018 U.S. Dist. LEXIS 194780 (D.N.J. Nov.
13, 2018) ................................................................................................................32

*Forcellati v. Hyland's, Inc.*,
No. CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ......26

*Garcia v. Medved Chevrolet, Inc.*,
263 P.3d 92 (Colo. 2011) ......................................................................................30

*Hadley v. Kellogg Sales Co.*,
No. 16-CV-04955, 2018 WL 3954587 (N.D. Cal. Aug. 17, 2018) ........................27

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
929 A.2d 1076 (N.J. 2007)................................................................................20, 30

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) .................................................................................36

*Langendorf v. Skinnygirl Cocktails, LLC*,
306 F.R.D. 574 (N.D. Ill. 2014).............................................................................31

*Lavie v. Procter & Gamble Co.*,
129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003).........................................................25

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
756 F. Supp. 2d 928 (N.D. Ill. 2010) ..............................................................36, 37

*Lee v. Carter-Reed Co., L.L.C.*,
4 A.3d 561 (N.J. 2010).........................................................................19, 20, 21

*Lipton v. Chattem, Inc.*,
No. 11 C 2952, 2012 U.S. Dist. LEXIS 49828 (N.D. Ill. Apr. 10, 2012)
(Feinerman, J.) .......................................................................................................36

*Martin v. Reid*,
818 F.3d 302 (7th Cir. 2016) ...........................................................................19, 33

*Mass. Mut. Life Ins. Co. v. Superior Court*,
97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002), *as modified on denial of*
*reh'g* (May 29, 2002)..............................................................................................30

*Matter of Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*,
859 N.E.2d 473 (N.Y. 2006)..................................................................................25

*Mednick v. Precor, Inc.*,
320 F.R.D. 140 (N.D. Ill. 2017).................................................................13, 20, 24

*In re Mercedes-Benz Tele-Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009) ......................................................................19, 31

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ...............................................................11, 17, 23

*Muir v. Nature's Bounty (De), Inc.*,
    No. 15 C 9835, 2018 U.S. Dist. LEXIS 128738 (N.D. Ill. Aug. 1, 2018) ..............................24

*Mulligan v. Choice Mortg. Corp. USA*,
    No. CIV. 96-596-B, 1998 WL 544431 (D.N.H. Aug. 11, 1998) ...........................30

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ................................................................. *passim*

*Mullins v. Direct Digital, LLC*,
    No. 13-CV-01829, 2014 WL 10270706 (N.D. Ill. Feb. 18, 2014) ........................33

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ................................................................38

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) ................................................................23

*Peterson v. Kitsap Cmty. Fed. Credit Union*,
    287 P.3d 27 (Wash. Ct. App. 2012) .......................................................25

*Plubell v. Merck & Co.*,
    289 S.W.3d 707 (Mo. Ct. App. 2009) ................................................26, 30

*Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*,
    62 P.3d 142 (Colo. 2003) ....................................................................25

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ....................................................30, 31, 32

*Sauro v. L.A. Fitness Int'l, LLC*,
    No. CIV. 12-3682 JBS/AMD, 2013 WL 978807 (D.N.J. Feb. 13, 2013) ..............25

*Schnall v. AT&T Wireless Servs., Inc.*,
    259 P.3d 129 (Wash. 2011) ............................................................30, 31

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011) ..........................................................23

*Smoot v. Physicians Life Ins. Co.*,
    87 P.3d 545 (N.M. Ct. App. 2003) ....................................................25, 30

*In re St. Jude Med., Inc.*,
    522 F.3d 836 (8th Cir. 2008) ...................................................................30

*State by Humphrey v. Directory Publ'g Servs., Inc.*,
    No. C1-95-1470, 1996 WL 12674 (Minn. Ct. App. Jan. 16, 1996).........................25

*Stavropoulos v. Hewlett-Packard Co.*,
    No. 13 C 5084, 2014 U.S. Dist. LEXIS 173964 (N.D. Ill. Dec. 17, 2014) ...........................37

*In re Stericycle, Inc.*,
    No. 13 C 5795, 2017 U.S. Dist. LEXIS 21861 (N.D. Ill. Feb. 16, 2017)...............16

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) ................................................... *passim*

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ..................................................... *passim*

*Suchanek v. Sturm Foods, Inc.*,
    No. 11-CV-565-NJR-RJD, 2017 U.S. Dist. LEXIS 138016 (S.D. Ill. Aug. 28,
    2017) ............................................................................3, 23, 24

*Suchanek v. Sturm Foods, Inc.*,
    No. 11-CV-565-NJR-RJD, 2018 U.S. Dist. LEXIS 213658 (S.D. Ill. July 3,
    2018) .................................................................................24, 31

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004).............................................................33

*Thiedemann v. Mercedes-Benz USA, LLC*,
    872 A.2d 783 (N.J. 2005)....................................................................23

*Union Ink Co., Inc. v. AT&T Corp.*,
    801 A.2d 361 (N.J. Super. Ct. App. Div. 2002)...................................................22

*Varacallo v. Mass. Mut. Life Ins.*,
    752 A.2d 807 (N.J. Super. Ct. App. Div. 2000)...................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)....................................................................11, 12, 13

*Wells v. Allstate Ins. Co.*,
    210 F.R.D. 1 (D.D.C. 2002)................................................................29

*Whiting v. AARP*,
    701 F. Supp. 2d 21 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011)..............25

- vii -

*Wilkins v. Just Energy Grp., Inc.*,
    308 F.R.D. 170 (N.D. Ill. 2015)................................................................15

## STATUTES

15 Mo. Code Regs. § 60-9.020 ................................................................25

N.J. Stat. § 56:8-2 ................................................................................20

N.J. Stat. § 56:8-2.11 .......................................................................23, 36

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 .................................................................... *passim*

Fed. R. Civ. P. 49 ................................................................................39

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.633 (2009)....................39

N.J. Civ. Jury Instructions § 4.43............................................................31

N.J. Model Civil Jury Charges § 4.43........................................................22

N.M. Uniform Civ. Jury Instructions, Rule 13-1707 ....................................31

## I.     INTRODUCTION

Since the question common to "all putative class members [is] whether [Pfizer's] packaging was likely to mislead a reasonable consumer," class certification is appropriate because "[t]he claims of every class member will rise or fall on the resolution of that question."[1] Pfizer uniformly touted Robitussin Maximum Strength Cough + Chest Congestion DM ("Maximum Strength Robitussin")[2] as "Maximum Strength" and charged a premium for it. In reality, it contains ***less active ingredients and less doses*** in a bottle than the same size (but cheaper) bottle of Robitussin Cough + Chest Congestion DM ("Regular Robitussin").



[3]

---

[1] *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755, 757 (7th Cir. 2014) ("*Suchanek I*").

[2] The products at issue include three bottle sizes, which are identified in Paragraph 16 of Plaintiff's Offer of Proof in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel ("Proffer"). All exhibits ("Ex.") referenced herein are attached to the Declaration of Elizabeth A. Fegan in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel filed contemporaneously herewith.

[3] Proffer ¶ 61.

████████████████████████[4] Pfizer thus deceived consumers by naming the product Maximum Strength Robitussin, when it was not stronger than Regular Robitussin. As a result, Plaintiff and the Class did not receive the benefit of the bargain and suffered out-of-pocket losses when they paid more for less active ingredient.

Certification of a class of persons who purchased Maximum Strength Robitussin for personal or household use is appropriate under Rule 23(a) and (b)(3). The class consists of purchasers of millions of units of Maximum Strength Robitussin, satisfying numerosity under Rule 23(a)(1). Rule 23(a)(2) is satisfied because the harm suffered by Plaintiff and the class arises from Pfizer's uniform campaign, called Project Accelerate, to overcharge customers by decreasing the amount of active ingredients in Maximum Strength Robitussin and cutting the doses by half compared to Regular Robitussin. Indeed, Plaintiff's "claims and those of the class [she] would like to represent all derive from a single course of conduct by [Pfizer]: the marketing and packaging of [Maximum Strength Robitussin]."[5] Third, under Rule 23(a)(3), Plaintiff is typical of the class, each of whom purchased Maximum Strength Robitussin and paid more than the cost of Regular Robitussin. And Plaintiff is adequate under Rule 23(a)(4) because she has the same interests as the class and will vigorously prosecute their interests through qualified counsel (who satisfy Rule 23(g)).

Common questions of law or fact predominate under Rule 23(b)(3). For the Nationwide Class, New Jersey law applies because all of Pfizer's conduct intended to deceive consumers occurred in New Jersey, which maintains a strong interest in regulating fraud and compensating victims. Alternatively, common questions of law predominate for the Consumer Fraud Multi-

---

[4] *Id.* ¶ 60.

