# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KARMEL AL HAJ, individually and on behalf of
all others similarly situated,

        Plaintiff,

    v.

PFIZER INC.,

        Defendant.

No. 17-cv-6730

Hon. Gary Feinerman

Magistrate Judge Susan E. Cox

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
## PFIZER INC.'S MOTION FOR SUMMARY JUDGMENT

REDACTED VERSION FILED ON PUBLIC DOCKET
UNREDACTED VERSION FILED UNDER SEAL UNDER
AGREED CONFIDENTIALITY ORDER (Dkt. # 51)

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. SUMMARY OF RELEVANT FACTS ..................................................................3

    A. Plaintiff's Purchase of Maximum Strength Robitussin ...............................3

    B. Through Project Accelerate, Pfizer Reformulated Maximum Strength Robitussin to Contain Less Active Ingredients Per Bottle Than Regular Robitussin .....................................................................................................4

    C. Pfizer Launched the Reformulated Maximum Strength Robitussin ............7

III. LEGAL STANDARDS FOR SUMMARY JUDGMENT ....................................8

IV. GENUINE DISPUTES OF MATERIAL FACT EXIST.......................................9

    A. The Court Should Deny Summary Judgment on the Consumer Fraud Act Claim............................................................................................................9

        1. Genuine issues of material fact exist regarding whether Pfizer committed a deceptive act or practice likely to mislead a reasonable consumer. .............................................................10

        2. Fact issues exist regarding whether Pfizer's deceptive act proximately caused an injury to Plaintiff. ...................................18

        3. Fact issues exist regarding whether Ms. Al Haj suffered an injury. ..........22

    B. The Court Should Deny Summary Judgment on the Unjust Enrichment Claim..........................................................................................................24

    C. Ms. Al Haj Is an Adequate Class Representative .....................................25

V. CONCLUSION...................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. 2017) (Feinerman, J.).......................................16, 17

*Al Haj v. Pfizer Inc.*,
  338 F. Supp. 3d 741 (N.D. Ill. 2018) ..........................................................10, 13, 18

*Blankenship v. Pushpin Holdings, LLC*,
  No. 14 C 6636, 2015 WL 5895416 (N.D. Ill. Oct. 6, 2015) ................................22

*Burton v. Hodgson Mill, Inc.*,
  No. 16-cv-1081, 2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ................................11

*Cavin v. Home Loan Ctr., Inc.*,
  236 F.R.D. 387 (N.D. Ill. 2006)...........................................................................26

*Connick v. Suzuki Motor Co., Ltd.*,
  675 N.E.2d 584 (Ill. 1996)...................................................................................19

*Culver v. City of Milwaukee*,
  277 F.3d 908 (7th Cir. 2002) ...............................................................................26

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) ...............................................................................17

*Duhl v. Nash Realty, Inc.*,
  429 N.E.2d 1267 (Ill. App. Ct. 1981) ....................................................................9

*George v. Kraft Foods Global, Inc.*,
  251 F.R.D. 338 (N.D. Ill. 2008)...........................................................................26

*Gerill Corp. v. Jack L. Hargrove Builders, Inc.*,
  538 N.E.2d 530 (Ill. 1989)...................................................................................22

*Gutierrez v. LVNV Funding, LLC*,
  No. EP-08-CV-225-DB, 2009 WL 10699516 (W.D. Tex. Mar. 16, 2009) ......................27, 28

*Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*,
  319 F.3d 973 (7th Cir. 2003) .................................................................................9

*Hillen v. Blistex, Inc.*,
  No. 17 C 2074, 2017 WL 2868997 (N.D. Ill. July 5, 2017) ................................25

*Jamison v. Summer Infant (USA), Inc.*,
    778 F. Supp. 2d 900 (N.D. Ill. 2011) ......................................................................25

*Kremers v. Coca-Cola Co.*,
    712 F. Supp. 2d 759 (S.D. Ill. 2010) ......................................................................21

*Laurens v. Volvo Cars of N. Am., LLC*,
    No. 16-cv-4507, 2017 WL 5891185 (N.D. Ill. Nov. 27, 2017) ..............................25

*Lee v. Chicago Transit Auth.*,
    605 N.E. 2d 493 (Ill. 1992) ....................................................................................19

*Lipton v. Chattem, Inc.*,
    No. 11 C 2952, 2012 U.S. Dist. LEXIS 49828 (N.D. Ill. Apr. 10, 2012)..........22, 23

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018).........................................................................15, 16, 24

*Marr v. Bank of Am., N.A.*,
    662 F.3d 963 (7th Cir. 2011) ....................................................................................9

*Mednick v. Precor, Inc.*,
    320 F.R.D. 140 (N.D. Ill. 2017)..............................................................................11

*Mednick v. Precor, Inc.*,
    No. 14 C 3624, 2017 WL 2619139 (N.D. Ill. June 16, 2017) ....................18, 19, 20

*Muir v. Nature's Bounty, Inc.*,
    No. 15 C 9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017)................................25

*Mulligan v. QVC, Inc.*,
    888 N.E.2d 1190 (Ill. App. Ct. 2008) .....................................................................23

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...................................................................................10

*Nudelman v. Costco Wholesale Corp.*,
    No. 10-cv-374, 2013 WL 12357488 (E.D.N.Y. Feb. 11, 2013) ........................21, 22

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002)....................................................................................9, 19

*Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*,
    No. 12-1099, 2015 WL 13590362 (C.D. Ill. June 2, 2015)....................................21

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
    252 F.R.D. 438 (N.D. Ill. 2008)..............................................................................26

*Reid v. Unilever U.S., Inc.,*
    964 F. Supp. 2d 893 (N.D. Ill. 2013) ......................................................................24

*Rugumbwa v. Betten Motor Sales,*
    200 F.R.D. 358 (W.D. Mich. 2001) ........................................................................27