[5] *Suchanek I*, 764 F.3d at 756.

State Class. Each state incorporates an objective standard for deception and materiality, obviating the need to look to any individualized evidence except as to the fact of purchase. In every state, "[t]he element of deception represents the question common to the entire class: whether the [product] packaging was likely to deceive a reasonable consumer."[6] And common questions of law predominate within the unjust enrichment classes because courts look to defendant's conduct, which here was uniform toward every class member.

Common questions of fact predominate as well. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████.[7] The trier of fact will assess whether Pfizer's use of the words "Maximum Strength" and "DM Max" for Maximum Strength Robitussin is deceptive from the objective viewpoint of a reasonable consumer. Neither the law nor the facts are unique to any class member.

Additionally, class treatment is the superior way for handling the litigation. This case involves small dollar purchases with damages in amounts that would preclude individual lawsuits. ████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

---

[6] *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2017 U.S. Dist. LEXIS 138016, at *39-40 (S.D. Ill. Aug. 28, 2017) ("*Suchanek III*").

[7] *See generally* Proffer.

[8] *See id.* ¶ 79 (Line 25); *id.* (Line 454).

████████████████████████████████████████████████████ ██████

████████████████████████████████████ [0] Given the individual

amounts at stake balanced against the class-wide fraud, a class action is superior. Plaintiff

respectfully requests that the Court grant Plaintiff's motion for class certification.

## II. THE PROPOSED CLASSES

First, Plaintiff seeks certification of a ***Nationwide Class***:

> All persons residing in the United States who purchased Robitussin
> Maximum Strength Cough + Chest Congestion DM for personal or
> household use.

Alternatively, Plaintiff seeks certification of a ***Consumer Protection Multi-State Class***:

> All persons residing in California, Colorado, District of Columbia,
> Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New
> Hampshire, New Jersey, New Mexico, New York, and Washington who
> purchased Robitussin Maximum Strength Cough + Chest Congestion
> DM for personal or household use.

Also, Plaintiff seeks to certify an ***Unjust Enrichment Multi-State Class*** defined as follows:

> All persons residing in Arkansas, Colorado, District of Columbia,
> Illinois, Iowa, Missouri, New Mexico, and New York who purchased
> Robitussin Maximum Strength Cough + Chest Congestion DM for
> personal or household use.

As a second alternative, Plaintiff seeks to certify an ***Illinois Subclass*** under the Illinois

Consumer Fraud and Deceptive Practices Act and/or the law of unjust enrichment in Illinois:

> All persons residing in Illinois who purchased Robitussin Maximum
> Strength Cough + Chest Congestion DM for personal or household use.

Excluded from the proposed classes are: (i) Pfizer, any entity in which any Pfizer has a

controlling interest or which has a controlling interest in Pfizer, (ii) persons or entities that

---

[9] *Id.* (Line 454).

[10] *Id.* (Line 1127).

purchased Maximum Strength Robitussin primarily for resale, and (iii) governmental entities,

including the Court and its staff.

### III.    SUMMARY OF FACTS COMMON TO THE ENTIRE CLASS

**A.    Through Project Accelerate, Pfizer Reformulated Maximum Strength Robitussin to Contain Less Active Ingredients Per Bottle Than Regular Robitussin**



---

[11] Proffer ¶ 20.

[12] *Id.* ¶ 21.

[13] *Id.* ¶ 22.

[14] *Id.* ¶¶ 23, 24.

[15] *Id.* ¶ 26.

[16] *Id.* ¶ 29.

[17] *Id.* ¶ 32.



---

[18] *Id.* ¶ 35.

[19] *Id.* ¶ 39.

[20] *Id.* ¶ 42.

[21] *Id.* ¶¶ 36, 37.

[22] *Id.* ¶ 44.

[23] *Id.* ¶ 45.

[24] *Id.* ¶¶ 46-47.



---

25 *Id.* ¶ 49.

26 *Id.* ¶ 50.

27 *Id.* ¶ 51 (emphasis added).

28 *Id.* ¶ 52.

29 *Id.* ¶ 53.

30 *Id.* ¶ 56 (collecting research).

31 *Id.* ¶ 57.



---

[32] *Id.*

[33] *Id.* ¶ 58.

[34] *Id.* ¶ 60.

[35] *Id.* ¶ 61. *See supra* at note 3.

[36] Proffer ¶ 64 (emphasis added).

[37] *Id.* ¶ 67 (emphasis added).

[38] *Id.* ¶ 70.

[39] *Id.* ¶ 71 (emphasis added).

010706-11 1090340 V1

**B.**     **Pfizer Launched the Reformulated Maximum Strength Robitussin**



---

[40] *Id.* ¶ 7.

[41] *Id.* ¶¶ 13, 14.

[42] *Id.* ¶¶ 74, 75, 82, 83, 84. *See also* Ex. 15 (Attachment 7-A to Lesch Report).

[43] Proffer ¶ 77.

[44] *Id.* ¶ 79.

[45] *Id.* ¶ 81.

[46] *Id.* ¶ 85.

[47] *Id.* ¶ 86.

**C.  Plaintiff Was Deceived When She Purchased Maximum Strength Robitussin**

Like the Class, Plaintiff Karmel Al Haj was deceived when she purchased Maximum

Strength Robitussin in Illinois twice in 2017.[48] Pre-purchase, Mrs. Al Haj viewed the box.[49]



[54]

## IV.  LEGAL STANDARDS FOR CLASS ACTIONS

In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of 'the

rights of groups of people who individually would be without effective strength to bring their

opponents into court at all.'"[55] The Seventh Circuit explained:

---

[48] *Id.* ¶¶ 91-97.

[49] *Id.* ¶ 92.

[50] *Id.* ¶ 93.

[51] *Id.* ¶ 94.

[52] *Id.* ¶ 97.

[53] *Id.* ¶ 98.

[54] *Id.* ¶ 96.

[55] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

> The policy at the very core of the class action mechanism is to
> overcome the problem that small recoveries do not provide the
> incentive for any individual to bring a solo action prosecuting his
> or her rights. A class action solves this problem by aggregating the
> relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.[56]

While the Court should engage in a "rigorous analysis," "the office of a Rule 23(b)(3)

certification ruling is not to adjudicate the case. . . ."[57] "[R]ather, it is to select the metho[d] best

suited to adjudication of the controversy fairly and efficiently."[58] Thus, "Rule 23 grants courts no

license to engage in free-ranging merits inquiries at the certification stage."[59] Though Plaintiff

"bear[s] the burden of showing that a proposed class satisfies the Rule 23 requirements," she

"need not make that showing to a degree of absolute certainty"[60] and "the court should not turn

the class certification proceedings into a dress rehearsal for the trial on the merits."[61]

## V.    THE PROPOSED CLASSES SATISFY RULE 23(a)

**A.    The Rule 23(a) Standards**

"To be certified, a proposed class must satisfy the four requirements of Rule 23(a):

'(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions

of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims and defenses of the class; and (4) the representative parties will fairly and

---

[56] *Suchanek I*, 764 F.3d at 759 (quotation and citation omitted).

[57] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).

[58] *Amgen*, 568 U.S. at 460.

[59] *Id.* at 466.

[60] *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

[61] *Id.* (citations omitted).

adequately protect the interests of the class.'"[62] These factors are satisfied here.

**B.    Pfizer Sold Millions of Bottles of Maximum Strength Robitussin, Making Joinder of Purchasers Impracticable**

Rule 23(a)(1) requires that the proposed classes be "so numerous that joinder of all members is impracticable."[63] Numerosity does not require a plaintiff "plead or prove the exact number of class members," rather "the court may make common sense assumptions to determine numerosity."[64] ████████████████████████████████████[65]

**C.    Pfizer's Uniform Conduct Affected All Class Members**

To satisfy commonality, "there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity."[66] Claims need not be identical: "some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified."[67] Ultimately, "even a single common question" can satisfy the commonality requirement.[68]

Courts evaluating class certification under state consumer protection statutes have frequently found commonality in questions that turn on a defendant's uniform conduct. For example, in *Suchanek I*, the Seventh Circuit reversed a finding of no commonality because "the question whether the [defendant's] packaging was likely to deceive a reasonable consumer is

---

[62] *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 411 (N.D. Ill. 2012) (Feinerman, J.) (citing Fed. R. Civ. P. 23).

[63] Fed. R. Civ. P. 23(a)(1).