*Suchanek v. Sturm Foods, Inc.,*
    764 F.3d 750 (7th Cir. 2014) ..................................................................... *passim*

*Tolan v. Cotton,*
    134 S. Ct. 1861 (2014) ..............................................................................................8

*Trujillo v. Apple Computer, Inc.,*
    581 F. Supp. 2d 935 (N.D. Ill. 2008) ....................................................................17

*Villasenor v. Am. Signature, Inc.,*
    No. 06 C 5493, 2007 WL 2025739 (N.D. Ill. July 9, 2007) ...................................21

*Walker v. Bankers Life & Cas. Co.,*
    No. 06 C 6906, 2007 WL 2903180 (N.D. Ill. Oct. 1, 2007) ...................................26

*Wiegel v. Stork Craft Mfg., Inc.,*
    780 F. Supp. 2d 691 (N.D. Ill. 2011) ...............................................................20, 25

*Wigod v. Wells Fargo Bank, N.A.,*
    673 F.3d 547 (7th Cir. 2012) ....................................................................................9

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ............................................................15, 16, 18, 24

## OTHER AUTHORITIES

21 C.F.R. § 341.74 ..........................................................................................................18

Fed. R. Civ. P. 56(a) ........................................................................................................8

# I.    INTRODUCTION

Plaintiff Karmel Al Haj and Pfizer agree that Maximum Strength Robitussin Chest+Cough Congestion DM ("DM Max" or "Maximum Strength Robitussin") contains less active ingredients per volume than Robitussin Cough+Chest Congestion DM ("Regular Robitussin"). But, contrary to its own consumer research, customer feedback, Ms. Al Haj's testimony, and the plain meaning of the phrase, Pfizer contends that its use of the phrase "maximum strength" is not deceptive under the Illinois Consumer Fraud and Deceptive Trade Practices Act because it means the most amount of active ingredient per dose permitted by FDA regulations.

The question of a reasonable interpretation of "maximum strength" should be put to a jury. No evidence in the record reflects that consumers understand "maximum strength" to mean what Pfizer asserts. On the contrary, the evidence shows that Ms. Al Haj, and consumers generally, interpret "maximum strength" to mean that the medicine contains more active ingredients per volume than its non-maximum strength counterpart. Pfizer's inclusion of "See New Dosing" language and the small print, "maximum strength claim is based on maximum amount of active ingredients per dose," does not save it from a trial. Neither of these phrases tell consumers what they ought to know: Maximum Strength Robitussin does not contain more active ingredients per volume than Regular Robitussin—*i.e.*, it is not a stronger formula.

Pfizer's attempt to discount Ms. Al Haj's clear testimony that its objectively deceptive label proximately caused her injury should be rejected as a transparent attempt to disqualify class representatives who are not native English speakers. Ms. Al Haj demonstrated that she is proficient at reading English, can read the label of an over-the-counter medication, and did read

the label of Maximum Strength Robitussin.[1] However, she has difficulty verbally communicating in English when confronted with the pressure of intentionally confrontational, fast-moving, and legally technical lines of questioning.[2] Despite agreeing to allow a translator to help Ms. Al Haj understand and communicate fully in her deposition, Pfizer's attorney repeatedly insisted Ms. Al Haj answer in English, refused to allow the translator to translate questions, and inappropriately pressured Plaintiff for answers.[3] As such, any dispute about the meaning of Ms. Al Haj's statements must be drawn in non-movant Al Haj's favor. The need for a translator at an oral deposition does not render her atypical or inadequate under Rule 23(a)(3) or (a)(4).

Moreover, Pfizer's contention that Ms. Al Haj was not injured because she later bought Delsym—a cough syrup not at issue here—is nonsensical. Pfizer's argument is akin to saying that a plaintiff who paid for a 100% beef patty that was really made of Spam would not be injured if she later purchased actual Spam at the store.

Ms. Al Haj has shown that she was injured because she spent more money on a product labeled "maximum strength" that was not stronger than its less-expensive, regular-strength counterpart. Finally, because a reasonable jury could find that Ms. Al Haj suffered a consumer fraud violation under Illinois law, it could also conclude that Pfizer was unjustly enriched by her purchase. In sum, Pfizer's motion for summary judgment should be denied.

---

[1] Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts ("SAMF") ¶ 55.

[2] *Id.* ¶ 62.

[3] *Id.* ¶¶ 62-63.

010706-11 1093060 V2

## II.    SUMMARY OF RELEVANT FACTS

**A.    Plaintiff's Purchase of Maximum Strength Robitussin**

Plaintiff Karmel Al Haj was deceived when she purchased Maximum Strength Robitussin twice in 2017.[4] Viewing the box prior to purchase,[5] she focused on the representations on the front of the packaging—the "headlines"—to see if the product was "maximum strength," would "control cough," and/or "relieve[] chest and loosen mucous."[6] Ms. Al Haj purchased the product believing that it would be better because the packaging said that the product was maximum strength.[7] She believes that Pfizer tricked people.[8] Discovery has shown that scores of consumers were "tricked" along with Ms. Al Haj, and that indeed Pfizer reformulated its Maximum Strength Robitussin with the intention of deceiving people.[9] Ms. Al Haj seeks:

> to make people aware that Pfizer … tricked people. … And it's not only that I've paid money, you know, or have gone through the expense, but that everyone else [has as well such that Pfizer] should be held liable. It's not an individual problem relating to me, but it relates to everybody that [has] purchased the product.[10]

Since learning of Pfizer's deception, Ms. Al Haj has not purchased Maximum Strength Robitussin.[11]

---

[4] *Id.* ¶¶ 63-67.

[5] *Id.* ¶ 65.

[6] *Id.* ¶ 66.

[7] *Id.* ¶¶ 65-67.

[8] *Id.* ¶¶ 70, 72.

[9] *Id.* ¶¶ 49, 72.

[10] *Id.* ¶ 72.

[11] *Id.* ¶ 69.