[64] *Barnes v. Air Line Pilots Ass'n*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (Feinerman, J.) (citations omitted).

[65] Ex. 15 (Attachment 2 to Lesch Report).

[66] *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018).

[67] *Boundas*, 280 F.R.D. at 413.

[68] *Dukes*, 564 U.S. at 338.

common."[69] Indeed, "[c]ourts routinely find that whether a product['s] packaging, seen by all purchasers of the product, is misleading is an issue that satisfies commonality."[70]

Here, the harm alleged by Plaintiff and the classes results from the same corporate decision: Project Accelerate, a uniform decision to decrease the amount of active ingredients within a Robitussin bottle while holding it out as Maximum Strength to extract a higher price. Calling the reformulated product "Maximum Strength," even though the product contained ***less*** active ingredients and doses than a bottle of Regular Robitussin, is objectively deceptive. Consumers did not receive the benefit of the bargain or they suffered an out-of-pocket loss.[71] Plaintiff need only establish a "single common question" to satisfy Rule 23(a)(2), and that requirement is plainly met in this case.[72] The question of whether Pfizer's sale of Maximum Strength Robitussin as "Maximum Strength" when it was "less than" Regular Strength was false, unfair, deceptive, and/or misleading satisfies the commonality requirement.

**D.    Plaintiff's Claims Are Typical as They Arise from Pfizer's Conduct**

Rule 23(a)(3) evaluates "whether [Plaintiff's] claims arise from the same events or course of conduct that gives rise to the putative class members' claims."[73] Plaintiff's and the class claims need not be identical. Rather, "individual claims may feature some factual variations as

---

[69] *Suchanek I*, 764 F.3d at 757.

[70] *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 151 (N.D. Ill. 2017). *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 973 (C.D. Cal. 2015) (finding commonality where trier of fact will determine "whether [defendant's] '100% Natural' marketing and labeling of Wesson Oil products was false, unfair, deceptive, and/or misleading" for class exposed to "100% Natural" labeling), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) and *aff'd sub nom. Briseno v. ConAgra Foods Inc.*, 674 F. App'x 654 (9th Cir. 2017).

[71] *See* Ex. 15 at ¶¶ 25-40 (quantifying damages based on these theories).

[72] *Dukes*, 564 U.S. at 359.

[73] *Beaton*, 907 F.3d at 1026 (citation omitted).

long as they 'have the same essential characteristics.'"[74] Plaintiff's claims are typical because she "saw the same representations as other users" and "[t]he class members were thus exposed to the same message (and promises) from [Pfizer]."[75] Rule 23(a)(3) is satisfied.

## E.    Plaintiff and Her Counsel Will Adequately Protect Class Members' Interests

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."[76] This requirement "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel."[77]

The first inquiry asks if Plaintiff is "a member of the putative class and [has] the same interest and injury as other members."[78] Plaintiff is a member of the classes she seeks to represent as a purchaser of Maximum Strength Robitussin.[79] Moreover, Plaintiff is a resident of Illinois,[80] which falls within the groupings of state laws with substantially similar elements.[81] Plaintiff also paid a higher price for Maximum Strength Robitussin than the price of Regular

---

[74] *Id.*

[75] *Id. See also Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 255 (S.D. Ill. 2015) ("*Suchanek II*") (finding typicality where "the class members were all exposed to the exact same course of conduct by Defendants: the marketing and packaging of [defendant's product]").

[76] Fed. R. Civ. P. 23(a)(4).

[77] *Boundas*, 280 F.R.D. at 412 (Feinerman, J.).

[78] *Beaton*, 907 F.3d at 1027 (citation omitted).

[79] Proffer ¶ 91.

[80] *Id.* ¶ 90.

[81] *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 200108, at *64-65 (S.D. Fla. July 18, 2012) ("Plaintiffs have proposed discrete multi-state subclasses for some of the state law claims, to ensure that the proposed class representatives' claims are materially identical to all other class members that they seek to represent. . . . The subclasses provide additional assurance of typicality here.").

Strength, but did not receive the benefit of the bargain and suffered an out-of-pocket loss.[82] Given that she "suffered precisely the same injury and has precisely the same interest in the outcome of the litigation," her claim is not "idiosyncratic or unique," nor do her "interests . . . conflict with those of the absent class members."[83]

Furthermore, Mrs. Al Haj is committed to pursuing the class claims. She diligently participated in the discovery process, responding to discovery requests and appearing for her deposition.[84] ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████."[85]

Next, Hagens Berman satisfies Rule 23(g). To analyze counsel's adequacy, this Court should consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . ; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."[86] First, Plaintiff's counsel has invested thousands of hours litigating this matter, defeating Pfizer's motion to dismiss, opposing Pfizer's repeated jurisdictional motions, taking steps to protect the class by the filing of an additional matter in the Southern District of New York, reviewing approximately 213,000 pages produced by Pfizer and 13,000 pages produced by third parties, and taking and defending depositions across three states. Second, Hagens Berman has extensive

---

[82] *See generally* Ex. 15 at Lesch Report ¶¶ 25-40.

[83] *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 75 (N.D. Ill. 2016) (Feinerman, J.).

[84] *See, e.g.*, *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015) ("Wilkins has demonstrated that she is sufficiently interested in the outcome of this case as she sat for her deposition and responded to written discovery.").

[85] Proffer ¶ 98.

[86] Fed. R. Civ. P. 23(g).

experience handling class actions in this District and nationwide.[87] Third, Plaintiff's counsel has

extensive knowledge and experience litigating consumer fraud cases, including as to over-the-

counter drug products.[88] Fourth, Plaintiff's counsel will continue to devote the resources

necessary to prosecute this matter. Rule 23(a)(4) and Rule 23(g) are satisfied.

## VI.     COMMON QUESTIONS OF LAW OR FACT PREDOMINATE

Rule 23(b)(3) requires that common questions of law or fact predominate.[89]

"Predominance is satisfied when 'common questions represent a significant aspect of [a] case

and . . . can be resolved for all members of [a] class in a single adjudication.'"[90] "[T]he court

should evaluate the evidence pragmatically . . . [to] decide whether classwide resolution would

substantially advance the case."[91] Rule 23(b)(3) "requires a showing that *questions* common to

the class predominate, not that those questions will be answered, on the merits, in favor of the

class."[92]

Because the "[a]nalysis of predominance under Rule 23(b)(3), begins . . . with the

elements of the underlying cause of action," Plaintiff analyzes predominance in light of the legal

---

[87] *See In re Stericycle, Inc.*, No. 13 C 5795, 2017 U.S. Dist. LEXIS 21861, at *27 (N.D. Ill. Feb. 16, 2017) (finding Hagens Berman "has more than ample experience to help represent the interests of the entire class without conflict" and will "represent the interests of the class fairly and adequately"); Ex. 75 (Firm Resume of Hagens Berman Sobol Shapiro LLP).

[88] *See* Ex. 75; *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-MD-2023 (BMC) (JMA) ALL, 2012 U.S. Dist. LEXIS 186527, at *9 (E.D.N.Y. July 20, 2012) (appointing Hagens Berman as lead counsel in multi-state consumer fraud case consolidated by the JPML involving two aspirin products).

[89] Fed. R. Civ. P. 23(b)(3).

[90] *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (quoting *Messner*, 669 F.3d at 815) (alterations in original), *cert. denied*, 137 S. Ct. 2289 (2017).

[91] *Id.* (quotation omitted).

[92] *Amgen*, 568 U.S. at 459 (emphasis in original).

requirements for each of the four classes below.[93] Moreover, as reflected in the Proffer, the key

evidence necessary to establish Plaintiff's claims is common to all class members.

## A.     Common Questions of Law or Fact Predominate for the Nationwide Class

### 1.     New Jersey law applies nationwide given New Jersey's significant relationship to Project Accelerate.

First, New Jersey's consumer fraud law should apply to the Class. While the Court

previously concluded under Rule 12 that Illinois law governed Plaintiff's claims,[94] discovery has

since detailed that New Jersey is the state with the most significant relationship with the parties

and events of this case.[95] Indeed, under the choice of law rules in Illinois, "the law of the State

that 'retains the most significant relationship to the occurrence and the parties' governs."[96]



[97] Pfizer Consumer Healthcare maintains its principal place of business at

and distributes its Robitussin line of products from Madison, New Jersey.[98]

[100]

---

[93] *Messner*, 669 F.3d at 815 (quotation omitted).

[94] *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2018 U.S. Dist. LEXIS 62487, at *18-19 (N.D. Ill. Apr. 13, 2018).