010706-11 1093060 V2

**B.** **Through Project Accelerate, Pfizer Reformulated Maximum Strength Robitussin to Contain Less Active Ingredients Per Bottle Than Regular Robitussin**

---

[12] *Id.* ¶ 3.

[13] *Id.* ¶ 4.

[14] *Id.* ¶ 1.

[15] *Id.* ¶ 5.

[16] *Id.* ¶ 6.

[17] *Id.* ¶ 8.

[18] *Id.* ¶ 10.

[19] *Id.* ¶ 12.

010706-11 1093060 V2

---

[20] *Id.* ¶¶ 16, 20.

[21] *Id.* ¶¶ 13-14.

[22] *Id.* ¶ 21.

[23] *Id.* ¶ 22.

[24] *Id.* ¶¶ 23, 24.

[25] *Id.* ¶ 25.

[26] *Id.* ¶ 26.

010706-11 1093060 V2



---

27 *Id.* ¶ 27 (emphasis added).

28 *Id.* ¶ 28.

29 *Id.* ¶ 29.

30 *Id.* ¶ 32 (███████████).

31 *Id.* ¶¶ 34, 38.

32 *Id.* ¶¶ 34-37, 41, 43-45.

33 *Id.* ¶ 34.

34 *Id.* ¶ 36, 41.

35 *Id.* ¶ 37. *See supra*, note 32.



## C.  Pfizer Launched the Reformulated Maximum Strength Robitussin

Pfizer launched the reformulated Maximum Strength Robitussin in June 2016.[40] The reformulation resulted in the product containing *less doses and less active ingredients* per bottle than the same size bottle of Regular Robitussin.[41] The following depicts 8 ounce packages of Regular Robitussin and the reformulated Maximum Strength Robitussin at the time of its launch:[42]

---

[36] *Id.* ¶ 40 (emphasis added).

[37] *Id.* ¶ 43 (emphasis added).

[38] *Id.* ¶ 46.

[39] *Id.* ¶ 47 (emphasis added).

[40] *Id.* ¶ 1.

[41] *Id.*

[42] *Id.* ¶ 2.

| Regular Robitussin | Maximum Strength Robitussin |
|---|---|
|  |  |

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████

### III.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[46] Courts "may not resolve genuine disputes of fact in favor of the [movant]."[47] "[S]ummary judgment is not appropriate if

---

[43] *Id.* ¶ 17.

[44] *Id.* ¶ 49.

[45] *Id.* ¶ 51.

[46] Fed. R. Civ. P. 56(a).

[47] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

the court must make 'a choice of inferences.'"[48] Ms. Al Haj "does not bear the burden of *proving*

[her] case" but "need only point to evidence [that] if believed by the fact-finder, could support a

judgment in [her] favor."[49] Moreover, all evidence must be viewed "in favor of the non-moving

party."[50]

## IV.    GENUINE DISPUTES OF MATERIAL FACT EXIST

### A.    The Court Should Deny Summary Judgment on the Consumer Fraud Act Claim

."The ICFA protects consumers against 'unfair or deceptive acts or practices,' including

'fraud,' 'false promise,' and the 'misrepresentation or the concealment, suppression or omission

of any material fact.'"[51] "The Act is 'liberally construed'"[52] as courts are directed to "utilize the

Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and

grant appropriate remedies to injured parties."[53] As a result, to succeed on a claim under the

ICFA, a plaintiff must show: "(1) a deceptive act or practice by the defendant, (2) the

defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in

the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff

(5) proximately caused by the deception."[54] Arguing under only three elements, Pfizer argues

that Maximum Strength Robitussin's packaging is not deceptive, that its misrepresentations had

---

[48] *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003).

[49] *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011).

[50] *Id.* (citation omitted).

[51] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (quoting 815 ILCS 505/2).

[52] *Id.* (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).

[53] *Duhl v. Nash Realty, Inc.*, 429 N.E.2d 1267, 1277 (Ill. App. Ct. 1981).

[54] *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002).

no bearing on Plaintiff's purchase, and that Plaintiff has not suffered injury.[55] Summary

judgment is inappropriate because Pfizer's motion relies on incorrect readings of Illinois law and

because evidence exists in the record that could support a judgment by a jury in Plaintiff's favor.

### 1. Genuine issues of material fact exist regarding whether Pfizer committed a deceptive act or practice likely to mislead a reasonable consumer.

First, Pfizer asks this Court to opine on a fact question and find now that the Maximum

Strength Robitussin packaging "was not deceptive."[56] Pfizer declares no deception exists

because: (1) the front of packaging stated "See New Dosing" and (2) the back of the packaging

stated "Maximum strength claim based on maximum levels of active ingredients per dose."[57] As

genuine questions of material fact remain as to whether the packaging "was likely to mislead a

reasonable consumer," summary judgment on deception must be rejected.[58]

Under the ICFA, "'a statement is deceptive' under that statute 'if it creates a likelihood of

deception or has the capacity to deceive.'"[59] The focus of the deception inquiry is objective,

asking whether "a statement is likely to mislead a reasonable consumer, even if the statement is

literally true."[60] "Overall, 'the determination [] whether an ad has a tendency to deceive is an

---

[55] *See generally* Def.'s Mem. at 11-13 (deception); 13-16 (causation); 16-18 (damages). Pfizer ignores elements (2) and (3) and thus waived any such argument here.

[56] *Id.* at 11.

[57] *Id.* at 12, 13.

[58] *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014).

[59] *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 754 (N.D. Ill. 2018) (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)).