[95] *See* Proffer § E.

[96] *Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *18-19.

[97] Proffer ¶¶ 104-115.

[98] *Id.* ¶ 102.

[99] *Id.* ¶¶ 105, 106.

[100] *Id.* ¶¶ 109, 110, 113, 114.



[02]

The court's analysis in *Elias v. Ungar's Food Products* is instructive. In *Elias*, four New York residents purchased and consumed food products sold by a New Jersey company.[103] The plaintiffs sued in New Jersey after learning that various product packaging statements were false.[104] The district court certified a nationwide class under New Jersey law because:

> New Jersey is the location of defendants' place of business, where it maintains its headquarter offices, plans its product development, advertising, promotion, and marketing strategies, and the state where it manufactures and ships its products. Thus, all of the products and the statements about them were conceived in and emanated from New Jersey. Furthermore, as the source of the allegedly false statements are New Jersey residents, New Jersey has a strong interest in deterring fraudulent conduct by its domestic businesses and compensating consumers who are victims of such fraud, including consumers outside New Jersey.
>
> New Jersey's interest in protecting consumers is evidenced by its comprehensive consumer fraud law. In fact, "[t]he available legislative history demonstrates that the NJCFA was intended to be one of the strongest consumer protection laws in the nation." Furthermore, both of the cases on which Defendants rely, *Merck* and *Fink*, concluded that the NJCFA generally provides a higher level of protection for consumer-plaintiffs through measures that make it easier for consumer-plaintiffs to recover in lawsuits against businesses engaging in fraudulent practices, and thus members of the proposed class residing in other states will generally be afforded no less protection under the NJCFA than their home state,

---

[101] *Id.* ¶¶ 57, 111, 112.

[102] *Id.* ¶¶ 108, 111, 112.

[103] *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 240 (D.N.J. 2008).

[104] *Id.*

> and, in fact, may receive greater protection. As a result, the
> application of NJCFA does not trample upon other states' interest in
> protecting their consumers from fraud.[105]

Like in *Elias*, New Jersey has the strongest interest in applying its consumer fraud statute,

because Pfizer has "sufficient contacts with New Jersey, the essence of this cause of action

emanates from New Jersey, and New Jersey's policy of deterring fraudulent conduct by domestic

businesses and compensating consumers who are victims of fraud by such businesses is

significantly implicated by this litigation."[106] Accordingly, this Court should find that New

Jersey law applies to the claims of the Nationwide Class.

### 2. Common questions of law predominate for the Nationwide Class.

Common questions of law predominate for the Nationwide Class because New Jersey's

consumer fraud law applies to all purchasers.[107] For example, in *Lee v. Carter-Reed Co.,*

*L.L.C.*,[108] plaintiff sued the marketer of a dietary supplement for violating the NJCFA, alleging

that the defendant's marketing of Relacore primarily as a weight-reduction product (with the

additional benefits of lessening anxiety and elevating mood) was deceptive.[109] In evaluating

predominance (and certifying a class under the NJCFA), the *Lee* court noted that the NJCFA

"provides relief to plaintiff and the putative class if Carter Reed engaged in the deceptive

marketing of Relacore and plaintiff and the class members suffered an ascertainable loss causally

---

[105] *Id.* at 247 (citations omitted).

[106] *Id.* at 248. *See also In re Mercedes-Benz Tele-Aid Contract Litig.*, 257 F.R.D. 46, 67 (D.N.J. 2009) (concluding that New Jersey law applied nationwide and finding defendant's misrepresentations and omissions occurred in New Jersey, which was where the Tele-Aid service was "planned and implemented" and where employees "oversaw the promotion and marketing of Tele-Aid," even though class members received misrepresentations in their home states).

[107] *See, e.g., Martin v. Reid*, 818 F.3d 302, 308 (7th Cir. 2016) (recognizing common issues of law predominate, and variations in state laws are irrelevant, where a single law applies).

[108] *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 580 (N.J. 2010).

[109] *Id.* at 565.

related to that alleged unlawful practice."[110] Similarly, with the NJCFA applying nationwide,

common questions of law predominate for the Nationwide Class.

### 3. Common questions of fact predominate for the Nationwide Class.

Common questions of fact also predominate for the Nationwide Class. The NJCFA was

enacted to prevent "sharp practices and dealings in the marketing of merchandise . . . whereby

the consumer could be lured . . . into a purchase through fraudulent, deceptive or other similar

kind of selling or advertising practices."[111] An NJCFA claim requires: "1) unlawful conduct by

defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful

conduct and the ascertainable loss."[112] Reliance is not an element.[113]

Regarding the first element, the NJCFA broadly defines unlawful practices and bars:

> [t]he act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false
> promise, misrepresentation, or the knowing, concealment,
> suppression, or omission of any material fact with intent that others
> rely upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any merchandise . . .
> whether or not any person has in fact been misled, deceived or
> damaged thereby.[114]

Here, the trier of fact will assess whether holding out Maximum Strength Robitussin as

"Maximum Strength" and "DM Max" is deceptive. To prove this element, Plaintiff and the class

---

[110] *Id.* at 579 (citation omitted).

[111] *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 568-69 (N.J. 1978).

[112] *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

[113] *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1087-88 (N.J. 2007).

[114] N.J. Stat. § 56:8-2. *Cf. Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015) ("Mullins's claims . . . rise or fall on whether . . . Direct Digital's representations were deceptive."); *Mednick*, 320 F.R.D. at 152 ("The Court thus leaves the factfinder to assess whether the packaging of the Precor machines—which includes the SmartRate mark, the picture of the heart, and their surrounding context—indeed broadcasts a misleading message.").

will present common evidence such as the product packaging, which did not vary from state to state.[115] They will also submit evidence regarding the dosage differences and active ingredient levels between Maximum Strength Robitussin and Regular Robitussin.[116] ███████████████

███████████████████████████████████████████████ [117]

The NFCFA requires that Plaintiff prove an "ascertainable loss," which is "a loss that is quantifiable or measurable."[118] "To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss *as a result of* the unlawful practice."[119] This requires the defendant's conduct to have been "a cause of damages," not "the sole cause of loss."[120] Again, *Lee* is instructive.[121] In *Lee,* the court explained that under the NJCFA, even in cases where multiple deceptive statements were at issue, "a trier of fact may infer the causal relationship between the unlawful practice—the multiple deceptions—and the ascertainable losses, the purchases of the worthless product."[122] Thus, in evaluating an allegedly deceptively sold dietary supplement, the court concluded that the ascertainable loss was "the purchase price of a bottle of broken promises. Each purchase of Relacore—not refunded—is an out-of-pocket loss."[123] The court thus found that common questions predominated as to the fact of purchase.

---

[115] Proffer ¶ 17.

[116] *Id.* ¶ 13.

[117] *Id.* §§ II.B.1-3, II.C.

[118] *Lee*, 4 A.3d at 576-77.

[119] *Id.* at 577 (quotation and citation omitted) (emphasis added).

[120] *Varacallo v. Mass. Mut. Life Ins.*, 752 A.2d 807, 816-17 (N.J. Super. Ct. App. Div. 2000).

[121] *Lee*, 4 A.3d at 580.

[122] *Id.* at 580.

[123] *Id.* (citing *Thiedemann*, 183 N.J. at 248, 872 A.2d 783).

010706-11 1090340 V1

Like in *Lee*, Mrs. Al Haj will use common evidence to show that the losses suffered by Plaintiff and the class resulted from Pfizer's deceptive conduct, particularly since causation focuses on whether the act "has the capacity to mislead the ***average consumer***."[124] Indeed, there are several conclusions a factfinder could reach regarding an average consumer's expectations:

- "[I]t is at least plausible that a reasonable consumer would construe an assertion about a product's relative strength ('Regular' vs. 'Maximum') as one that concerns the product's relative potency and therefore that depends on the *concentration* of the product's active ingredients, not the total *quantity* consumed."[125]

- "It is therefore at least plausible that a reasonable consumer would expect that Maximum Strength Robitussin contains more DXM Hbr and guaifenesin per unit of volume than does Regular Strength Robitussin."[126]

- "[I]t is at least plausible that a reasonable consumer would not expect that a product is fairly represented as 'Maximum Strength,' and is properly priced higher than its 'Regular Strength' cousin, if the consumer gets more of its active ingredients only by consuming more of it."[127]

- "[A] reasonable consumer could ascertain the key information about Robitussin—that the Maximum Strength version contained a *lower* concentration of DXM Hbr and the same concentration of guaifenesin as the Regular Strength version—only by taking two products off the shelf and comparing their labels . . . it is not reasonable to expect a consumer to cross-check a product's ingredient list against *another* product's list and then perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities it purports to have."[128]

Not one of these conclusions would vary from class member to class member.