[60] *Suchanek*, 764 F.3d at 762. *See also id.* ("'[A]n advertisement is deceptive ... if it is likely to mislead consumers, acting reasonably under the circumstances, in a material respect'") (quoting *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992)) (alterations in original). *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015) (analyzing ICFA claim under reasonable consumer standard).

impressionistic one more closely akin to a finding of fact than a conclusion of law.'"[61] Whether Pfizer's packaging is likely to mislead a reasonable consumer is an intricate question of fact.[62]

Here, Ms. Al Haj challenges as deceptive two packaging statements, Pfizer's references to Maximum Strength Robitussin as "maximum strength" or "DM Max." These statements are deceptive because by naming Maximum Strength Robitussin with a plain meaning name, Pfizer intended for consumers to believe that they would get more active ingredients per bottle than Regular Robitussin.[63] However, a bottle of Maximum Strength Robitussin contains less active ingredients than the same size bottle of Regular Robitussin.[64] *Suchanek v. Sturm Foods* illustrates why Pfizer's demand for summary judgment should be rejected.

In *Suchanek*, the plaintiffs sued regarding misrepresentations on product packaging that coffee pods contained microground coffee when they in fact "contained over 95% instant coffee with only a tiny bit of microground coffee mixed in."[65] On appeal, the Seventh Circuit concluded that "the court overlooked genuine issues of fact when it granted summary judgment against the individual plaintiffs."[66] In doing so, it highlighted several examples of evidence that a factfinder could use in assessing whether the packaging was likely to mislead a reasonable consumer:

---

[61] *Suchanek*, 764 F.3d at 762 (quoting *Kraft*, 970 F.2d at 317) (alteration in original).

[62] *See, e.g.*, *Suchanek*, 764 F.3d at 762 ("A jury should have decided the question whether the packaging was likely to mislead reasonable consumers."); *Burton v. Hodgson Mill, Inc.*, No. 16-cv-1081, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) ("the determination of whether or not a reasonable consumer could be misled is an intricate question of fact that is best informed by a pool of members of the community"); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 152 (N.D. Ill. 2017) ("The Court thus leaves the factfinder to assess whether the packaging of the Precor machines—which includes the SmartRate mark, the picture of the heart, and their surrounding context—indeed broadcasts a misleading message.").

[63] Class Action Complaint, ¶ 4.

[64] SAMF ¶ 1.

[65] *Suchanek*, 764 F.3d at 753.

[66] *Id.* at 752.

> Our *de novo* review of the summary judgment record satisfies us that
> there are genuine questions of material fact in each of the
> individual cases whether the GSC packaging was likely to mislead a
> reasonable consumer. Sturm consciously avoided use of the term
> "instant" and designed the package to resemble Keurig products;
> several of the plaintiffs testified that they were misled; the packaging
> contained numerous statements that implied the product was premium
> fresh (*i.e.* unbrewed) coffee; and the package did not explain that it
> was little more than instant coffee.[67]

As a result, the Seventh Circuit determined that "[a] jury should have decided the question

whether the packaging was likely to mislead reasonable consumers."[68]

Facts uncovered in discovery call for the same conclusion here. Like the defendant in

*Suchanek*, Pfizer ██████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

---

[67] *Id.* at 762.

[68] *Id.*

[69] SAMF ¶ 32.

[70] *Id.* ¶¶ 33-45.

[71] *Id.* ¶ 37.

[72] *Id.* ¶ 36.

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████ [74] Likewise, Ms. Al Haj testified that she was deceived, having purchased the product believing that it would be better because the packaging said that the product was maximum strength.[75] And, the package did not explain that Maximum Strength Robitussin contains less active ingredients than Regular Robitussin.[76]

While Pfizer argues that the packaging dispels any confusion, these arguments must be rejected on several grounds. First, the "See New Dosing" language does nothing to dispel the deception alleged by Plaintiff here. The "See New Dosing" language provides no "context clue" that would make it "reasonable to expect a consumer to cross-check a product's ingredient list against another product's list and then perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities it purports to have."[77] Pfizer did not intend the "See New Dosing" language to have consumers compare Maximum Strength Robitussin with Regular Robitussin products to determine whether one contained more or less active ingredients per volume than the other.[78] As Pfizer's Senior Brand Manager for Robitussin explained, ████████████████████████████

████████████████████████████████████████████

---

[73] *Id.* ¶ 40 (emphasis added).

[74] *Id.* ¶ 43 (emphasis added).

[75] *Id.* ¶¶ 65-67.

[76] *Id.* ¶¶ 2, 30.

[77] *Al Haj*, 338 F. Supp. 3d at 756.

[78] *See id.*

██████[79] Nor did Pfizer expect that such language would trigger consumers to cross-check

Maximum Strength Robitussin with any other product (let alone perform arithmetic):



[80]

---

[79] SAMF ¶ 30.

[80] *Id.* (objection omitted). *See also id.* (" ████████████████████████████████████████████ .").

[81] *Id.* ¶ 25.

[82] *Id.* ¶ 27 (emphasis added).

[83] *Id.* ¶ 31.

Finally, discovery of consumer complaints further confirms that a reasonable consumer would not interpret the "See New Dosing" language to check the dosing Maximum Strength Robitussin to make sure that the product contained more active ingredients.[84]

Pfizer's reliance on the hidden language, "Maximum strength claim based on maximum levels of active ingredients per dose," should not be considered in determining whether Plaintiff could establish deception. Recently, the Second Circuit evaluated claims that "whole grain" packaging representations "would cause a reasonable consumer to believe that the grain in whole grain Cheez-Its was predominantly whole grain, when, in fact, it was not" because the primary grain was enriched white flour.[85] The defendant contended that a reasonable consumer would not be deceived because "Nutrition Facts" on "the side panel of the packaging discloses further detail about the product's ingredients."[86] The Second Circuit rejected the idea that "that a reasonable consumer should [] be expected to consult the Nutrition Facts panel on the *side* of the box to correct misleading information set forth in large bold type on the *front* of the box."[87] Similarly, in *Williams v. Gerber Products Co.*, the Ninth Circuit evaluated a defendant's marketing of "Fruit Juice Snacks" by using "the words 'Fruit Juice' juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries."[88] Plaintiff alleged this "juxtaposition was deceptive because the product contained no fruit juice from any of the fruits pictured on the packaging and because the only juice contained in the product was white grape juice from

---

[84] *Id.* ¶¶ 49-51.