---

[124] *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002) (emphasis added). *See also* N.J. Model Civil Jury Charges § 4.43 ("It is not necessary that a person has in fact been misled or deceived by another's conduct, nor is it necessary for the plaintiff to show that the defendant intended that his/her conduct should deceive."); *id.* ("'Deception' is conduct/advertisement misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer.").

[125] *Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *22-23 (emphasis in original). *See also* Proffer ¶¶ 61, 64, 67, 68, 69, 79.

[126] *Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *23-24. *See also* Proffer ¶¶ 61, 64, 67, 68, 69, 79.

[127] *Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *24. *See also* Proffer ¶¶ 61, 64, 67, 68, 69, 79.

[128] *Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *25-27. *See also* Proffer ¶¶ 51, 54, 55, 79, 93.

Finally, with respect to calculating damages, the loss here is measurable as full refund damages[129] or benefit-of-the-bargain damages, because the "'consumer receive[d] less than what was promised.'"[130] ███████████████████████████████████████████

████████████████████████████████████████████████████████████[131] Common questions predominate for the Nationwide Class.

## B. Alternatively, Common Questions of Law or Fact Predominate for the Consumer Protection Multi-State Class

In the alternative, certification of the Consumer Protection Multi-State Class is warranted. The 14 jurisdictions within the multi-state class employ essentially identical consumer fraud standards; that is, each state uses that same objective standard for the "central" element of deception—a "reasonable consumer" test.[132] While the precise phrasing of each standard may vary slightly, in substance they do not. Thus, a jury can use the same evidence to answer the same question, resolving this threshold liability issue following one trial.

Further, the standards for causation bear substantial similarities, permitting them to be divided into two groups for the purposes of instructing the jury. And because no state requires individualized proof of reliance, the same body of common evidence can satisfy each state's standard for causation and any variations between standards will only affect jury instructions—

---

[129] N.J. Stat. § 56:8-2.11.

[130] *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99, 102 (D.N.J. 2011) (quoting *Union Ink*, 801 A.2d at 379); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005).

[131] *See infra* § VI.E.

[132] *Suchanek III*, 2017 U.S. Dist. LEXIS 138016, at *39; *Messner*, 669 F.3d at 815; *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010). *See* Ex. 77 (Survey of prohibited acts under laws in multi-state class); Ex. 79 (Exemplar Proposed Jury Instructions for Multi-State Consumer Protection and Unjust Enrichment Claims); and Ex. 80 (Exemplar Special Verdict Form for Multi-State Consumer Protection and Unjust Enrichment Claims).

not Plaintiff's ability to conduct a single trial. Such efficiencies are the very reason class actions exist.[133] Indeed, courts in this circuit have certified multi-state classes just like the one presented here, where state consumer protection laws all ask whether the defendant's conduct would likely deceive a reasonable consumer.[134] Certification is just as appropriate here.

1. **Each state employs nearly identical objective standards for deception.**

All of the states within the proposed multi-state class "prohibit, in one phrasing or another, unfair, fraudulent, or deceptive practices in the course of trade or commerce."[135] These similarities are not by chance; most states have modeled their consumer statutes on the Federal Trade Commission Act.[136] As a result, the elements and standards bear substantive similarities and there are essentially "three central elements" to any consumer fraud claim: deception, causation, and damages.[137] The first element, deception, is both the "threshold" question of liability and "the most significant element" of the claims.[138] The states making up the multi-state class all define a deceptive act using the same "reasonable consumer" or "likely to mislead" test. In California, for example, the test asks whether "it is probable that a significant portion of the

---

[133] *See Amchem*, 521 U.S. at 617; *Suchanek I*, 764 F.3d at 759.

[134] *See, e.g.*, *Mullins*, 795 F.3d at 673 (affirming multi-state certification of 10 similar consumer protection statutes because plaintiff's claims will "rise or fall on whether [defendant's] representations were deceptive"); *Suchanek I*, 764 F.3d at 757 (reversing the district court certification denial because "the question whether the [defendant's] packaging was likely to deceive a reasonable consumer is common"); *Mednick*, 320 F.R.D. at 156-57 (certifying multi-state consumer fraud class as "the question then is whether the legal rules of the relevant states are sufficiently 'the same' in this case" and because the statutes "share sufficient common characteristics that class certification as to the issue of liability is appropriate").

[135] *Muir v. Nature's Bounty (De), Inc.*, No. 15 C 9835, 2018 U.S. Dist. LEXIS 128738, at *25-26 (N.D. Ill. Aug. 1, 2018). *See also* Ex. 77 (Survey of prohibited acts under multi-state laws).

[136] *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2018 U.S. Dist. LEXIS 213658, at *14 (S.D. Ill. July 3, 2018) ("*Suchanek IV*").

[137] *Suchanek III*, 2017 U.S. Dist. LEXIS 138016, at *39.

[138] *Id.*

general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled [by defendant's representations]."[139] In D.C., the trier of fact analyzes a deceptive act "in terms of how the practice would be viewed and understood by a reasonable consumer."[140] And in Florida, courts ask "whether the practice was likely to deceive a consumer acting reasonably."[141] The other 11 states' standards are in accord.[142]

---

[139] *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003).

[140] *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011).

[141] *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

[142] *Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*, 62 P.3d 142, 148 (Colo. 2003) (defining a deceptive act as "a misrepresentation . . . [with] the capacity or tendency to deceive, even if it did not"); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) ("Under the CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive.") (interpreting Illinois law); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004) (defining a deceptive act as having a "capacity to mislead consumers, acting reasonably under the circumstances"); *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987) ("It is sufficient if the class can establish that a reasonable person would have relied on the representations."); *State by Humphrey v. Directory Publ'g Servs., Inc.*, No. C1-95-1470, 1996 WL 12674, at *4 (Minn. Ct. App. Jan. 16, 1996) (consumer protection statute prohibits representations with a "tendency or capacity to deceive"); 15 Mo. Code Regs. § 60-9.020 ("Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead . . . ."); *Chroniak v. Golden Inv. Corp.*, 983 F.2d 1140, 1146 (1st Cir. 1993) ("A practice may be 'deceptive'. . . if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted.") (interpreting New Hampshire law); *Sauro v. L.A. Fitness Int'l, LLC*, No. CIV. 12-3682 JBS/AMD, 2013 WL 978807, at *5 (D.N.J. Feb. 13, 2013) ("For an alleged deceptive act to be actionable, courts consider whether the act has the capacity to mislead the average consumer."); *Smoot v. Physicians Life Ins. Co.*, 87 P.3d 545, 550 (N.M. Ct. App. 2003) (New Mexico "does not require that the defendant's conduct actually deceive a consumer; it permits recovery even if the conduct only 'tends to deceive.'"); *Matter of Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*, 859 N.E.2d 473, 477 (N.Y. 2006) (The "objective standard . . . asks whether the 'representation or omission [was] likely to mislead a reasonable consumer acting reasonably under the circumstances . . . .'"); *Peterson v. Kitsap Cmty. Fed. Credit Union*, 287 P.3d 27, 37-38 (Wash. Ct. App. 2012) (a deceptive practice has "the capacity to deceive a substantial portion of the public"). *See also* Exs. 77, 79, 80 (survey of state law, exemplar jury instructions, and exemplar special verdict form).

2. **Plaintiff can prove deception under an objective standard using Pfizer's documents—evidence that will not vary from state to state.**

Due to the objective standards in the multi-state class, one trial can resolve all purchasers' claims in 14 jurisdictions. Because objective inquiries focus exclusively on a *defendant's* conduct, proof will be inherently common.[143] Here, Plaintiff will establish at trial that Pfizer's actions had the "capacity" to mislead or would mislead a reasonable consumer, using Pfizer's own communications, internal analyses and presentations, market research, consumer complaint database, and consumer surveys. A juror could conclude that a reasonable consumer would be misled by Pfizer's actions because:



---

[143] *See, e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *11 (C.D. Cal. Apr. 9, 2014) ("[T]hat a large number of factors may have gone into each consumer's decision to purchase Defendants' products is immaterial here given the objective materiality of the alleged misrepresentations."); *Carriuolo*, 823 F.3d at 990 ("A class member's subjective sophistication or knowledge is irrelevant because the liability inquiry states objective elements."); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 713-14 (Mo. Ct. App. 2009) ("an unlawful practice . . . may be demonstrated by the defendant's conduct—irrespective of mental state").