[85] *Mantikas v. Kellogg Co.*, 910 F.3d 633, 634 (2d Cir. 2018).

[86] *Id.* at 637.

[87] *Id.* (emphases added).

[88] *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936 (9th Cir. 2008).

concentrate."[89] Reiterating that "whether a business practice is deceptive will usually be a question of fact," the Ninth Circuit rejected the conclusion "that 'no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified.'"[90] And it rejected the argument that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."[91] The Seventh Circuit is in accord.[92] Here too, Pfizer's packaging indicated in bold face that DM Max was "maximum strength." Consumers are not expected to cross-check an ingredient label with another product's to "correct misleading information set forth in large bold type on the front of the box."[93]

Pfizer's reliance on *In re 100% Grated Parmesan* should be rejected as nothing about the label at issue here cures the deception. Plaintiff bases her claim on statements about the relative strength of a maximum product vis-à-vis its regular counterpart. And discovery has confirmed that nothing on the Maximum Strength Robitussin label—not the "See New Dosing" language or the small "Maximum strength claim is based on the maximum amount of active ingredients per dose" declaration—intended to communicate to a reasonable consumer that Maximum Strength Robitussin is less concentrated than Regular Robitussin. Moreover, central to the Court's holding

---

[89] *Id.*

[90] *Id.* at 939 (quoting *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1116 (S.D. Cal. 2006)).

[91] *Id.*

[92] *See Suchanek*, 764 F.3d at 753, 762 (discussing representations on "the front of the GSC package" and citing the reasonable consumer standard in *Williams*).

[93] *Mantikas*, 910 F.3d at 637.

was that the description "100% Grated Parmesan Cheese" was ambiguous.[94] But when it comes to signaling a comparison between the strength of Maximum Strength Robitussin and regular, there is no ambiguity about the term "maximum strength." This signal caused Ms. Al Haj to purchase Maximum Strength Robitussin and she reasonably expected that it would "be better."[95]

Pfizer's citations to *Davis v. G.N. Mortgage Corp.* and *Trujillo v. Apple Computer, Inc.* are inapplicable as neither concerned allegedly deceptive representations about a product on the front of product packaging. *Davis* analyzed deception in the context of a mortgage prepayment penalty agreement, not the sale of a retail product.[96] In that case, the plaintiffs actually signed documents that provided numerous statements of the penalty at issue.[97] Here, there was nothing that Plaintiff could have read on the package to alert her to the fact that Maximum Strength Robitussin was not as strong as Regular Robitussin. In *Trujillo*, a plaintiff alleged that Apple "hid the particulars of Apple's better replacement program …, thus misleading consumers about the 'true nature of the iPhone and its actual expense[,]'" even though Apple "disclosed on the outside of the iPhone package that the device's '[b]attery has limited recharge cycles and may eventually need to be replaced by Apple service provider.'"[98] Unlike the package here, the iPhone package lacked a large, bold front-of-the-package claim contradicting a small reference about battery cycles. In any case, the small print on which Pfizer relies does not flag the fact

---

[94] *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017) (Feinerman, J.).

[95] SAMF ¶ 67.

[96] *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869 (7th Cir. 2005).

[97] *Id.* at 883-84.

[98] *Trujillo v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 936-38 (N.D. Ill. 2008).

material to consumers: the diluted bottle of expensive medicine is not actually stronger than Regular Robitussin.

Lastly, Pfizer's continued citation to 21 C.F.R. § 341.74 needs to be put to bed. This section has no bearing on whether Pfizer representations could deceive a reasonable consumer. As the Court noted, "[a]lthough Food and Drug Administration regulations obligate drug manufacturers to indicate a drug's recommended and required doses, *see* 21 C.F.R. §§ 341.74 & 341.78, federal law does not require them to use the term 'Maximum Strength,' *see ibid.*, and in fact forbids them from using 'misleading' labels, *see* 21 U.S.C. § 352(a); 21 C.F.R. § 201.10(c)."[99] 21 C.F.R. § 341.74 references a range of potential doses and does not use the word "maximum" let alone "maximum strength."[100] Ultimately, the FDA does not "require[] an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."[101]

### 2. Fact issues exist regarding whether Pfizer's deceptive act proximately caused an injury to Plaintiff.

Next, Pfizer attempts to conjure a nonexistent requirement to prove actual reliance under ICFA.[102] In reality, all that Ms. Al Haj must do is show that Pfizer's misrepresentation proximately

---

[99] *Al Haj*, 338 F. Supp. 3d at 756-57.

[100] 21 C.F.R. § 341.74 ("For products containing dextromethorphan or dextromethorphan hydrobromide identified in § 341.14(a)(3) and (4). The dosage is equivalent to dextromethorphan hydrobromide. Adults and children 12 years of age and over: Oral dosage is 10 to 20 milligrams every 4 hours or 30 milligrams every 6 to 8 hours, not to exceed 120 milligrams in 24 hours, or as directed by a doctor. Children 6 to under 12 years of age: Oral dosage is 5 to 10 milligrams every 4 hours or 15 milligrams every 6 to 8 hours, not to exceed 60 milligrams in 24 hours, or as directed by a doctor. Children 2 to under 6 years of age: Oral dosage is 2.5 to 5 milligrams every 4 hours or 7.5 milligrams every 6 to 8 hours, not to exceed 30 milligrams in 24 hours, or as directed by a doctor. Children under 2 years of age: Consult a doctor.").

[101] *Williams*, 552 F.3d at 939.