[144] Proffer ¶¶ 61, 64, 67, 68, 69.

[145] *Id.* ¶¶ 44-55.

[146] *Id.* ¶ 79.

[147] *Id.* ¶ 85.

Evidence of this nature routinely satisfies the consumer fraud standards Plaintiff seeks to meet.

In *Hadley v. Kellogg Sales Company*, a consumer plaintiff proffered the same type of evidence to prove a violation of California's consumer fraud act. The plaintiff alleged Kellogg's use of the terms "healthy," "nutritious," or "wholesome" misled consumers where the products contained excess added sugar.[148] At class certification, the plaintiff relied on "Kellogg's own internal documents [to] show that Kellogg deliberately crafted and displayed these challenged health statements—after years of meticulously studying consumer behavior and preferences in the cereal market—as part of a full-scale advertising and marketing push to increase sales."[149] Over Kellogg's objections as to the evidence proffered, the district court certified the class, noting the internal documents and studies sufficed, as "courts have explicitly rejected the view that a plaintiff must produce extrinsic evidence" to meet the standard.[150]

Further, not only does such evidence suffice, it will not vary. For this reason, the court certified a multi-state class in *Suchanek v. Sturm Foods, Inc.* In *Suchanek I*, the plaintiffs alleged the defendant misrepresented that its single use coffee pods contained microground coffee when they in fact "contained over 95% instant coffee with only a tiny bit of microground coffee mixed

---

[148] *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955, 2018 WL 3954587, at *1-2 (N.D. Cal. Aug. 17, 2018).

[149] *Id.* at *20 (internal quotations omitted).

[150] *Id.*; *see also In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1018 (deceptiveness and materiality of a "100% Natural" claim on defendant's label can "be inferred from [its] internal strategy documents" because they tend to show that "consumers find the '100% Natural' claim material to their purchasing decisions"); *Carriuolo*, 823 F.3d at 985-86 ("Because a plaintiff . . . need not show actual reliance . . . [defendant] is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. . . . [T]he factfinder must only determine whether [the statement] would deceive an objectively reasonable observer . . . .").

- 27 -

in."[151] Plaintiffs moved to certify a multi-state consumer fraud class consisting of eight states.[152] The Seventh Circuit reversed the denial of that motion, noting that "[a]ll of the applicable state consumer protection laws at issue here may be satisfied by proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true."[153] On remand, the district court certified the class, noting the class-wide issue "turns on whether [the misrepresentation] was likely to deceive a reasonable consumer," which "is identical across every class member because all of the applicable consumer protection statutes require proof that [the statement] was likely to mislead a reasonable consumer."[154] The district court explained that "it would be extraordinarily duplicative and wasteful of the time and resources of both the Court and the parties to litigate this question in individual cases" because the proof would be the same.[155]

Similarly, the standard for deception can be handled through a single jury instruction, querying whether Pfizer's conduct was "likely to mislead"[156] or had "the tendency or capacity to"[157] deceive a reasonable consumer.[158] The jury could thus resolve the issue for the entire multi-state class. At that point, the jury could then turn to the issue of causation.

---

[151] *Suchanek I*, 764 F.3d at 753.

[152] *Id.* at 755.

[153] *Id.* at 761-62.

[154] *Suchanek II*, 311 F.R.D. at 259.

[155] *Id.*

[156] California, Florida, Massachusetts, Michigan, New Hampshire, New York, and Washington, D.C. *See supra* nn.139-142.

[157] Colorado, Illinois, Minnesota, Missouri, New Jersey, New Mexico, and Washington. *See id.*

[158] *See* Ex. 79 (Exemplar Proposed Jury Instructions for Multi-State Consumer Protection and Unjust Enrichment Claims), Ex. 80 (Exemplar Special Verdict Form for Multi-State Consumer Protection and Unjust Enrichment Claims).

### 3. The issue of causation may be resolved in a multi-state class by grouping the states into two categories.

The multi-state class is likewise amenable to class-wide resolution on the issue of causation because no state requires proof of individual reliance. Instead, the states' causation standards can be divided into two groups: (1) states with an objective materiality or reasonable person standard for causation (California, Florida, Massachusetts, Michigan, Washington, D.C.); or (2) states with "ascertainable loss" or proximate cause standards (Colorado, Illinois, Minnesota, Missouri, New Hampshire, New Jersey, New Mexico, New York, Washington).[159] Each standard can be met using common evidence because they do not require proof of an individual's reliance, subjective mindset, or purchasing decision. Thus, the only impact on a trial would again be the submission of appropriate jury instructions.

First, for a number of states, the causation inquiry mirrors the objective "reasonable person" inquiry. Florida, Massachusetts, Michigan, and Washington, D.C. subsume the causation inquiry in the reasonable person standard for deception.[160] California differs only in that it adds a materiality aspect: "[c]ausation as to each class member is commonly proved more likely than not" by asking whether the misrepresentation "would have been material to any reasonable

---

[159] *See* Exs. 77, 79, 80 (survey of state law, exemplar jury instructions and special verdict form). In the event that this Court decides to certify a multi-state class and seeks class representatives for each grouping, a motion for intervention has been separately filed.

[160] *Carriuolo*, 823 F.3d at 984 ("Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably. That is, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.") (internal quotations omitted); *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 169 (Mass. Ct. App. 2009) ("Causation is established if the deception could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.") (internal quotations omitted); *Dix*, 415 N.W.2d at 209 ("We hold that members of a class . . . need not individually prove reliance . . . . It is sufficient . . . that a reasonable person would have relied on the representations."); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 9 (D.D.C. 2002) ("[I]t follows that the element of causation could also be proven through the same 'reasonable person' standard.").

purchaser."[161] Given that these standards ask the jury to resolve the same question as the deception inquiry, the evidence will not differ and common questions predominate.

Second, for the remaining states—Colorado, Illinois, Minnesota, Missouri, New Hampshire, New Jersey, New Mexico, New York, and Washington—a plaintiff need only establish a causal link between the injury and Pfizer's conduct.[162] For these states, each class member need not prove that s/he relied on the misrepresentation to recover; instead, it suffices that "a plaintiff's *loss* should be a result of the defendant's unlawful practice, [not] that the *purchase* be caused by the unlawful practice."[163]

---

[161] *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002), *as modified on denial of reh'g* (May 29, 2002).

[162] *See Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 100 (Colo. 2011) (an inference of reliance may be established by circumstantial evidence, that may be rebutted with evidence from defendant); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996) ("Plaintiff's reliance is not an element . . . but a valid claim must show that the consumer fraud proximately caused plaintiff's injury."); *Plubell*, 289 S.W.3d at 714 (plaintiffs need only show the misrepresentation resulted in a loss to plaintiffs, not that it caused the purchase); *Mulligan v. Choice Mortg. Corp. USA*, No. CIV. 96-596-B, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998) ("A CPA plaintiff need only establish a causal link between the conduct at issue and his or her injury."); *Int'l Union of Operating Eng'rs*, 929 A.2d at 1086 ("Our statute essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove ascertainable loss."); *Smoot*, 87 P.3d at 550 ("Causation requires a nexus between a defendant's conduct and a plaintiff's loss . . . ."); *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) ("Nothing more is required than that a plaintiff suffer a loss because of defendant's deceptive act" and what plaintiffs may prove "through classwide evidence regarding [defendant's] allegedly illegal policy and plaintiffs' monetary losses.") (internal citations and quotations omitted); *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (plaintiff may prove causation by circumstantial evidence of "some" consumer reliance, which defendant can rebut with evidence); *Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 137-38 (Wash. 2011) ("[T]he proximate cause standard embodied in [the Washington Pattern Jury Instructions] is required to establish the causation element in a CPA claim.").

[163] *Plubell*, 289 S.W.3d at 714 (emphasis in original).

States frequently just borrow the definition of proximate cause from negligence law to instruct the jury.[164] But as a practical matter, the inquiry remains substantively the same. And in all instances, plaintiffs may establish causation "using common proof."[165] For example, Plaintiff can establish "the necessary 'causal nexus' between their ascertainable loss and the alleged misrepresentation[]" by showing that the class "did not get what they paid for,"[166] or using evidence "tending to show the materiality of the misleading marketing" or that demonstrates very few "informed purchasers would have bought the product."[167]

Importantly, differences in causation standards will not require separate trials, and any complexities are offset by the efficiencies gained by the class action mechanism. As explained in *Suchanek II*, "[i]ndividual litigation is not even a realistic alternative."[168] In fact, the *Suchanek IV* court demonstrates firsthand the manageability and superiority of a multi-state class action, having proposed a trial plan that first addresses the issue of deception to a reasonable consumer and then, if necessary, proceeds to causation and damages.[169] Because the multi-state class contains states with sufficiently similar laws and standards, common issues predominate.