[102] *See Mednick v. Precor, Inc.*, No. 14 C 3624, 2017 WL 2619139, at *9 (N.D. Ill. June 16, 2017) ("actual reliance is not an element").

caused her injury,[103] a jury question.[104] Here, Ms. Al Haj presents more than enough evidence that a jury could use to conclude that Pfizer's deception proximately caused her injury.[105]

The threshold to prove proximate cause is minimal and is satisfied when misleading statements occurred prior to purchase.[106] A plaintiff must allege that "[s]he was, in some manner, deceived."[107] Ms. Al Haj's testimony establishes that she read the Maximum Strength Robitussin label and that it deceived her in making the purchase.[108] First, Ms. Al Haj read the box to learn about the medicine's purported strength and the symptoms it treats.[109] Then, Ms. Al Haj switched to Maximum Strength Robitussin believing maximum strength "will be better."[110] Contrary to her reasonable expectation, Maximum Strength Robitussin was not "better" than Regular as it did not contain more active ingredients per volume.[111] Pfizer's deceptive "maximum strength" statement caused her to purchase Maximum Strength Robitussin over Regular, and at a higher price.[112] And when she learned of the truth about the product, she

---

[103] *Id.* (rejecting the assertion that individualized determinations of whether class members relied on the misrepresentation in question were necessary to establish proximate cause).

[104] *Lee v. Chicago Transit Auth.*, 605 N.E. 2d 493, 502-03 (Ill. 1992).

[105] SAMF ¶¶ 68-71.

[106] *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996).

[107] *Oliveira*, 776 N.E.2d at 164.

[108] SAMF ¶¶ 63-67.

[109] *Id.* ¶¶ 66-67.

[110] *Id.* ¶ 67.

[111] *Id.* ¶¶ 1, 68, 70.

[112] *Id.* ¶ 67.

010706-11 1093060 V2

stopped purchasing it.[113] Thus, a reasonable jury could conclude that Pfizer's deception was the proximate cause of her injury.[114]

*Mednick v. Precor* is instructive. There, the district court rejected Precor's argument that individualized inquiries would be required to determine whether the promise of a heart rate monitor caused class members to purchase the devices.[115] Abiding by the standard set in *Suchanek*,[116] the court reasoned that predominance was met when all class members could have been harmed because they could have seen the misrepresentation.[117] The facts that Precor knew the heart rate monitor was an important feature for customers, customers saw the heart rate monitor when they stepped on the treadmills, and a reasonable consumer would not have known whether the heart rate gave accurate readings, raised an inference that Precor's representations "may mislead the reasonable consumer."[118] Importantly, the *Mednick* court rejected Precor's contention that "class members must have been *persuaded* by the misrepresentation in making their purchasing decisions" if they are to prove their consumer fraud claims.[119] In doing so, the court reaffirmed that ICFA's proximate cause standard does not require such a showing.[120]

---

[113] *Id.* ¶ 69.

[114] *See Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 694 (N.D. Ill. 2011) (denying summary judgment: "If defendants' allegedly deceptive representations about the crib's safety caused her to choose the model in question over a different, non-defective one, a jury could conclude that the defendants' representations were the proximate cause of her injury.").

[115] *Mednick*, 2017 WL 2619139, at *7.

[116] *Suchanek*, 764 F.3d at 757-58.

[117] *Mednick*, 2017 WL 2619139, at *7.

[118] *Id.*

[119] *Id.* at *9 (emphasis added).

[120] *Id.*

Here, like Precor, Pfizer knew that the "maximum strength" claim "████████████

████████████████████████████████████████████████████████████

████[121] Because of this, Pfizer took pains to prominently place the "maximum strength"
statement right where consumers would see it.[122] Ms. Al Haj testified that she saw the label,
believed the bottle was stronger than Regular Robitussin (but did not do the math), and bought
the medicine.[123] Under ICFA, she has established proximate cause.

*Villasenor* and *Kremers* do not help Pfizer. In *Villasenor v. American Signature, Inc.*, the
plaintiff signed a receipt disclosing the financing charge at issue, and under Illinois law, "a party
that signs an agreement is charged with knowledge of its contents whether or not the party
actually read the entire agreement."[124] Here, Ms. Al Haj read the misrepresentation but did not
sign anything that would impute knowledge. In *Kremers v. Coca-Cola Co.*, the plaintiff testified
that she had never seen an "original formula" label—which she alleged was deceptive—until her
lawyer pointed it out.[125] By contrast, Ms. Al Haj testified that she saw the "maximum strength"
statement well before she met her attorneys and it caused her purchase.[126]

To the extent that Ms. Al Haj's deposition raises questions as to why she purchased
Maximum Strength Robitussin, that question of fact ought to be resolved by a jury.[127] Ms. Al Haj

---

[121] SAMF ¶¶ 27, 36.

[122] *Id.* ¶¶ 33, 35, 38, 39.

[123] *Id.* ¶¶ 64-67.

[124] *Villasenor v. Am. Signature, Inc.*, No. 06 C 5493, 2007 WL 2025739, at *5 (N.D. Ill. July 9, 2007).

[125] *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 769 (S.D. Ill. 2010).

[126] SAMF ¶ 65.

[127] *See, e.g., Nudelman v. Costco Wholesale Corp.*, No. 10-cv-374, 2013 WL 12357488, at *2 (E.D.N.Y. Feb. 11, 2013); *Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc.*, No. 12-1099, 2015 WL 13590362, at *4 (C.D. Ill. June 2, 2015) (deciding that competing interpretations of

demonstrated that she is proficient at reading English and can read (and did read) the label of an over-the-counter medication.[128] However, she has difficulty verbally communicating in English when confronted with the pressure of intentionally confrontational, fast-moving and legally technical lines of questioning.[129] Despite agreeing to allow a translator to help Ms. Al Haj understand and communicate fully in her deposition, Pfizer's attorney repeatedly resisted Ms. Al Haj's requests to use the translator and pressured her for answers.[130] As such, any "dispute about the meaning of [Al Haj's] statement[s] must be drawn in non-movant [Al Haj's] favor."[131]

### 3. Fact issues exist regarding whether Ms. Al Haj suffered an injury.

Next, Pfizer's argument that Ms. Al Haj was not harmed by its misrepresentations should be rejected. Ms. Al Haj has alleged facts that could permit a jury to conclude that she suffered a "purely economic injury, measurable by the plaintiff's loss."[132] For consumer fraud claims, Illinois courts apply the benefit of the bargain rule.[133] Benefit of the bargain "may be awarded to compensate purchasers of products who paid prices that were inflated by the defendant's fraud."[134] The rule is meant to "ensure that the defrauded party is … placed in the same financial position [s]he would have occupied had the misrepresentations in fact been true."[135] The

---

testimony, combined with credibility issues raised by defendants' submission of a declaration clarifying the testimony, raised an issue of fact for the jury to decide).