---

[164] *See, e.g.*, *Connick*, 174 Ill. 2d at 501; *Schnall*, 259 P.3d at 137-38; *see also* N.J. Civ. Jury Instructions § 4.43; N.M. Uniform Civ. Jury Instructions, Rule 13-1707.

[165] *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 74; *see also supra* n.162.

[166] *See id.*; *see also Rodriguez*, 300 F.R.D. at 147 (plaintiffs may prove causation "through classwide evidence regarding [defendant's conduct] and plaintiffs' monetary losses").

[167] *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 583 (N.D. Ill. 2014).

[168] *Suchanek II*, 311 F.R.D. at 259.

[169] *See Suchanek IV*, 2018 U.S. Dist. LEXIS 213658, at *46-47.

**C.     Common Questions of Law Predominate for the Claims of the Unjust Enrichment Multi-State Class**

Courts "commonly certify claims of unjust enrichment for class treatment in cases like this one where defendant acted in the same manner toward every class member."[170] Plaintiff seeks to certify a class of eight jurisdictions with the same elements of a cause of action for unjust enrichment (Arkansas, Colorado, Connecticut, District of Columbia, Illinois, Iowa, Missouri, New Mexico and New York). As these jurisdictions apply common elements, common questions of law predominate.[171] Each of these jurisdictions requires proof of three elements: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant retained the benefit and (3) the defendant's retention of the benefit would be unjust.[172]

On top of this, common questions of fact predominate. Each class member's claim results from a single act: Pfizer's decision to reduce the level of active ingredients in Maximum Strength Robitussin to a level lower than Regular Robitussin.[173] Common questions of fact regarding benefit and transfer exist because these elements can be proven through common evidence ▮▮▮▮▮▮▮▮▮▮ [174] And the amount of profits that Pfizer "reaped because of [its

---

[170] *Bowe v. Pub. Storage*, 318 F.R.D. 160, 184 (S.D. Fla. 2015).

[171] *See, e.g., Fenwick v. Ranbaxy Pharms., Inc.*, No. 3:12-cv-07354 (PGS)(DEA), 2018 U.S. Dist. LEXIS 194780, at *37 (D.N.J. Nov. 13, 2018) ("[M]any courts have determined that unjust enrichment laws do not vary in any substantive manner from state to state.") (quotation and citation omitted); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 675 (S.D. Fla. 2015) ("There is general agreement among courts that the minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict.") (quotation and citation omitted).

[172] *See generally* Ex. 78 (survey of unjust enrichment law).

[173] *See Barnes*, 310 F.R.D. at 559 (certifying unjust enrichment claim where "each putative class member's claim arises from a single act, [defendant's] decision to accept dues and contract maintenance fees from pilots whom it did not represent, and the answer to the question whether [defendant] unjustly enriched itself will be the same for all putative class members").

[174] Proffer ¶¶ 73-75; Ex. 15 at Lesch Report ¶¶ 20, 25, 31, 35, 43, 45. *Cf. Rodriguez*, 300 F.R.D. at 147 (finding plaintiffs would be able to use common evidence of defendants' billing

conduct]" can also be demonstrated using calculations measured by Plaintiff's damages expert.[175] Common issues predominate for the Unjust Enrichment Multi-State Class.

### D.    Common Questions of Law Predominate for the Illinois Subclass

In the alternative, should the Court decline to certify the Nationwide Class or either multi-state class, Plaintiff requests that the Court certify a single state class under Illinois law. Applying only one state's law means common legal questions necessarily predominate.[176]

Under the Illinois Consumer Fraud Act, a plaintiff must prove: (1) a deceptive act; (2) defendant's intent for plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) actual damages; and (5) proximate causation.[177] Like the other jurisdictions, Illinois also employs a "reasonable consumer" standard, which remains susceptible to common proof.[178] As for the second and third elements, evidence will necessarily be common, focusing solely on Defendant's conduct. For example, in *Mullins*, the plaintiff alleged the defendant misrepresented that it clinically tested certain health benefits of its product. To meet the first three elements of the ICFA, the purchaser relied largely on "internal documents reflecting Defendant's awareness that it did not have clinical support for the ingredients . . . ."[179] Affirming class certification, the Seventh Circuit explained, under the

---

practice to demonstrate unjust enrichment); *Downing v. Riceland Foods, Inc.*, No. 4:13CV321 CDP, 2015 U.S. Dist. LEXIS 34154, at *23 (E.D. Mo. Mar. 19, 2015) (finding common issues of fact predominated where the issues of "what [defendant] did and what benefit it received" were common).

[175] *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004).

[176] *See Martin*, 818 F.3d at 308.

[177] *Dubey v. Pub. Storage, Inc.*, 395 Ill. App. 3d 342, 353 (2009).

[178] *Mullins*, 795 F.3d at 673; *Suchanek II*, 311 F.R.D. at 259 ("This question is particularly appropriate for class-wide resolution.").

[179] Pls.' Mem. Supp. Class Cert., *Mullins v. Direct Digital, LLC*, No. 13-CV-01829, 2014 WL 10270706 (N.D. Ill. Feb. 18, 2014).

reasonable consumer standard, the case presented "a common question: Were the statements false or misleading?"[180] Thus, the "claims do not rise or fall on whether individual consumers experienced health benefits, . . . [but] on whether [the] representations were deceptive."[181]

Regarding injury and causation, Illinois employs a "proximate cause" standard. The required allegation of proximate cause is minimal and satisfied where the misleading statements occurred prior to the purchases.[182] A court's analysis of causation focuses on two prongs: (1) whether damages can be reasonably estimated; and (2) if so, then it should examine the superiority and predominance issues in conjunction.[183] With respect to superiority, "the court needs to assess the difficulty and complexity of the class-wide issues as compared with the individual issues."[184] While it often requires significant expense to prove class issues, it conversely "would be a straightforward matter for each purchaser to present her evidence on reliance and causation."[185] Thus, a "court might conclude . . . that the class device is superior, because no rational individual plaintiff would be willing to bear the costs of this lawsuit."[186]

Likewise, under Illinois unjust enrichment law, class members will each be required to show that Pfizer "has unjustly retained a benefit to the plaintiffs detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good

---

[180] *Mullins*, 795 F.3d at 673.

[181] *Id.*

[182] *Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *27.

[182] *Connick*, 675 N.E.2d at 595. Common evidence will satisfy this as the representations at issue appeared on the front of each package.

[183] *See Suchanek I*, 764 F.3d at 759-61.

[184] *Id.* at 760.

[185] *Id.*

[186] *Id. See also Suchanek II*, 311 F.R.D. at 259 (certifying the class because "[i]ndividual litigation is not even a realistic alternative").

conscience."[187] These are all elements provable class-wide and will use the same evidence that Plaintiff would submit on behalf of the Unjust Enrichment Multi-State Class. Common questions predominate.

### E. Plaintiff's Method for Calculating Damages Satisfies *Comcast*

Under *Comcast*, "a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide injury that the suit alleges" and are susceptible of measurement "on a class-wide basis through use of a common methodology."[188] Plaintiff satisfies *Comcast* since she alleges damages theories—benefit of the bargain, out-of-pocket loss, and disgorgement of profits—tied to each claim that can be measured class-wide.

Plaintiff retained Joel Lesch, a Certified Public Accountant and Certified Fraud Auditor with experience calculating damages, to (1) determine whether damages were capable of being measured class-wide, and (2) evaluate whether that methodology could be implemented based on available data.[189] In ███████████████████████████████████████████ ████████████████████████████████████████████████████████████.[190] Based on his review of the materials, Mr. Lesch concluded that damages to the classes are capable of being calculated on a class-wide basis using common evidence.

---

[187] *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 787 (2009).

[188] *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (quoting *Comcast Corp. v. Beherend*, 133 S. Ct. 1426, 1430 (2013)).

[189] Ex. 15 at ¶ 4.

[190] *Id.* ¶ 20.

First, for the Nationwide Class, Mr. Lesch calculated refund damages under N.J. Stat.