[128] SAMF ¶¶ 55, 65.

[129] *Id.* ¶ 62.

[130] *Id.* ¶ 61.

[131] *Nudelman*, 2013 WL 12357488, at *2.

[132] *Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, at *10 (N.D. Ill. Oct. 6, 2015).

[133] *See Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 538 (Ill. 1989).

[134] *Lipton v. Chattem, Inc.*, No. 11 C 2952, 2012 U.S. Dist. LEXIS 49828, at *11-12 (N.D. Ill. Apr. 10, 2012) (collecting cases).

[135] *Id.* (quotations and citations omitted, alteration in original).

measurement for such damages is "the difference between the product's value if the misrepresentations had been true and the product's true value."[136] Here, Ms. Al Haj testified that she paid more for Maximum Strength Robitussin than she would have if Pfizer had not "tricked" her into thinking that it was stronger than Regular Robitussin.[137] Therefore, she was denied the benefit of the bargain and suffered damages.[138] That Ms. Al Haj has since switched to a different cough medicine brand is inconsequential. Indeed, benefit-of-the-bargain losses are calculable without comparison to non-Pfizer competing products.[139]

Defendant's reliance on *Mulligan v. QVC, Inc.* is misplaced.[140] There, the market prices of similar consumer goods were directly at issue because the plaintiff's claim was based on QVC's false representations *precisely about* the retail prices of those items.[141] While QVC may have overstated the comparable market prices of the items it sold to the plaintiff, the plaintiff failed to show that QVC's prices were not still lower than market prices of those products.[142] Thus, the plaintiff had failed to prove that she sustained economic damages.[143] Here, Ms. Al Haj's claim does not rise and fall on whether Maximum Strength Robitussin offers a good deal within the greater universe of cough syrup. Ms. Al Haj's injury is that she paid more money for

---

[136] *Id.*

[137] SAMF ¶ 70.

[138] *See supra*, notes 133-135.

[139] SAMF ¶ 71.

[140] *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196-99 (Ill. App. Ct. 2008).

[141] *Id.* at 1197-98.

[142] *Id.*

[143] *Id.* at 1197-99.

Maximum Strength Robitussin than its regular counterpart, despite the fact that the packaging clearly and purposefully represents that it is a stronger product.[144]

Notably, the medicine that Pfizer contends disproves Ms. Al Haj's damages—Delsym—does not call itself "maximum strength" or make any representations about its relative strength vis-à-vis other products in its brand family.[145] And Pfizer does not point to a single case where a consumer fraud claim failed at summary judgment because the plaintiff later purchased a non-deceptive product. For instance, *Suchanek* did not ask whether the plaintiff—who complained that coffee pods containing mostly instant coffee were represented as real coffee—later purchased instant coffee.[146] *Mantikas* did not require consumers claiming an injury to confirm that they had not purchased other cheese crackers that lacked Cheez-Its' "made with whole grain" claim.[147] Nor did *Williams* ask whether plaintiffs later bought other processed, fruity children's snacks that did not claim to contain "fruit juice," on the basis that doing so would discount plaintiffs' injuries.[148] Thus, Ms. Al Haj's purchase of Delsym is irrelevant to whether she obtained the benefit of her bargain on Maximum Strength Robitussin.

**B.    The Court Should Deny Summary Judgment on the Unjust Enrichment Claim**

On an unjust enrichment claim, a plaintiff must "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."[149] Unjust

---

[144] SAMF ¶¶ 68-70.

[145] Ex. 2, Interrogatory Response 3; Ex. 4 at ALHAJ000001 (Delsym Box).

[146] *Suchanek*, 764 F.3d at 758.

[147] *Mantikas*, 910 F.3d at 634.

[148] *Williams*, 552 F.3d at 934.

[149] *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922 (N.D. Ill. 2013) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

enrichment is "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence."[150]

Pfizer argues that the unjust enrichment claim cannot stand without the ICFA claim. Under Illinois law, if an unjust enrichment claim is predicated on the same conduct as another claim, "then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."[151] As Plaintiff presents evidence that could prove her ICFA claim, the unjust enrichment claim cannot not fall on that basis.[152]

Lastly, Pfizer argues for a judgment because her husband "got relief" from Maximum Strength Robitussin. This argument is irrelevant. Maximum Strength Robitussin is not "all of the [product] it claims to be," because it claims to be "maximum strength" but is not stronger than Regular Robitussin.[153] And Ms. Al Haj establishes that she paid more for the product based on a deceptive label and was a victim of consumer fraud. Thus, the relevant question remains whether it would be equitable for Pfizer to retain the profits from her purchases.[154]

## C.    Ms. Al Haj Is an Adequate Class Representative

Finally, while irrelevant to summary judgment, Pfizer argues that Ms. Al Haj may not be a class representative because of her language skills. However, proficiency in English is not a

---

[150] *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900 (N.D. Ill. 2011) (quotation marks and citation omitted).

[151] *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) (quoting *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).