§ 56:8-2.11. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ [191]

Second, Mr. Lesch considered the two alternative measurements for damages under state

consumer protection acts—benefit-of-the-bargain damages and out-of-pocket loss.[192] Courts

accept both "in state consumer protection actions to put defrauded consumers in the position they

would have been had they received that which they bargained for."[193]

First, benefit-of-the-bargain "damages ensure that the defrauded party is . . . placed in the

same financial position he would have occupied had the misrepresentations in fact been true."[194]

The measurement for benefit-of-the-bargain damages is "the difference between the product's

value if the misrepresentations had been true and the product's true value."[195] Mr. Lesch

measured the difference between the value of Maximum Strength Robitussin as represented and

the value as sold.[196] ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[191] Ex. 15 at ¶¶ 35, 38. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) ("[P]laintiffs are permitted to use estimates and analysis to calculate a reasonable approximation of their damages.") (citation omitted); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 934 (N.D. Ill. 2010) (recognizing damages "need not be calculated with mathematical precision") (citation omitted).

[192] Ex. 15 at ¶¶ 15, 16.

[193] *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 383 (E.D.N.Y. 2010). *See also* Ex. 76 (survey of states utilizing benefit-of-the-bargain theory and/or out-of-pocket loss theories).

[194] *Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 U.S. Dist. LEXIS 49828, at *11-12 (N.D. Ill. Apr. 10, 2012) (Feinerman, J.) (quotations and citations omitted, alteration in original).

[195] *Id.*

[196] Ex. 15 at ¶ 28.

████████████████ █████████████████████████████████

████████████████████████████████████████████ [198]

Second, under the out-of-pocket measure, "damages are defined as the difference between the purchase price and the price that would have been received but for the alleged fraud."[199] Mr. Lesch measured the difference between the price paid for Maximum Strength Robitussin and the actual value of the product. ████████████████████

██████████████████████████████████████████

██████████████████████████ ███████████████████

████████████████████████████████████ [201]

Next, "[d]isgorgement of profits is an appropriate remedy for an unjust enrichment claim," which "seeks to disgorge a benefit that the defendant unjustly retains."[202] ██████████

█████████████████████████████████████████████

█████████████████████████ ██████████████████████

██████████████████████████████████████

---

[197] *Id.*

[198] *Id.* ¶¶ 38, 40. Mr. Lesch demonstrates that damages can be calculated for each state—and thus modified to conform to the states that the Court ultimately certifies.

[199] *Lawrence E. Jaffe Pension Plan*, 756 F. Supp. 2d at 934 (citing *Harris Trust & Sav. Bank v. Ellis*, 810 F.2d 700, 706-07 (7th Cir. 1987)).

[200] Ex. 15 at ¶ 29.

[201] *Id.* ¶ 40. *See, e.g.*, *Suchanek I*, 764 F.3d at 760 ("[D]amages might be computed by taking the difference between the actual value of the package . . . and the inflated price she paid[.]").

[202] *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 U.S. Dist. LEXIS 173964, at *14 (N.D. Ill. Dec. 17, 2014) (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014)).

[203] Ex. 15 at Lesch Report ¶¶ 42-50.

████████ ██████████████████████████ ██████████
████████████████████ Damages are susceptible of class-wide measurement.

## VII.    A CLASS ACTION IS SUPERIOR TO INDIVIDUAL CASES

This case satisfies Rule 23(b)(3)'s superiority requirement as it is superior to other available methods for fairly and efficiently adjudicating the controversy.[207] First, "'the class members' interests in individually controlling the prosecution or defense of separate actions,' Fed. R. Civ. P. 23(b)(3)(A), are minimal, as the amount at stake for each class member is very small."[208] However, damages in the aggregate here are substantial.[209] This favors certification.

Second, one other class action has been filed challenging Defendant's conduct.[210] However, Plaintiff's counsel in this case filed *Woodhams* only after this Court dismissed Woodhams on personal jurisdiction grounds without prejudice.[211] And the plaintiffs in *Woodhams* have sought a stay of that action under the first-filed rule so that this action may proceed. This factor also favors class certification.

---

[204] *Id.* ¶¶ 42, 46.

[205] *Id.* ¶¶ 42, 44, 46, 47, 48.

[206] *Id.* ¶ 52.

[207] Fed. R. Civ. P. 23(b)(3).

[208] *Boundas*, 280 F.R.D. at 417. *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).

[209] *See generally* Ex. 15 (Lesch Report). *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.").

[210] *See Woodhams, et al. v. Pfizer*, No. 1:18-CV-03990-JPO (S.D.N.Y.).

[211] *See Al Haj*, 2018 U.S. Dist. LEXIS 62487, at *18.

Finally, there is no risk that the classes will be unmanageable.[212] "Parallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery," a situation that this Court has recognized "would make no sense."[213] Because of the uniformity of the law applicable at a class trial, the case will be manageable.[214] But even "[i]f faced with what appear to be unusually difficult manageability problems at the certification stage," this Court has a wide variety of tools and methods for managing a certified class.[215] A class action is the superior method for adjudication.

## VIII. THE CLASS IS OBJECTIVELY DEFINED

Additionally, Plaintiff's proposed classes are objectively defined and "definite enough that the class can be ascertained."[216] Here, the class definitions focus on the purchase of Maximum Strength Robitussin, a particular, readily identifiable product.[217] As a result, the class is objectively defined and thus ascertainable.[218]

---

[212] Fed. R. Civ. P. 23(b)(3)(D).

[213] *Barnes*, 310 F.R.D. at 562.

[214] *See* Exs. 76-78 (state law charts); Ex. 79 (Exemplar Proposed Jury Instructions for Multi-State Consumer Protection and Unjust Enrichment Claims); Ex. 80 (sample verdict forms). *See also* Fed. R. Civ. P. 49; MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.633 (2009) ("Special verdict forms or interrogatories may help the jury focus on the issues, reduce the length and complexity of the instructions, and minimize the need for, or scope of, retrial in the event of reversible error. [They] may also be used in connection with a procedure by which issues are submitted to the jury sequentially. The jury may be asked to consider a threshold or dispositive issue and return its verdict before submission of other issues, which may be rendered moot by the verdict."). *See generally supra* § VI.

[215] *Mullins*, 795 F.3d at 664.

[216] *Barnes*, 310 F.R.D. 551 at 556. *See also Mullins*, 795 F.3d at 660-61.

[217] Proffer ¶¶ 15, 16, 17, 18.

[218] Furthermore, with an eye toward providing notice and/or distributions, Plaintiff secured agreements from major retailers to preserve customer-identifying information collected through store loyalty programs. *See* Exs. 69-74 (collecting retailer declarations).

## IX. HAGENS BERMAN SOBOL SHAPIRO LLP SHOULD BE APPOINTED CLASS COUNSEL UNDER FED. R. CIV. P. 23(g)

Finally, Plaintiff's counsel has and will continue to "fairly and adequately represent the interests of the class."[219] As a result, Plaintiff respectfully requests that the Court appoint Hagens Berman Sobol Shapiro LLP as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## X. CONCLUSION

For the reasons provided above, Plaintiff respectfully requests that this Court (1) certify the classes, as detailed above, (2) appoint Plaintiff as Class representative, (3) appoint Hagens Berman Sobol Shapiro LLP as Class Counsel, (4) direct that notice be sent to the Classes, and (5) grant her all such other relief as the Court deems necessary and appropriate.

DATED: January 11, 2019    Respectfully submitted,

         By: */s/ Elizabeth A. Fegan*
         Elizabeth A. Fegan
         Daniel J. Kurowski
         Emily R. Brown
         HAGENS BERMAN SOBOL SHAPIRO LLP
         455 N. Cityfront Plaza Drive, Suite 2410
         Chicago, IL 60611
         Telephone: (708) 628-4949
         Facsimile: (708) 628-4950
         beth@hbsslaw.com
         dank@hbsslaw.com
         emilyb@hbsslaw.com

         Steve W. Berman
         HAGENS BERMAN SOBOL SHAPIRO LLP
         1301 2nd Avenue, Suite 2000
         Seattle, WA 98101
         Telephone: (206) 623-7292
         Facsimile: (206) 623-0594
         steve@hbsslaw.com

         Darren Malek
         VERITAS LAW GROUP

---

[219] Fed. R. Civ. P. 23(g)(4). *See also supra* § V.E.

Kalamazoo Building
5th Floor
107 W. Michigan Avenue
Kalamazoo, Michigan 49007
(269) 270-3500

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate redacted copy of the foregoing (along with an unredacted copy filed under seal) was filed electronically via the Court's ECF system, on January 11, 2019. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system with courtesy copies to be separately sent by e-mail.

By: */s/ Elizabeth A. Fegan*
Elizabeth A. Fegan