[152] *See, e.g.*, *id.* (declining to dismiss unjust enrichment claim because it had not dismissed an ICFA claim); *Laurens v. Volvo Cars of N. Am., LLC*, No. 16-cv-4507, 2017 WL 5891185, at *3 (N.D. Ill. Nov. 27, 2017) ("Insofar as the Court has not dismissed the CFA claim, the Motion to Dismiss is denied in relevant part.").

[153] *Hillen v. Blistex, Inc.*, No. 17 C 2074, 2017 WL 2868997, at *4 (N.D. Ill. July 5, 2017).

[154] *Wiegel*, 780 F. Supp. 2d at 695 (recognizing courts "emphasize the defendant's retention of the benefit").

requirement of a class representative. Ms. Al Haj read and understands her retainer agreement, which provides that she will control and prosecute the class action through her attorneys.[155] And "[e]xperience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary [are] sheer sophistry."[156] Pfizer does not contest the competency of class counsel.

Rule 23(a)(4) merely requires Ms. Al Haj be "sufficiently interested in the outcome to ensure vigorous advocacy."[157] Meeting this standard is "not difficult."[158] Ms. Al Haj "must maintain only an 'understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'"[159] She does not need to "have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained."[160] Here, Ms. Al Haj articulated the basic facts underlying this suit, participated in discovery, and clearly desires to help other consumers.[161]

Pfizer's remaining argument is that Ms. Al Haj should not be a class representative because she is not a native English speaker. But Rule 23 does not require English fluency and

---

[155] SAMF ¶ 73.

[156] *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) (quoting *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 832 n.9 (3d Cir. 1973)).

[157] *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006) (citation omitted).

[158] *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) (citation omitted).

[159] *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 WL 2903180, at *6 (N.D. Ill. Oct. 1, 2007) (citation omitted).

[160] *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 351 (N.D. Ill. 2008) (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)).

[161] *See* SAMF ¶¶ 63-70.

courts "highly doubt[] the constitutionality of such a requirement if one existed."[162] Pfizer's case, *Rugumbwa v. Betten Motor Sales*, concerned written misrepresentations on forms and pamphlets that the plaintiff, who could not read English, did not read and did not have translated to him.[163] By contrast, before purchase Ms. Al Haj read the prominent, deceptive "maximum strength" statement, testifying that she focused on the representations on the front of the product packaging—i.e., the "headlines"—to see if the product was "maximum strength," would "control cough" and/or "relieve[] chest and loosen mucous."[164] Although she had regularly purchased Regular Robitussin, Ms. Al Haj switched to DM Max because "it say maximum strength. So we believe it's – the maximum strength it will be better. That's why we go."[165] Moreover, Ms. Al Haj reads a weekly newspaper in English, reads communications from and conducts business with her children's school in English, and she studied English every year from preschool to high school.[166] She also worked for four years in an office in the United States doing filing and administrative tasks, which would have required her to read English.[167] And she speaks both Arabic and English with her children.[168]

---

[162] *Gutierrez v. LVNV Funding, LLC*, No. EP-08-CV-225-DB, 2009 WL 10699516, at *8 (W.D. Tex. Mar. 16, 2009); *see also id.* at n.9 ("Defendants' argument is reminiscent of one rejected by the Supreme Court—that an uneducated and illiterate person could not be a plaintiff in a derivative suit because she did not understand the complaint. ... [I]ts reminder that the Federal Rules were designed to 'administer justice through fair trials' and allow 'unsophisticated litigations' to have their day in court is appropriate here.") (internal citations omitted).

[163] *Rugumbwa v. Betten Motor Sales*, 200 F.R.D. 358, 364-65 (W.D. Mich. 2001).

[164] SAMF ¶¶ 65-67.

[165] *Id.* ¶ 67.

[166] *Id.* ¶ 55.

[167] *Id.*

[168] *Id.*

010706-11 1093060 V2

To the extent any questions exist regarding the meaning of Ms. Al Haj's testimony, those questions should be resolved in favor of Ms. Al Haj as the non-movant. While she reads and speaks English, Ms. Al Haj finds it difficult to fully comprehend written American legal terminology.[169] As a result, Ms. Al Haj's counsel made accommodations for her speaking fluency by providing a deposition translator.[170] But beginning with the third question, examining counsel repeatedly resisted Ms. Al Haj's requests to use a translator.[171] And although Ms. Al Haj frequently stated and signaled that she did not understand the questions and/or could not formulate a full response in English, counsel proceeded with the deposition without allowing the translator to step in.[172] The need for a translator at an oral deposition does not render her atypical or inadequate under Rule 23(a)(3) or (a)(4). And because courts approve class representatives who—unlike Ms. Al Haj—had virtually no ability to read or comprehend English, this argument fails.[173]

## V.  CONCLUSION

Plaintiff respectfully requests that this Court deny the Motion for Summary Judgment in its entirety and grant her all such other relief as the Court deems necessary and appropriate.

---

[169] *Id.* ¶ 56.

[170] *Id.* ¶¶ 57-59.

[171] *Id.* ¶ 61.

[172] *Id.* ¶¶ 61-62.

[173] *See Gutierrez*, 2009 WL 10699516, at *7 (approving representative who could not read the complaint in English but understood the basic facts of the case and his responsibility to be in contact with his attorneys) (citation omitted).

DATED: February 1, 2019

Respectfully submitted,

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan
Daniel J. Kurowski
Emily R. Brown
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
beth@hbsslaw.com
dank@hbsslaw.com
emilyb@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Darren Malek
VERITAS LAW GROUP
Kalamazoo Building
5th Floor
107 W. Michigan Avenue
Kalamazoo, Michigan 49007
(269) 270-3500

*Attorneys for Plaintiff*

010706-11 1093060 V2

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate redacted copy of the foregoing (along with an unredacted copy filed under seal) was filed electronically via the Court's ECF system, on February 1, 2019. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system with courtesy copies to be separately sent by e-mail.

By: */s/ Elizabeth A. Fegan*
Elizabeth A. Fegan

010706-11 1093060 V2