## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

KARMEL AL HAJ, individually and on behalf
of all others similarly situated,

                              Plaintiff,

    v.

PFIZER, INC.,

                             Defendant.

No. 1:17-cv-06730

Hon. Gary Feinerman

Magistrate Judge Susan E. Cox

## PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION FOR CLASS
## CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

## [REDACTED VERSION FILED ON PUBLIC DOCKET
## UNREDACTED VERSION FILED UNDER SEAL UNDER
## AGREED CONFIDENTIALITY ORDER (Dkt. 51)]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................1

II. ARGUMENT ..................................................................................................1

    A. Pfizer Offers No Dispute Regarding Many Required Class Certification Elements.........................................................................................................1

    B. Rule 23(a)(3) Typicality Focuses On A Defendant's Conduct.............................2

    C. Pfizer's Rule 23(a)(4) Adequacy Arguments Must Be Rejected...........................3

        1. Subsequent purchases are irrelevant. .................................................6

        2. Knowledge of dose size is also irrelevant...................................................6

        3. Adequacy does not require English fluency. .............................................7

    D. Common Questions of Fact Predominate Under Rule 23......................................9

        1. Common evidence will establish that the "Maximum Strength" representation is likely to deceive a reasonable consumer. .........................9

        2. Plaintiff will also establish causation with common proof.......................17

        3. Each purchaser was harmed by purchase of a diluted "maximum strength" product at a higher price.........................................24

    E. Common Questions Of Law Predominate As Well..............................................27

        1. Common questions of law will predominate for the Nationwide Class.........................................................................................................27

        2. The Consumer Protection Multi-State Class is a viable alternative. .........28

            a. Scienter does not defeat certification given Pfizer's common conduct.....................................................................29

            b. The deception standards align, so a single trial using common evidence is not only possible, but "makes good sense."......................................................................................31

            c. Plaintiff can prove causation using common evidence under either a "reasonable person" or "proximate cause" standard. ...................................................................................32

i

3.      Unjust enrichment laws do not vary how Pfizer contends.........................36

F.      Plaintiff's Damage Theories Are Consistent With *Comcast's* Requirements .......37

III.    CONCLUSION....................................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al Haj v. Pfizer Inc.*,
338 F. Supp. 3d 741 (N.D. Ill. 2018) (*Al Haj I*)................................................................ *passim*

*Al Haj v. Pfizer Inc.*,
No. 17 C 6730, 2019 U.S. Dist. LEXIS 117930 (N.D. Ill. July 16, 2019)
(*Al Haj II*) ........................................................................................................................ *passim*

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974)................................................................................................................32

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)............................................................................................................ *passim*

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...........................................................................................................29, 31

*Arango v. GC Servs., LP*,
No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. June 10, 1998)...................................8

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*,
322 F.R.D. 458 (N.D. Ill. 2017)...............................................................................................2

*Aspinall v. Philip Morris Companies, Inc.*,
813 N.E.2d 476 (2004)........................................................................................................19, 34

*Aughenbaugh v. Williams*,
569 S.W.3d 514 (Mo. Ct. App. 2018)......................................................................................36

*Base One Techs., Inc. v. Ali*,
78 F. Supp. 3d 186 (D.D.C. 2015)...........................................................................................37

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................................................38

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006).......................................................................................................5

*Bietsch v. Sergeant's Pet Care Prods.*,
No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928 (N.D. Ill. Mar. 15, 2016) ..............................28

*Bishop v. Air Line Pilots Ass'n, Int'l*,
331 F.R.D. 481 (N.D. Ill. 2019)............................................................................................2, 3

*Bland v. PNC Bank, NA.*,
    No. 2:15-CV-01042-AJS, 2016 U.S. Dist. LEXIS 189220 (W.D. Pa. Dec. 16,
    2016) .................................................................................................................4

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
    280 F.R.D. 408 (N.D. Ill. 2012).........................................................................3

*Brodsky v. HumanaDental Ins. Co.*,
    No. 1:10-cv-03233, 2016 U.S. Dist. LEXIS 134235 (N.D. Ill. Sept. 29, 2016)......................4

*Buke, LLC v. Cross Country Auto Sales, LLC*,
    331 P.3d 942 (N.M. 2014) ...............................................................................36

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) ...........................................................................37

*Cavin v. Home Loan Ctr., Inc.*,
    236 F.R.D. 387 (N.D. Ill. 2006).........................................................................3

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ...................................................................*passim*

*Colgan v. Leatherman Tool Grp., Inc.*,
    38 Cal. Rptr. 3d 36 (2006) ...............................................................................11

*Collins v. Erin Capital Mgmt., LLC*,
    290 F.R.D. 689 (S.D. Fla. 2013).........................................................................4

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) .......................................................*passim*

*Cox v. Microsoft Corp.*,
    8 A.D.3d 39, 778 N.Y.S.2d 147 (2004) ..........................................................36

*Cromeans v. Morgan Keegan & Co.*,
    No. 2:12-CV-04269-NKL, 2013 U.S. Dist. LEXIS 201933 (W.D. Mo. Nov. 5,
    2013) ...............................................................................................................37

*Curry v. Kraft Foods Glob., Inc.*,
    No. 10 C 1288, 2011 U.S. Dist. LEXIS 102510 (N.D. Ill. Sept. 12, 2011)..............................1

*Danis v. USN Commc'ns, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999).........................................................................5

*Day v. Case Credit Corp.*,
    427 F.3d 1148 (8th Cir. 2005) .........................................................................36

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015). ................................................................20, 23, 25

*Driver v. AppleIllinois, LLC*,
    265 F.R.D. 293 (N.D. Ill. 2010)..........................................................................3

*F.T.C. v. QT, Inc.*,
    448 F. Supp. 2d 908 (N.D. Ill. 2006) .................................................................12

*Fanning v. FTC*,
    821 F.3d 164 (1st Cir. 2016)..............................................................................13

*Farar v. Bayer AG*,
    No. 14-CV-04601-WHO, U.S. Dist. LEXIS 193729 (N.D. Cal. Nov. 15, 2017)..............14, 19

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
    No. 09-CV-00852, 2012 U.S. Dist. LEXIS 125677 (E.D. Wis. Sep. 5, 2012)......................40

*Fox v. Riverview Realty Partners*,
    No. 12 C 9350, 2014 U.S. Dist. LEXIS 55260 (N.D. Ill. Apr. 22, 2014)................................9

*Frigillana v. Frigillana*,
    266 Ark. 296, 584 S.W.2d 30 (1979)..................................................................36

*George v. Kraft Foods Global, Inc.*,
    251 F.R.D. 338 (N.D. Ill. 2008)...........................................................................3

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) .........................................................................39

*Greene v. Sears Prot. Co.*,
    No. 15-CV-2546, 2018 U.S. Dist. LEXIS 105489 (N.D. Ill. June 25, 2018).........................30

*Hardy v. City Optical*,
    39 F.3d 765 (7th Cir. 1994) ............................................................................4, 5

*Henry v. Sometime Pool & Spa Serv.*,
    No. A-1179-05T2, 2006 N.J. Super. Unpub. LEXIS 1743 (Super. Ct. App.
    Div. July 27, 2006).........................................................................................38

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
    894 A.2d 1136 (N.J. App. Div. 2006).................................................................27

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) ........................................................................19

*Johnson v. Pinstripes, Inc.*,
    No. 12 C 1018, 2013 U.S. Dist. LEXIS 138253 (N.D. Ill. Sept. 26, 2013)...........................1

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633 CRB, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13,
    2014) ...........................................................................................................................38

*Juarez v. Jani-King of Cal., Inc.*,
    273 F.R.D. 571 (N.D. Cal. 2011) ...............................................................................9

*Kleen Prods. LLC v. Int'l Paper Co.*,
    831 F.3d 919 (7th Cir. 2016) .....................................................................................37

*Kraft, Inc. v. FTC*,
    970 F.2d 311 (7th Cir. 1992) ...............................................................................11, 12

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
    897 F.3d 88 (2d Cir. 2018)........................................................................................28

*Lincolnway Cmty. Bank v. Allianz Life Ins. Co. of N. Am.*,
    No. 11-CV-5907, 2013 U.S. Dist. LEXIS 132536 (N.D. Ill. Sep. 17, 2013) ..........40

*Maalouf v. Salomon Smith Barney, Inc.*,
    No. 02 CIV. 4770 (SAS), 2003 U.S. Dist. LEXIS 5913 (S.D.N.Y. Apr. 10,
    2003) ...........................................................................................................................37

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018).........................................................................................6

*Manufacturers Hanover Tr. Co. v. Chem. Bank*,
    160 A.D.2d 113, 559 N.Y.S.2d 704 (1990) ...............................................................36

*Martin v. Monsanto Co.*,
    No. ED CV 16-2168-JFW, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar.
    24, 2017) .....................................................................................................................39

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (Cal. App. Ct. 2002) .............................................................33

*Mednick v. Precor, Inc.*,
    320 F.R.D. 140 (N.D. Ill. 2017).................................................................... *passim*

*Mejdrech v. Met-Coil Sys. Corp.*,
    319 F.3d 910 (7th Cir. 2003) .....................................................................................32

*Mendez v. Avis Budget Grp., Inc.*,
    No. CIV.A. 11-6537 JLL, 2012 U.S. Dist. LEXIS 1224708 (D.N.J. Apr. 10,
    2012) ...........................................................................................................................27

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    267 F.R.D. 113 (D.N.J. 2010).....................................................................................27

*Miller v. Spring Valley Props.*,
  202 F.R.D. 244 (C.D. Ill. 2001) .................................................................................5

*Mullins v. Direct Dig., LLC*,
  No. 13 CV 1829, 2014 U.S. Dist. LEXIS 155018 (N.D. Ill. Sept. 30, 2014) .........................17

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ...............................................................................6, 7

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
  No. 09 C 5619, 2011 U.S. Dist. LEXIS 148689 (N.D. Ill. Dec. 28, 2011) .............................4

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) ................................................................................32

*Plubell v. Merck & Co.*,
  289 S.W.3d 707 (Mo. Ct. App. 2009) .......................................................................35

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
  252 F.R.D. 438 (N.D. Ill. 2008) ..............................................................................4

*Retsky Family Ltd. Pshp. v. Price Waterhouse LLP*,
  No. 97 C 7694, 1999 U.S. Dist. LEXIS 11351 (N.D. Ill. July 21, 1999) .............................4, 5

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) .................................................................................2

*Rugambwa v. Betten Motor Sales*,
  200 F.R.D. 358 (W.D. Mich. 2001) ..........................................................................8

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) .........................................................................19, 25

*In re Sears Roebuck & Co. Tools Mktg. & Sales Prac. Litig.*,
  No. MDL 1703, 2007 U.S. Dist. LEXIS 89349 (N.D. Ill. Dec. 4, 2007) ...........................22, 26

*Smith v. NVR, Inc.*,
  No. 17 C 8328, 2019 U.S. Dist. LEXIS 216560 (N.D. Ill. Dec. 16, 2019) .......................11, 12

*Smith v. Whitener*,
  42 Ark. App. 225, 856 S.W.2d 328 (1993) ..................................................................36

*Sperry v. Crompton Corp.*,
  8 N.Y.3d 204, 863 N.E.2d 1012 (2007) .....................................................................36

*Stavropoulos v. Hewlett-Packard Co.*,
  No. 13 C 5084, 2014 U.S. Dist. LEXIS 173964 (N.D. Ill. Dec. 17, 2014) .............................40

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) (*Suchanek II*) .................................................. *passim*

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) (*Suchanek I*) ..................................................... *passim*

*Suchanek v. Sturm Foods, Inc.*,
   No. 11-CV-565-NJR-RJD, 2017 U.S. Dist. LEXIS 138016 (S.D. Ill. Aug. 28,
   2017) (*Suchanek III*) ...........................................................................................18, 19

*Suchanek v. Sturm Foods*,
   No. 11-CV-565-NJR-RJD, 2018 U.S. Dist. LEXIS 213658 (S.D. Ill. Jul. 3,
   2018) (*Suchanek IV*) .................................................................................................35

*In re TFT-LCD Antitrust Litig.*,
   No. M 07-1827 SI, MDL No. 1827, 2011 U.S. Dist. LEXIS 84476 (N.D. Cal.
   July 28, 2011).............................................................................................................5

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ...........................................................................................33

*Tsupros v. Nametz*,
   No. 00-CV-0584-DRH, 2001 U.S. Dist. LEXIS 11638 (S.D. Ill. July 5, 2001).......................5

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011)..............................................................................................28

*Walker v. Bankers Life & Cas. Co.*,
   No. 06 C 6906, 2007 U.S. Dist. LEXIS 73502 (N.D. Ill. Oct. 1, 2007) ...................................3

*Walters v. Reno*,
   No. C94-1204C, 1996 U.S. Dist. LEXIS 23166 (W.D. Wash. Mar. 11, 1996).......................9

*Weiner v. Snapple Beverage Corp.*,
   No. 07 Civ. 8741 (DLC), 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 5,
   2010) ........................................................................................................................19

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...............................................................................6, 7

## STATUTES

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

Federal Rule of Civil Procedure 56 ..............................................................................4

Fla. Stat. § 501.204(2)...................................................................................................12

Mass. Gen. Laws Ch. 93A ......................................................................................12, 14

N.H. Rev. Stat. § 358-A:13 ...................................................................................12

N.J. Stat. § 56:8-2.11 ...........................................................................................38

N.M. Stat. § 57-12-4 .............................................................................................12

New Jersey Consumer Fraud Act .................................................................20, 27, 38

Wash. Rev. Code § 19.86.920................................................................................12

## OTHER AUTHORITIES

Shari Seidman Diamond, *Reference Guide on Survey Research*, Reference
    Manual on Scientific Evdience (2011) .........................................................15

Restatement (Second) of Torts § 546 cmt. B (1977). ..............................................23

## I.    INTRODUCTION

Pfizer offers no dispute for many of Plaintiff's class certification arguments. For the three Rule 23 considerations that Pfizer does challenge, Pfizer raises nothing that should prevent class certification. Pfizer's adequacy and typicality arguments under Rule 23(a) are factually and legally deficient. Its predominance of fact arguments under Rule 23(b)(3) attempt to work in a reliance requirement though the law requires neither reliance nor diligence in ascertaining the accuracy of Pfizer's misstatements. And regarding whether questions of law predominate, Pfizer does little more than generically recite supposed differences, without investigating whether a multistate class is 'per se unworkable,' a critical error where multi-state certification presumes some variation will exist. Ultimately, common facts exist here that support certification. Pfizer made a uniform change that altered the essence of its cough syrup, doubling the dose and diluting the concentrations of active ingredients in bottles sold nationwide. While such gamesmanship might "be obvious to any reasonably competent carnival game operator,"[1] consumers nationwide purchased a product marketed as "Maximum" or "Max" but which contained fewer doses and active ingredients, less than a bottle of Regular Strength Robitussin (and at a higher price too). Without Rule 23 certification, Pfizer's conduct will go unremedied.

## II.    ARGUMENT

### A.    Pfizer Offers No Dispute Regarding Many Required Class Certification Elements

By focusing only on three aspects of the Rule 23 inquiry (typicality, adequacy, and predominance), Pfizer waives all arguments as to any other aspect.[2] Pfizer concedes numerosity

---

[1] *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 747 (N.D. Ill. 2018) (*Al Haj I*).

[2] Defendant Pfizer Inc.'s Opposition to Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel ("Def.'s Resp.") at 8–9 (Dkt. 196). *See, e.g., Mednick v. Precor, Inc.*, 320 F.R.D. 140, 147 (N.D. Ill. 2017) (making summary findings as to Rule 23 prerequisites not contested by the defendant); *Johnson v. Pinstripes, Inc.*, No. 12 C 1018, 2013 U.S. Dist. LEXIS 138253, at *12 (N.D. Ill. Sept. 26, 2013) (finding waiver of commonality argument); *Curry v. Kraft*

and commonality.[3] Its focus on predominance of fact and law, waives Rule 23(b)(3) inquiries, such as: (1) superiority, (2) class members' interests in individually controlling separate actions under Rule 23(b)(3)(A), (3) the extent of any litigation concerning the controversy under Rule 23(b)(3)(B); and the desirability of concentrating the litigation before this Court under Rule 23(b)(3)(C). Pfizer also concedes that common legal issues predominate for an Illinois-only class.[4] Nor does it dispute that the classes are objectively defined.[5] And it offers nothing to undercut Hagens Berman as class counsel. Plaintiff now turns to the disputed items.

**B.      Rule 23(a)(3) Typicality Focuses On A Defendant's Conduct**

While Pfizer leans heavily on *CE Design Ltd. v. King Architectural Metals, Inc.*,[6] "the *CE Design* court addressed particularized defense arguments not within the context of Rule 23(a)'s typicality requirement (which focuses on Defendants' conduct), but rather its adequacy requirement, which focuses on Plaintiff and the putative class."[7] Mirroring this distinction, this Court explained that "[t]ypicality '*should be determined with reference to the [defendant's] actions, not with respect to particularized defenses* it might have against certain class members.'"[8] Plaintiffs satisfy the "low hurdle" of typicality where the named plaintiff's claim

---

*Foods Glob., Inc.*, No. 10 C 1288, 2011 U.S. Dist. LEXIS 102510, at *6 (N.D. Ill. Sept. 12, 2011) (moving to disputed issues where defendant did not dispute numerosity or commonality).

[3] *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel ("Pl.'s Mem.") at 11–13 (Dkt. 175).

[4] Def.'s Resp. at 33.

[5] Pl.'s Mem. at 39.

[6] Def.'s Resp. at 29–30.

[7] *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 465 (N.D. Ill. 2017).

[8] *Bishop v. Air Line Pilots Ass'n, Int'l*, 331 F.R.D. 481 (N.D. Ill. 2019) (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)) (emphasis added). *See also Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("[W]e look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3).").

"arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory."[9] Here, "the class members were all exposed to the exact same course of conduct by Defendant[]: the marketing and packaging of" Maximum Strength Robitussin,[10] she "saw the same representations as other[s]," and "[t]he class members were…exposed to the same message (and promises) from [Pfizer]."[11] Once properly understood, it is clear that Plaintiff is typical as her claims focus on *Pfizer's* conduct.

## C.    Pfizer's Rule 23(a)(4) Adequacy Arguments Must Be Rejected

The adequacy prerequisite "consists of two parts: (1) the adequacy of the plaintiff[] as representative[] of the proposed class's myriad members," which Pfizer contests, "and (2) the adequacy of the proposed class counsel," which Pfizer does not.[12] Rule 23(a)(4) "serves to uncover conflicts of interest between the named parties and the class they seek to represent"[13] calling on Plaintiff to be "sufficiently interested in the outcome to ensure vigorous advocacy."[14] To be adequate, Plaintiff need "only an 'understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery.'"[15] Ms. Al Haj articulated the facts underlying this suit, participated in discovery, and desires to help others.[16]

---

[9] *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 304 (N.D. Ill. 2010); *Bishop*, 331 F.R.D. at 490 (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009)).

[10] *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 255 (S.D. Ill. 2015) ("*Suchanek II*") (finding typicality).

[11] *Beaton*, 907 F.3d at 1026.

[12] *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 412 (N.D. Ill. 2012).

[13] *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

[14] *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 394 (N.D. Ill. 2006) (citation omitted).

[15] *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 U.S. Dist. LEXIS 73502, at *17 (N.D. Ill. Oct. 1, 2007) (citation omitted); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 351 (N.D. Ill. 2008) (citation omitted).

[16] *See* Pl.'s Offer of Proof in Supp. of Mot. for Class Cert. and Appointment of Class Counsel ("Proffer") ¶¶ 91-97 (Dkt. 124).

Though meeting adequacy is "not difficult," Pfizer regurgitates three arguments offered in its unsuccessful summary judgment motion, suggesting *ipse dixit* these arguments would consume a class trial.[17] But Pfizer's arguments fair no better under Rule 23 than they did under Rule 56. While "a plaintiff against whom the defendants have a defense not applicable to other members of the class is not a proper class representative"[18] Pfizer ignores the why: "that plaintiff's claim is quite likely to be dismissed even if the other class members' claims are meritorious, and once dismissed from the suit the plaintiff can no longer be the class representative."[19] Plaintiff's claims survived summary judgment on the exact same arguments. Rejected arguments have no place in the adequacy analysis.[20]

Though Pfizer raises the notion that it should prevail now because "a defense need not be a sure bet to defeat a proposed class representative's adequacy; the defense need only be

---

[17] *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) (citation omitted); Def.'s Resp. at 29–30.

[18] *Hardy v. City Optical*, 39 F.3d 765, 770 (7th Cir. 1994).

[19] *Id.*

[20] *See, e.g., Brodsky v. HumanaDental Ins. Co.,* No. 1:10-cv-03233, 2016 U.S. Dist. LEXIS 134235, at *22 (N.D. Ill. Sept. 29, 2016) (rejecting argument that plaintiff was an inadequate representative subject to "a unique mootness defense" that the court had substantively rejected)d); *Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 698 (S.D. Fla. 2013) (rejecting individual defense contention where "Erin Capital's purported statute of limitations defense against Collins has already failed"); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C 5619, 2011 U.S. Dist. LEXIS 148689, at *51–52 (N.D. Ill. Dec. 28, 2011) (citing *CE Design* and rejecting defendant's contention that the representative was "subject to unique defenses," including where "defendants have overstated Dwyer's deposition testimony"); *Retsky Family Ltd. Pshp. v. Price Waterhouse LLP,* No. 97 C 7694, 1999 U.S. Dist. LEXIS 11351, at *14 (N.D. Ill. July 21, 1999) (rejecting defendant's individual defense claim that plaintiff's claims were time-barred where "Defendant's argument relies solely on selective portions of Retsky's deposition testimony that were corrected by him later in the deposition"). *See also Bland v. PNC Bank, NA.*, No. 2:15-CV-01042-AJS, 2016 U.S. Dist. LEXIS 189220, at *45 (W.D. Pa. Dec. 16, 2016) (rejecting an individual defense as "PNC's claim to an offset for [a subset of class representatives] will not be a major focus of trial; it may not be an issue at all" and where defendant "made no showing (nor even any argument) that these four plaintiffs are not motivated to press all of their claims on the merits.").

arguable,"[21] it omits the actual standard courts follow. However, the standard is not merely whether Pfizer can raise an 'arguable' defense as if that were so defendants would "derail legitimate class actions by conjuring up . . . insubstantial defenses unique to the class representative."[22] Rather, "the specific defense must be '[1] unique, [2] arguable **and** [3] likely to usurp a significant portion of the litigant's time and energy.'"[23] This concern addresses "[t]he fear is that the class representative will become distracted by the existence of a defense unique to him and therefore compromise the interests of the class."[24] Pfizer's arguments do not create adequacy issues as they are not relevant, not unique, and/or unlikely to usurp Plaintiff's focus.[25]

---

[21] Def.'s Resp. at 30 n.24.

[22] *CE Design*, 637 F.3d at 728. *See also Beck v. Maximus, Inc.,* 457 F.3d 291, 300 (3d Cir. 2006) ("To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification.") (citing *Hardy*, 39 F.3d at 770).

[23] *Id.* (quoting *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 334 (N.D. Ill. 1982)) (alterations and emphasis added). *Cf. Miller v. Spring Valley Props.*, 202 F.R.D. 244, 249–50 (C.D. Ill. 2001) (recognizing a unique defense must "consume the merits of a case") (citation omitted); *Tsupros v. Nametz*, No. 00-CV-0584-DRH, 2001 U.S. Dist. LEXIS 11638, at *6 (S.D. Ill. July 5, 2001) (rejecting argument as "it is clear that a major focus of the litigation will not be on this defense"); *Retsky Family Ltd. Pshp.*, 1999 U.S. Dist. LEXIS 11351, at *8 (N.D. Ill. July 21, 1999) ("only when a unique defense will consume the merits of a case that a class should not be certified.") (quotation and citation omitted); *In re TFT-LCD Antitrust Litig.,* No. M 07-1827 SI, MDL No. 1827, 2011 U.S. Dist. LEXIS 84476, at *29 (N.D. Cal. July 28, 2011) (rejecting argument that plaintiff was inadequate because his claim was subject to a pending summary judgment motion).

[24] *Danis v. USN Commc'ns, Inc.,* 189 F.R.D. 391, 395 (N.D. Ill. 1999) (citing *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164–65 (7th Cir. 1974)). A unique defense does not mean instant rejection of adequacy as "the court is not required to deny certification for speculative reasons; the certification decision always remains within the sound discretion of the court." *Id.* at 395.

[25] Even if the Court were to conclude individualized defenses created adequacy issues, *and it should not*, that conclusion would not end the class certification inquiry. *See CE Design*, 637 F.3d at 728 ("Should the court decide that CE is not a proper class representative, that would not conclude the question whether the suit should be allowed to proceed as a class action. CE's law firm might be able to find a class member who would substitute for CE—a member less vulnerable to the defense of invitation or permission.").

### 1. Subsequent purchases are irrelevant.

First, Pfizer contends that Plaintiff was not injured because she switched from DM Max to Delsym.[26] Pfizer's fixation on Plaintiff's later purchases remains irrelevant. For example, *Suchanek v. Sturm Foods, Inc.* did not ask whether the plaintiff—who complained that coffee pods containing mostly instant coffee were represented as real coffee—later purchased instant coffee or any coffee.[27] Ultimately, Plaintiff is adequate as her injury aligns with the putative class' injury, "paying more for diluted medicine" which "was established at the time of purchase, regardless of whether [s]he later was dissatisfied with Robitussin and regardless of whether [s]he would have purchased a substitute product."[28] Moreover, even if this defense were legally viable, it arguably would not be unique: Pfizer's files reflect that ████████████████████████ ████████████████████.[29]

### 2. Knowledge of dose size is also irrelevant.

Next, Pfizer argues that Plaintiff purchased DM Max after she knew that the dosage was 20 mL and testified in a manner that could easily support a jury finding that the alleged misrepresentation was not material.[30] Here too Pfizer presents nothing that precludes an adequacy finding in Plaintiff's favor. Standing in stark contrast to *Oshana v. Coca-Cola Co.*, where knowledge of saccharin's presence mattered in a case alleging that saccharin's presence

---

[26] Def.'s Resp. at 30.

[27] 764 F.3d 750, 754 (7th Cir. 2014). *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), did not require consumers purchasing Cheez-Its to confirm that whether they purchased other crackers. *Id.* at 634. *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), did not expect consumers buying "Fruit Juice Snacks" show if they later bought other fruit snacks.

[28] *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2019 U.S. Dist. LEXIS 117930, at *20 (N.D. Ill. July 16, 2019) (*Al Haj II*) (alterations in original, citations and quotations omitted).

[29] *See* Ex. 42 at PFE00070538 (Dkt. 125).

[30] Def.'s Resp. at 31.

6

was not disclosed, here merely knowing dosage is "not enough to cure the alleged deception."[31] Rather, Ms. Al Haj and the class members, "still would need to 'perform arithmetic' and a 'cross-check' based on each 'product's ingredient list' to learn the concentration of active ingredients in each bottle," an unreasonable expectation.[32] Thus, because knowledge of dose volume does not wipe away Pfizer's deception, Plaintiff's subsequent purchases of DM Max does not make her an inadequate class representative.[33] On top of this, this damage argument further fails as Ms. Al Haj was still damaged with her first DM Max purchase.[34]

### 3. Adequacy does not require English fluency.

The Court should also reject Pfizer's adequacy argument that Ms. Al Haj could not read the package and/or somehow did not understand Pfizer's package.[35] To start, Pfizer is wrong as Plaintiff can read English. Ms. Al Haj reads a weekly English newspaper, reads communications from and conducts business with her children's school in English, and studied English every year from preschool to high school.[36] She also worked for four years in an office in the United States, which would have required her to read English.[37] And she speaks English with her children.[38] Moreover, before purchase, Ms. Al Haj read the prominent, deceptive "maximum strength"

---

[31] *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006); *Al Haj II*, 2019 U.S. Dist. LEXIS 117930 at *26.

[32] *Al Haj II*, 2019 U.S. Dist. LEXIS 117930 at *26 (quoting *Al Haj I*, 338 F. Supp. 3d at 756). *See also Williams*, 552 F.3d at 939 (disagreeing "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box").

[33] Once aware of Pfizer's deception, Ms. Al Haj stopped purchasing DM Max. Proffer ¶ 96.

[34] *Al Haj II*, 2019 U.S. Dist. LEXIS 117930 at *25–26.

[35] Def.'s Resp. at 31–32. *See also Al Haj II,* 2019 U.S. Dist. LEXIS 117930 at *25 (discussing Plaintiff's testimony).

[36] Plaintiff's Statement of Additional Material Facts ("SAMF") ¶ 55. (Dkt. 143).

[37] *Id.*

[38] *Id.*

statement, testifying that she focused on the representations on the front of the product packaging—i.e., the "headlines"—to see if the product was "maximum strength."[39] She switched to DM Max from Regular because of Pfizer's labeling representation: "it say maximum strength. So we believe it's – the maximum strength it will be better. That's why we go."[40] And Plaintiff testified she expected that a bottle of DM Max would be more potent and a better overall value than a bottle of Regular.[41] Understanding the 'Maximum Strength' claim to mean that Maximum Strength was in some manner better than Regular, "a reasonable jury . . . could conclude that Pfizer's 'Maximum Strength' claim deceived Al Haj into purchasing and overpaying for Maximum Strength Robitussin . . . ."[42]

Legally, Pfizer concedes that Rule 23 does not require English fluency.[43] Nevertheless, Pfizer relies on two out-of-district cases, neither of which applies. *Rugambwa v. Betten Motor Sales* presented an "unusual factual situation" where the plaintiff's inability to read English in a case about written representations on forms and pamphlets meant that the plaintiff could not "demonstrate the detrimental reliance necessary to prove actual damages."[44] Plaintiff's claims do not require reliance, and in any event Plaintiff read and was deceived by Pfizer's packaging.[45]

---

[39] SAMF ¶¶ 92–94.

[40] *Id.* ¶ 67.

[41] *Al Haj II,* 2019 U.S. Dist. LEXIS 117930 at *25 (noting testimony that "would allow a reasonable jury to find that she expected a *bottle* of Maximum Strength Robitussin to be more potent and a better overall value than a bottle of Regular Strength Robitussin").

[42] *Id.*

[43] *See, e.g., Arango v. GC Servs., LP,* No. 97 C 7912, 1998 U.S. Dist. LEXIS 9124, at *8–9 (N.D. Ill. June 10, 1998).

[44] *Rugambwa v. Betten Motor Sales*, 200 F.R.D. 358, 365 (W.D. Mich. 2001)

[45] *Al Haj II,* 2019 U.S. Dist. LEXIS 117930 at *23–24 ("[T]he ICFA does not require a plaintiff to show actual reliance or diligence in ascertaining the accuracy of misstatements."). *See also* Pl.'s Mem. at 28 ("The multi-state class is likewise amenable to class-wide resolution on the issue of causation because no state requires proof of individual reliance.").

And while *Juarez v. Jani-King of Cal., Inc.* involved "franchise agreements with recent immigrants to the United States with little or no fluency in English," the court did not find an adequacy (or typicality) issue because of fluency concerns.[46] Rather the court highlighted a discrepancy between efforts to certify eight claims, whereas the named Plaintiffs brought fourteen claims, including fraud claims concerning oral promises "which Plaintiffs relied on in choosing to purchase a franchise."[47] The *Juarez* court expressed concern that certain "plaintiffs would likely be called on to subjugate their interest in the litigation of their uncertified fraud claims to serve their representational duty owed to the class . . . ."[48] Ms. Al Haj advances the same claims as the class, so no similar subjugation of interest concern exists here. Plaintiff carries Rule 23(a)(4)'s adequacy requirement.[49]

**D.    Common Questions of Fact Predominate Under Rule 23**

**1.    Common evidence will establish that the "Maximum Strength" representation is likely to deceive a reasonable consumer.**

As recognized in *Mednick v. Precor, Inc.*, because "the reasonable person standard calls

---

[46] *Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 579 (N.D. Cal. 2011).

[47] *Id.* at 579.

[48] *Id.* at 579–80.

[49] Pfizer tosses a weak 'credibility' attack in Footnote 23. However, Pfizer did not "demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design*, 637 F.3d at 728. Courts are cautioned to avoid diversion by weighing "petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class." *Fox v. Riverview Realty Partners*, No. 12 C 9350, 2014 U.S. Dist. LEXIS 55260, at *32–34 (N.D. Ill. Apr. 22, 2014) (certifying class where defendants "fail to mount a significant case that Fox is untrustworthy enough that she could not adequately represent the class or that the finder of fact is likely to focus on this in any significant way") (citing *CE Design*, 637 F.3d at 728). *Walters v. Reno*, No. C94-1204C, 1996 U.S. Dist. LEXIS 23166, at *18 (W.D. Wash. Mar. 11, 1996), reflects the high bar here. In certifying a class, the *Walters* the court rejected an adequacy/credibility challenge notwithstanding evidence that "[m]ost of the class representatives admitted in their depositions that they used false documents." *Id.* (granting class certification). Ms. Al Haj is credible.

for an objective analysis," whether a defendant "engaged in representations or omissions that were likely to deceive a reasonable consumer is a question capable of classwide proof."[50] This Court has held that to "satisfy the first element of her ICFA claim and show that Pfizer's designation of Maximum Strength Robitussin as 'Maximum Strength' was deceptive," plaintiff must establish that the designation is "likely to mislead . . . a reasonable consumer."[51]

Courts regularly highlight this objective standard in certifying consumer claims. For example in *Kurtz v. Kimberly-Clark Corp.*, the defendants sold products advertised as "flushable."[52] The district court determined that whether "a reasonable consumer regards this representation as materially misleading is a common question that will drive the resolution of the litigation."[53] Similarly, in *Hadley v. Kellogg Sales Co.*, the district court determined that the "deceptiveness of the challenged health statements on the products [] will be determined based solely on whether the health statements are likely to deceive or mislead a hypothetical *reasonable consumer* in light of the amount of added sugar that Kellogg puts into those products."[54] And on remand from the Seventh Circuit, *Suchanek II* certified a multi-state class where the liability question was "identical across every class member because all of the applicable consumer protection statutes require proof that Defendants' statement was likely to

---

[50] 320 F.R.D. 140, 148 (N.D. Ill. 2017) (certifying consumer fraud class covering California, Illinois, Missouri, New Jersey, and New York), *reconsideration denied,* No. 14 C 3624, 2017 U.S. Dist. LEXIS 92629 (N.D. Ill. June 16, 2017).

[51] *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2019 U.S. Dist. LEXIS 117930, at *10 (N.D. Ill. July 16, 2019) (*Al Haj II*).

[52] 321 F.R.D. 482, 549 (E.D.N.Y. 2017).

[53] *Id.* at 554; *see also id.* at 549 (noting "whether the 'flushable' label was *material* to a reasonable consumer's decision to purchase is an objective inquiry that focuses on that packaging"). (emphasis added) (internal quotation marks omitted).

[54] 324 F. Supp. 3d 1084, 1101 (N.D. Cal. 2018) (emphasis in original).

10

mislead a reasonable consumer."[55] Thus, the "claims of every class member will rise or fall on the resolution of that question."[56] So too here.

Ignoring that the reasonable consumer inquiry creates a predominating common question of fact, Pfizer contends that Plaintiff must submit survey evidence *resolving* that question.[57] But that is the class liability question *on the merits*. So "even if [the defendant] is correct in its assertion that Plaintiff has failed to provide sufficient evidence of deception and materiality, that failure has no bearing on whether common questions will predominate over individual questions," because the "failure of proof" on the reasonable consumer inquiry "would end the case for one and for all."[58] And, as this Court recently stated, it "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits."[59] There is no requirement—even at the merits stage—for survey evidence, much less now.[60] Instead, the "primary evidence in a false advertising case is the advertising itself."[61] The Seventh Circuit has held that the FTC is "not required to conduct consumer surveys before determining that a commercial has a tendency to mislead."[62] Rather, the commission "may rely on its own reasoned

---

[55] *Suchanek*, 311 F.R.D. at 259 (*Suchanek II*) (citing *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (*Suchanek I*)).

[56] *Id.* (certifying class under the consumer protection laws of eight states, including California, Illinois, New Jersey, and New York) (quoting *Suchanek I*, 764 F.3d at 757).

[57] Def.'s Resp. at 12.

[58] *Hadley*, 324 F. Supp. 3d at 1115–16; *see also Suchanek II*, 311 F.R.D. 239 at 259 ("survey evidence and expert testimony" used to resolve the question of liability "is common to all class members").

[59] *Smith v. NVR, Inc.*, No. 17 C 8328, 2019 U.S. Dist. LEXIS 216560, at *2 (N.D. Ill. Dec. 16, 2019).

[60] *Suchanek I*, 764 F.3d at 760 (noting "resolution *of the merits*" of whether packaging was likely to mislead a reasonable consumer "*may* require costly survey evidence") (emphasis added).

[61] *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 46 (2006) (on summary adjudication).

[62] *Kraft, Inc. v. FTC*, 970 F.2d 311, 319 (7th Cir. 1992) (citing *FTC v. Colgate–Palmolive*

analysis to determine what claims, including implied ones, are conveyed in a challenged
advertisement, so long as those claims are reasonably clear from the face of the advertisement."[63]
Courts construing consumer protection statutes follow the interpretations of the FTC and federal
courts relating to the FTC Act.[64] So they too have "explicitly rejected the view that a plaintiff
must produce extrinsic evidence such as expert testimony or consumer surveys in order to prevail
on a claim that the public is likely to be misled by a representation."[65]

Here, as the Court found, "it is at least plausible that a reasonable consumer would *not*
expect that a product is fairly represented as 'Maximum Strength,' and is properly priced higher
than its 'Regular Strength' cousin, if the consumer gets more of its active ingredients only by
consuming more of it."[66] So the trier of fact can ultimately determine a reasonable consumer's
expectations based on the "Maximum Strength" Robitussin product packaging itself, to which
class members were all exposed.[67] And consumer knowledge is not limited to the offerings of a
single store. Rather, consumers understand that a cough syrup that comes in "Maximum

---

*Co.,* 380 U.S. 374, 391–92 (1965)).

[63] *Id.* at 319; *see also id.* at 320 (citing *Zauderer v. Office of Disciplinary Counsel of U.S.,* 471 U.S. 626, 652–53 (1985)) (implied claims that are self-evident do not require the state to conduct a public survey before finding advertisement misleading). *See also F.T.C. v. QT, Inc.*, 448 F. Supp. 2d 908, 958 (N.D. Ill. 2006) (extrinsic evidence required only for implied claims that are "barely discernible") (subsequent history omitted).

[64] 815 ILCS 505/2; *see also* Fla. Stat. § 501.204(2); Mass. Gen. Laws Ch. 93A, § 2(b); N.H. Rev. Stat. § 358-A:13; N.M. Stat. § 57-12-4; Wash. Rev. Code § 19.86.920.

[65] *Hadley*, 324 F. Supp. 3d at 1115; *see also Kraft*, 970 F.2d at 320 ("[N]ot all courts applying the Lanham Act rely on extrinsic evidence when confronted with implied claims").

[66] *Al Haj*, 338 F. Supp. 3d at 755 (*Al Haj I*).

[67] Proffer ¶ 17. This distinguishes *Randolph v. J.M. Smucker* where the majority of "products did not bear the challenged labelling" and the class included products "which did not contain the alleged misrepresentation during the entire class period." *See* Def.'s Resp. at 11 (citing 303 F.R.D. 679, 696 (S.D. Fla. 2014)). *See also Smith*, 2019 U.S. Dist. LEXIS 216560, at *13 ("Given that the Smiths have not shown that nearly all or even the majority of the putative class received anything close to uniform representations from NVR regarding the cabinets and shingles, they cannot demonstrate predominance on their ICFA claims.").

Strength" typically also comes in "Regular Strength" (as implied by using the adjective "maximum"), even if the "Regular" is not at every store during every shopping experience.[68]

Moreover, abundant evidence of deception exists in this case that Plaintiff would present at a class-wide trial—whether this evidence ultimately proves deception is for the jury. ████ ██████████████████████████████████████████ ██████████████████████████████████████████████ ███████████████ ████████████████████████ ██████████████████████████████████████████████ ██████ ██████████████████████████████████ ██████████████ █ ██████████████████████████ █████████████████████████████████████████████ ███████████████ █ ████████████████████ ████████████████ █ ██████████████████████████ ████████████████████████ So when Pfizer diluted "Maximum Strength" to half its previous strength—and the cough suppressant to half the strength of regular—by volume, consumers naturally complained.[75] As the assistant brand manager for Robitussin summarized:

---

[68] *See* Def.'s Resp. at 15–16.

[69] Proffer ¶ 64.

[70] *Id.* at ¶ 65.

[71] *Id.* ¶ 67. *See also Al Haj II*, 2019 U.S. Dist. LEXIS 117930 at *25.

[72] Proffer ¶ 61. *See also Fanning v. FTC*, 821 F.3d 164, 170–71 (1st Cir. 2016) ("[I]f a claim conveys more than one meaning, only one of which is misleading, a seller is liable for the misleading interpretation even if nonmisleading interpretations are possible").

[73] Def.'s Resp. at 12.

[74] Proffer, Ex. 60 at PFE00052422 (████████████████████████████████████ ████████████████████).

[75] Proffer ¶ 79 (compiling consumer complaints). Pfizer says that not all consumers calling in

██████████████████████████████████████████████

████████████████████████████ Thus, consumer complaints, internal analyses, and market research provide additional common evidence (besides the packaging itself) as to whether Pfizer's "Maximum Strength" claim was likely to deceive a reasonable consumer.[78] This is sufficient for class certification.

In *Farar v. Bayer AG,* for example, the district court found that "defendants' own documents support that a reasonable consumer attaches importance to the [health] claims, and that defendants knew that its consumers would regard these claims as important, rendering these claims material."[79] And this was so even though Bayer pointed to other motivations for purchase, because such "evidence does not preclude" that the disputed claims were "not also effective drivers of purchase, and defendants' own materials strongly support that conclusion."[80] Bayer also presented surveys conducted by its expert, who found that "modifying the One A Day product package by removing the allegedly deceptive heart health, immune health, and physical

---

complained about the "Maximum Strength" representation and none complained that DM Max was weaker than Regular Strength. Def.'s Resp. at 13–14. But as the Court has explained, one would have to "calculate[] and compare[] each product's concentration of DXM Hbr and guaifenesin." *Al Haj II,* 2019 U.S. Dist. LEXIS 117930, at *12. And Pfizer's cases are inapposite. *See* Def.'s Resp. at 14. In *Browning v. Unilever* the plaintiff alleged that a body scrub caused undisclosed "micro-tears" and consumer complaints did not offer enough factual support for that theory of physical harm on summary judgment. No. SACV 16-02210 (AG), 2018 U.S. Dist. LEXIS 213841, at *3 (C.D. Cal. Dec. 10, 2018) And *Korte v. Pinnacle Food Groups, LLC* involved only five consumer complaints and no internal analyses or market research as here. No. 17-CV-199-SMY, 2019 U.S. Dist. LEXIS 155112, at *5 (S.D. Ill. Sept. 11, 2019).

[76] Proffer ¶ 81.

[77] *Al Haj I,* 338 F. Supp. 3d at 747.

[78] *Hadley*, 324 F. Supp. 3d at 1115; *Farar v. Bayer AG*, No. 14-CV-04601-WHO, U.S. Dist. LEXIS 193729, at *12 (N.D. Cal. Nov. 15, 2017); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1018 (C.D. Cal. 2015), *aff'd sub nom.*, 844 F.3d 1121 (9th Cir. 2017).

[79] No. 14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729, at *36 (N.D. Cal. Nov. 15, 2017).

[80] *Id.*

energy claims had *no* material effect on respondents' purchase decisions."[81] But the court found that the expert surveys were "inconclusive as to the question of materiality of the disputed claims" in light of the "defendants' documents on marketing strategies."[82]

Pfizer's paid-for-litigation survey here is likewise inconclusive given its Project Accelerate real-time market research substantiating that "Maximum Strength" is likely to deceive consumers.[83] On top of this, Pfizer's litigation survey suffers from design bias and overstated results. As to its partiality, Dr. Haruvy asks a leading question that mimics Pfizer's litigation position ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████"[84] But Dr. Haruvy notably fails to ask respondents to rate their agreement with whether "Maximum Strength" means that compared to the same volume of Regular Strength it "contains the same amount of guaifenesin (200 mg), but only half as much DXM Hbr (10 mg)."[85] That question should have been first on the list for an impartial investigator of the claims, as Dr. Haruvy claims to be.[86]

---

[81] *Id.* (emphasis in original).

[82] *Id.*

[83] *See* Shari Seidman Diamond, *Reference Guide on Survey Research,* Reference Manual on Scientific Evidence (2011) at 373 ("[I]f a survey was not designed for purposes of litigation, one source of bias is less likely: The party presenting the survey is less likely to have designed and constructed the survey to provide evidence supporting its side of the issue in controversy.").

[84] Expert Report of Ernan Haruvy, Def.'s Resp. at Ex. 14 ("Dr. Haruvy Report"), at Appendix A, p.26 (with 77% at least somewhat agreeing). *See also Reference Guide on Survey Research* at 394 ("Although the [agree/disagree question] format is appealing because it is easy to write and core these questions and their responses, the format is also seriously problematic.").

[85] *Al Haj I*, 338 F. Supp. 3d at 746.

[86] Dr. Haruvy Report at Appendix A, p. 13.

Dr. Haruvy also inaccurately asserts that  So

Dr. Haruvy's design bias and overstated results undermine his conclusions. And he offers nothing to undermine the reality that consumers "would not have known that Maximum Strength Robitussin had a lower concentration of active ingredients" than Regular without calculating and comparing "each product's concentration of DXM Hbr and guaifenesin."[91]

Pfizer's cases are inapposite. In *Thorogood v. Sears, Roebuck & Co.,* the Seventh Circuit rejected that the plaintiff's reading of a marketing claim was even plausible.[92]

Likewise, in *Korsmo v. Am. Honda Motor Co.*, a court determined that class members likely did not understand "Honda Certified Used Cars" to mean the manufacturer was the one to certify the vehicle, when Honda explicitly stated that the dealer performed the certification—and the "plaintiff himself stated that he understood that it was the dealer who certified the cars."[93] And in

---

[87] Def.'s Resp. at 15.

[88] *See* attached Appendix 1 (filed under seal).

[89] *See* attached Appendix 2 (filed under seal).

[90] Dr. Haruvy Report at Appendix A, pp. 25–26.

[91] *Al Haj II*, 2019 U.S. Dist. LEXIS 117930, at *11–12.

[92] 547 F.3d 742, 748 (7th Cir. 2008).

[93] No. 11 C 1176, 2012 2012 U.S. Dist. LEXIS 65709, at *14–15 (N.D. Ill. May 10, 2012).

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*, "given that each bottle of 5HE explicitly stated that it contained only four calories," the defendant argued that it would be "unreasonable for a consumer to believe that 'energy' meant only 'caloric energy.'"[94] Further, in *Schechner v. Whirlpool Corp.*, whether the defendant misrepresented its "self-cleaning" feature depended "on how the feature actually performed" and "the actual performance of the self-cleaning feature require[d] an individualized inquiry as to whether each consumer followed the instructions exactly and the initial level of grime."[95] Conversely, Plaintiff's understanding of "Maximum Strength" as more potent than Regular Strength is both plausible and supported by Pfizer's own real-time market research—and the falsity of the misrepresentation is established for all with common proof of the active ingredients by volume in the aftermath of Project Accelerate.[96]

### 2. Plaintiff will also establish causation with common proof.

In *Suchanek I*, the Seventh Circuit faulted the district court for doing what Pfizer invites the Court to do here: conclude that "individual issues necessarily predominate" because causation "requires an investigation of each purchaser."[97] However, in no uncertain terms, the Seventh Circuit held this was an "error of law."[98] After citing *Amchem* for the proposition that "predominance is a test readily met in certain cases alleging consumer fraud," the Seventh

---

[94] No. ML 13-2438 PSG, 2017 U.S. Dist. LEXIS 220969, at *23–24 (C.D. Cal. June 7, 2017), *reconsideration denied,* No. ML 13-2438PSG, 2017 U.S. Dist. LEXIS 176263 (C.D. Cal. Aug. 11, 2017).

[95] No. 2:16-CV-12409, 2019 WL 4891192, at *7 (E.D. Mich. Aug. 13, 2019).

[96] In other words, just as common evidence regarding the lack of health benefits established the falsity of the misrepresentation in *Mullins*, so too does common evidence regarding formulation here. *See* Def.'s Resp. at 11 n.5 (citing *Mullins v. Direct Dig.*, *LLC*, No. 13 CV 1829, 2014 U.S. Dist. LEXIS 155018 (N.D. Ill. Sept. 30, 2014)).

[97] 764 F.3d at 759.

[98] *See* Def.'s Resp. at 35.

Circuit remanded to the district court to make the predominance determination.[99] And on remand, the district court certified a class of consumers from states including California, Illinois, New Jersey, and New York.[100] The district court held that even if "individualized proof from each class member may be required on the issues of proximate causation" it would "not make the class format unmanageable," because "[i]t is routine in class actions to have a final phase in which individualized proof must be submitted."[101] In denying a motion to decertify, the district court again acknowledged that reliance/causation was "the only element that possibly necessitates individualized proof."[102] But class treatment remained appropriate.[103] Moreover, the court said that reliance/causation "is not a required element under the statutes of some states, and other states permit a presumption," so "individual inquiries would not be necessary."[104]

Class representatives need not establish the individualized reliance of absent class members, but instead a uniform and material misrepresentation injuring them. For example, in applying Florida law, the Eleventh Circuit in *Carriuolo v. Gen. Motors* rejected the defendant's argument that "the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it," because "these arguments simply seek a reliance inquiry by another name."[105] Instead, the objective inquiry required under the FDUTPA meant that "causation and

---

[99] *Suchanek I*, 764 F.3d at 760–61 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

[100] *Suchanek II*, 311 F.R.D. at 259–60.

[101] *Id.* (quoting *Suchanek I*, 764 F.3d at 756).

[102] *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2017 U.S. Dist. LEXIS 138016, at *40 (S.D. Ill. Aug. 28, 2017) (*Suchanek III*).

[103] *Id*.

[104] *Id.*

[105] 823 F.3d 977, 985–86 (11th Cir. 2016).

18

damages may also be amenable to class-wide resolution."[106] Likewise, the Massachusetts

Supreme Judicial Court clarified in affirming class certification in *Aspinall v. Philip Morris* that

a "successful G.L. c. 93A action based on deceptive acts or practices does not require proof that

a plaintiff relied on the representation."[107] Thus, an individual's "subjective motivation" in

purchasing has no bearing.[108] And the objective inquiry required under New York law also

means that "neither Section 349 nor 350 require proof of reliance."[109] So in certifying the class in

*In re Scotts EZ Seed*, the district court held that "[c]lasswide evidence will be used to establish

whether [the labeling] was false, and if so, whether it was likely to mislead a reasonable

consumer acting reasonably under the circumstances."[110]

Similarly, in applying California law, the Ninth Circuit in *Stearns v. Ticketmaster* stated

that "relief under the UCL is available without individualized proof of deception," so that

"concerns about reliance and causation were not well taken."[111] Instead, the court explained that

"causation, on a classwide basis, may be established by materiality," because an inference arises

where "material misrepresentations have been made to the entire class."[112] And in *Elias v.*

---

[106] *Id.*

[107] 813 N.E.2d 476, 486 (Mass. 2004).

[108] *Id.*

[109] *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015).

[110] *Id.* And *In re Scotts EZ Seed* distinguished *Weiner v. Snapple* as inapposite, because there the court "decline[d] to find common questions predominate[d] as to injury because plaintiffs ha[d] not proposed suitable damages methodologies" to establish injury and causation. 304 F.R.D. at 410 n.7 (citing *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8741 (DLC), 2010 U.S. Dist. LEXIS 79647 (S.D.N.Y. Aug. 5, 2010)). *See* Def.'s Resp. at 17 n.11.

[111] 655 F.3d 1013, 1020 (9th Cir. 2011).

[112] *Id.* at 1022; *see also Farar*, 2017 U.S. Dist. LEXIS 193729, at *40 (evidence that "claims were targeted to consumers based on their researched effectiveness" supported the materiality of defendants' claims and an inference of reliance"); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558–59 (S.D. Cal. 2012) (rejecting argument that materiality involved "individual inquiries, since people buy multivitamins for a variety of reasons," because the reasonable consumer standard obviated such

19

*Ungar's Food*, "the predominance requirement for the plaintiffs' NJCFA claim [wa]s satisfied" where "uniform statements regarding fat and calories were made to all customers that were misleading and reasonably could be said to have made a difference in a decision to purchase the product," so it was "appropriate to presume there is a connection between the statements and the purchase of a product different from that which was promised."[113]

Besides *Suchanek*, other district courts have recently certified multi-state false-advertising cases. In *In re Dial Complete Mktg. & Sales Practices Litig.*, for example, the defendant argued—just as Pfizer does here[114]—that it was "improper to presume that the challenged claims were material to consumers because individuals take into account numerous factors when buying hand soaps."[115] The defendant argued that "many consumers purchased Dial Complete because of its foaming, fragrance, bottle design or any other product features."[116] But the court found that the "challenged claims were printed on the label of each and every Dial Complete bottle sold" and "consistently asserted that Dial Complete was more effective than ordinary liquid hand soap."[117] Moreover, "Dial would not have chosen to promote Dial Complete's purported effectiveness if Dial did not believe that claim was a material selling point."[118] Concluding the evidence was "sufficient to support a finding that the challenged claims

---

inquiries).

[113] 252 F.R.D. 233, 248–49 (D.N.J. 2008).

[114] Def.'s Resp. at 17–18.

[115] 312 F.R.D. 36, 61 (D.N.H. 2015).

[116] *Id.*

[117] *Id.*

[118] *Id.*

were material, and that individualized evidence is therefore not required," the court certified claims under multiple states, including California, Florida, Illinois, and Missouri.[119]

Likewise, *In re ConAgra Foods* recognized that "Illinois courts have concluded that causation is susceptible of classwide proof and that individualized inquiries concerning causation do not predominate if plaintiffs are able to adduce sufficient evidence that the representation was material" to a reasonable consumer.[120] It held further that common questions predominated under the consumer protection laws of California, Colorado, Florida, and New York,[121] because the plaintiffs could prove the materiality of the "100% natural" labeling claim to a reasonable consumer with aggregate evidence.[122] So too here.

As discussed above, consumer complaints and Pfizer's own internal analyses and market research provide common evidence of materiality to the reasonable consumer.[123] Thus, unlike in *Langendorf v. Skinnygirl Cocktails,* where the plaintiff presented "no evidence" to show that the "label 'all natural' had a tendency to influence the decision to purchase the product,"[124] here Pfizer's own market research demonstrates that the "Maximum Strength" representation sways consumers to "spend more," because they "see value" in that representation.[125] And unlike *Clark*

---

[119] *Id.* (discussing California law); *see also id.* at 63 (Florida), 65–66 (Illinois), 68–69 (Missouri). *See generally id.* at 61–69.

[120] 90 F. Supp. 3d at 997.

[121] *Id*. at 982–83 (California), 988 (Colorado), 992–93 (Florida), 1008 (New York).

[122] *Id*. at 1118.

[123] Contrary to Pfizer's argument, *see* Def.'s Resp. at 17, there is no requirement that plaintiff introduce survey evidence at class certification. As stated in *Suchanek I*, evidentiary proof of class allegations is not required but "might include" survey evidence. 764 F.3d at 760–61.

[124] 306 F.R.D. 574, 583 (N.D. Ill. 2014). Likewise, in *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.* there was "no classwide evidence of materiality in the form of a consumer survey, market research, or an expert opinion." *See* Def.'s Resp. at 17 n.11 (citing No. MC 15-1825 (ESH), 2019 U.S. Dist. LEXIS 114583, at *112 (D.D.C. July 10, 2019)).

[125] Proffer ¶ 65.

*v. Bumbo,* where the plaintiff relied on her deposition testimony and "bare-bones assertions by counsel,"[126] here consumer complaints in the aftermath of Pfizer diluting "Maximum Strength" to half of its former strength buttress Pfizer's market research regarding the materiality of the claim.[127] In the words of Pfizer's own employee: ███████████████████████ [128]

Pfizer argues that *Suchanek I* is inapposite because defendants charged three to four times as much as typical instant coffee for their coffee misrepresented as freshly ground.[129] But the Seventh Circuit's statement that "only a very price insensitive consumer, or one who has been misled" would buy the product applies here too.[130] As this Court stated, a purchaser of "Maximum Strength" paid "*more than twice* as much per mg of DXM Hbr than is a purchaser of Regular Strength Robitussin."[131] And per *Mednick,* other cases cited by Pfizer do not detract from the binding power of *Suchanek. Mednick* points out that *Lipton* and *In re Sears* "predate[d] *Suchanek*" and seem "to endorse the proposition—since then rejected by the Seventh Circuit— that 'no class can be certified until proof exists that every member has been harmed.'"[132]

Pfizer also argues that "a majority of respondents in Dr. Haruvy's survey indicated that they read dosage information before buying cough syrup" and those that "knew the truth" cannot

---

[126] No. 15 C 2725, 2017 U.S. Dist. LEXIS 137607, at *25 (N.D. Ill. Aug. 28, 2017). Even worse, in *Lipton v. Chattem, Inc.*, plaintiff testified that "she would have bought Dexatrim even if hexavalent chromium had been listed as an ingredient," which this Court stated "pose[d] a severe problem" for the plaintiff on proof of materiality and causation. *See* Def.'s Resp. at 18 (citing 289 F.R.D. at 459-60). Here, Plaintiff stopped purchasing Max when she learned the truth. Proffer ¶ 96.

[127] Proffer ¶ 79.

[128] *Id.* at ¶ 81.

[129] Def.'s Resp. at 21–22.

[130] *Suchanek I,* 764 F.3d at 754.

[131] *Al Haj I,* 338 F. Supp. 3d at 747.

[132] 2017 U.S. Dist. LEXIS 92629 at *17 (citing *Suchanek I,* 764 F.3d at 757). *See* Def.'s Resp. at 17 n.11 & 18 (citing *Lipton,* 289 F.R.D. at 458, and *In re Sears Roebuck & Co. Tools Mktg. & Sales Prac. Litig.*, No. MDL 1703, 2007 U.S. Dist. LEXIS 89349 (N.D. Ill. Dec. 4, 2007)).

bring a claim.[133] But "merely knowing each product's dosage was not enough to cure the alleged deception," as a consumer "still would need to perform arithmetic and a cross-check based on each product's ingredient list to learn the concentration of active ingredients in each bottle."[134] Moreover, "*it is not reasonable* to expect a consumer to cross-check a product's ingredient list against *another* product's list and then perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities *it purports to have*."[135] So while plaintiff has the burden to demonstrate that materiality of the "Maximum Strength" claim can be established with common proof, plaintiff need not prove that anyone engaged in the arithmetic and cross-check this Court has said would be unreasonable to expect them to perform.[136]

Finally, there is no requirement that a plaintiff establish that an advertising message was the only motivating factor for a reasonable consumer's purchase.[137] In *Hadley*, the defendant argued that predominance was absent "because the evidence shows that people buy Kellogg products for reasons other than health, such as taste, price, brand loyalty, nostalgia, and convenience."[138] But the district court held that plaintiff did not have to prove that the challenged health statements were the "sole or even the predominant or decisive factor" influencing the decision to buy the challenged product.[139] So Pfizer's assertion that consumers purchase cough

---

[133] Def.'s Resp. at 18–19.

[134] *Al Haj II*, 2019 U.S. Dist. LEXIS 117930, at *12.

[135] *Id.* at *4.

[136] *See* Def.'s Resp. at 19 (discussing burden); *Al Haj II*, 2019 U.S. Dist. LEXIS 11930 at *12.

[137] Def.'s Resp. at 19–21.

[138] 324 F. Supp. 3d at 1116.

[139] *Id.* at 1116–117; *see also* Restatement (Second) of Torts § 546 cmt. b (1977); *In re Dial*, 312 F.R.D. at 61.

medicine for a variety of reasons—and volunteered a variety of reasons in its litigation survey—does not undercut plaintiff's showing of common evidence to establish that "Maximum Strength" was material to the reasonable consumer.

### 3. Each purchaser was harmed by purchase of a diluted "maximum strength" product at a higher price.

Pfizer declares individualized issues predominate because plaintiff's theory requires her to prove that each class member made "a particular purchasing decision – switching from Robitussin DM to DM Max."[140] But, as this Court has stated, benefit-of-the-bargain damages are "established at the time of purchase" by "paying more for diluted medicine" when "Maximum Strength" was promised instead.[141] So damages can be calculated using classwide proof "by assessing the difference between the actual value of the property sold and the value the property would have had at the time of the sale if the representations had been true."[142]

As the Eleventh Circuit explained in affirming class certification in *Carriuolo*, because "injury is not determined by the plaintiffs' subjective reliance," damages were "amenable to class-wide resolution" by measuring "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."[143] Likewise, the Ninth Circuit found predominance satisfied in *Nguyen v. Nissan* because the plaintiffs' benefit-of-the-bargain model of damages "awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive."[144] Similarly, the district court in

---

[140] Def.'s Resp. at 24.

[141] *Al Haj II*, 2019 U.S. Dist. LEXIS 117930 at *20.

[142] *Id.* (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196–97 (Ill. App. Ct. 2008)).

[143] 823 F.3d at 985–86 (discussing Florida law).

[144] 932 F.3d 811, 821 (9th Cir. 2019).

*Elias* found predominance satisfied, because the "plaintiffs need only prove that they paid for a product and got something less than what had been promised."[145] So did the district court in *In re Dial Complete Mktg. & Sales Practices Litig.*, finding that the plaintiffs' claims were "capable of classwide proof," because "the plaintiffs were not required to prove loss by individually showing the cost of alternative therapy" and could state an objective loss "using the benefit-of-the-bargain rule."[146] This is what plaintiff's expert, Mr. Lesch, has proposed.[147]

The potential for individual proof provides no basis to deny certification. As the Seventh Circuit stated in *Suchanek*, if that were so "it would never be possible to certify a consumer class action."[148] So the court said that the district court "was wrong" to think "that no class can be certified until proof exists that every member has been harmed."[149] And the Court drew an important "distinction between class members who *were not* harmed and those who *could not* have been harmed."[150] "[I]n-store purchasers that were exposed to the allegedly deceptive packaging could have been injured by it, even if it turns out later that a few were not."[151] So "[t]his was not a legitimate basis for denying certification."[152]

---

[145] 252 F.R.D. 36, 48–49 (D.N.H. 2015). *See also In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[C]lasswide evidence will determine whether plaintiffs were injured" by paying "a premium for EZ Seed based on [the] false 50% thicker claim").

[146] 312 F.R.D. at 68-69 (Missouri law); *id.* at 69 ("[C]lass members are not individually required to show what they would or would not have done had the product not been misrepresented."). *See also* Proffer, Ex. 76.

[147] *See* Pl.'s Mem. at 35–37; Proffer, Ex. 15 at ¶¶ 28–29.

[148] 764 F.3d at 752.

[149] *Id.* at 757.

[150] *Id.* at 758 (emphasis in original).

[151] *Id.*

[152] *Id.*

In denying a motion for reconsideration in *Mednick*, Judge Leinenweber rejected the defendant's attempt—as Pfizer tries here[153]—to categorize various purchasers who supposedly were not deceived. Relying on *Suchanek*, the court explained that "while to show that the people on Precor's list were or were not harmed requires individualized proof, to show that they could have been harmed requires only common evidence."[154] So too here.

Finally, Pfizer's cases are inapposite. In *Gonzalez v. Corning*, the plaintiffs could not prove by common evidence that class members were injured by a promise that shingles "would last 25 years, or more, but deliver[ing] shingles that will not last more than 20 years," because some shingles "lasted for more than 30 years" such that an evaluation could not be made without individual shingle examinations.[155] Similarly, *Opperman v. Allstate N.J. Ins. Co.* "require[d] an individualized comparison of what his or her loss [of dwelling] was worth with the amount Allstate ultimately paid on the claim."[156] Conversely, common evidence regarding formulation will establish that every bottle of "Maximum Strength" was diluted. *In re Grand Theft Auto Video Game Consumer Litig.* acknowledges that the "ascertainable-loss requirement may not bar certification where," as here, "the defendant has engaged in a uniform practice of overcharging to which all class members were, by definition, exposed."[157] And the deception here occurred at the time of sale, unlike in *Marshall v. Hyundai Motor Am.*, which sought damages arising "from *post-sale* deceptive conduct."[158] In short, the injury here is subject to common proof.

---

[153] Def.'s Resp. at 24.

[154] *Mednick*, 2017 U.S. Dist. LEXIS 92629 at *18.

[155] 317 F.R.D. 443, 518 (W.D. Pa. 2016).

[156] No. CIV. 07-1887 (RMB), 2009 U.S. Dist. LEXIS 111733, at *17 (D.N.J. Nov. 13, 2009).

[157] 251 F.R.D. 139, 157 (S.D.N.Y. 2008).

[158] No. 12 CIV. 3072 (CM), 2019 U.S. Dist. LEXIS 103764, at *51 (S.D.N.Y. June 14, 2019) (emphasis in original). And *Mednick* has distinguished *In re Sears* as pre-dating *Suchanek. See supra*

**E.    Common Questions Of Law Predominate As Well**

**1.    Common questions of law will predominate for the Nationwide Class.**

Pfizer puts forth no effort in challenging the application of New Jersey law to a nationwide consumer fraud class.[159] Pfizer's unwillingness to engage in *any* analysis speaks volumes. Crucially, the New Jersey Consumer Fraud Act (NJCFA) allows "consumers outside New Jersey" to bring claims under it.[160] While this Court found that Illinois law governed Plaintiff's claims, it did so without the benefit of discovery. Aided by discovery, New Jersey emerges as the state with strongest and most significant contacts. New Jersey provided the site for: (1) Pfizer's principal place of business; (2) the genesis of the decision to dilute Maximum Strength Robitussin; (3) the approval of Project Accelerate; (4) the brand team for Robitussin; and (5) crucial decisions regarding the goals, marketing, and strategies related to retail customers.[161] This case presents nearly the same facts that the New Jersey Appellate Division ruled the NJCFA could be applied nationwide.[162] The same outcome should apply here.

---

p. 22; *see also supra* p. 16 for a discussion of *Thorogood*.

[159] Def.'s Resp. at 34–35.

[160] *Elias,* 252 F.R.D. at 240; *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 894 A.2d 1136, 1143 (N.J. App. Div. 2006), *rev'd on other grounds*, 929 A.2d 1076 (N.J. 2007) (There is "little doubt that the New Jersey Legislature intended its Consumer Fraud Statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside New Jersey.") (quotation omitted).

[161] *See* Pl.'s Mem. at 17.

[162] *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund*, 894 A.2d at 1148 (finding that New Jersey law should apply due to New Jersey's significant relationship to the fraud and parties where, *inter alia*: (1) "Merck is a New Jersey corporation with its corporate home located in this state;" (2) "Vioxx was primarily developed in New Jersey;" (3) "Scientific research, studies, and presentations relating to the safety of Vioxx and its clinical studies were conducted in this State;" (4) "The ultimate decision-making power regarding Vioxx's marketing and development was exercised in New Jersey" and (5) "The fraud allegedly was conceived of and executed from New Jersey."). *See also Mendez v. Avis Budget Grp., Inc.*, No. CIV.A. 11-6537 JLL, 2012 U.S. Dist. LEXIS 1224708, at *11 (D.N.J. Apr. 10, 2012) (applying NJCFA due to New Jersey ties though consumer rented a car outside state); *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 143 (D.N.J. 2010)N.J. 2010), *opinion modified on reconsideration,* No. CIV. 07-2720 DRD, 2010 U.S. Dist. LEXIS

## 2. The Consumer Protection Multi-State Class is a viable alternative.

In opposing multi-state certification, Pfizer suggests variations exist in the 14 relevant consumer protection statutes, rendering any class trial unworkable.[163] But Pfizer's argument amounts to nothing more than identifying distinctions without a difference. While Pfizer may point to subtle variations in statutory language or even the fact that some states have additional elements (*i.e.*, scienter), "generically recit[ing] differences in the state laws" does not "demonstrate that a multistate class is 'per se unworkable.'"[164] Multi-state certification *presumes* some variations will exist.[165] Certification asks whether the state laws bear enough similarities so one trial, using the same common evidence, can efficiently resolve the claims in the proposed states.[166] Further, Pfizer claims that some discrepancies in the states' laws would require the jury to apply different legal standards to the same conduct.[167] Yet, even assuming Pfizer accurately represents these differences (it doesn't), the argument begs the question: *so what?* There's nothing "unworkable" about a jury examining a trial's worth of evidence about Pfizer's "single course of conduct" and then answering a few questions regarding the legality of it.[168] Compared

---

2976496 (D.N.J. July 22, 2010) (applying New Jersey law to a nationwide certified class)e certified class); *Elias*, 252 F.R.D. at 247–48 (certifying a nationwide class under New Jersey law because it had the strongest interest in applying its consumer fraud statute).

[163] Def.'s Resp. at 34.

[164] *Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 U.S. Dist. LEXIS 32928, at *36 (N.D. Ill. Mar. 15, 2016).

[165] *See Suchanek I*, 764 F.3d at 756 ("Neither Rule 23 nor any gloss that decided cases have added to it requires that every question be common."); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 97 (2d Cir. 2018) ("Variations in state laws do not necessarily prevent a class from satisfying the predominance requirement.").

[166] *See Suchanek I*, 764 F.3d at 756 ("'What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)).

[167] Def.'s Resp. at 34–44.

[168] *Suchanek I*, 764 F.3d at 756.

to the alternative—multiple individual trials—it's far more efficient and clearly superior.
Moreover, Pfizer's arguments about scienter, deceptive conduct, and causation only illuminate
this point—and none more so than its discussion of scienter.

> ### a. Scienter does not defeat certification given Pfizer's common conduct.

According to Pfizer, eight states require no proof of intent, while six do.[169] Pfizer argues
this renders certification unworkable because a jury "could conclude that Pfizer did not intend to
deceive consumers."[170] But Pfizer doesn't explain why the potential for a jury verdict in its favor
on intent renders certification untenable. Pfizer in fact makes the case for certification. In fact,
class certification is appropriate where claims will "rise *or fall*" on common evidence.[171] As the
Supreme Court explained in *Amgen*, "the plaintiff class's inability to prove [one common issue]
would not result in individual questions predominating."[172] Rather, "a failure of proof on the
issue . . . would end the case," at least as to those claims.[173] They "will prevail or fail in unison,"
and thus "the individual circumstances of particular class members [won't] bear on the
inquiry."[174] Should a jury find that Pfizer did not intend to deceive consumers, the consumer
fraud claims against Pfizer would "fail in unison" in the six states with scienter requirements. So
Pfizer's argument actually supports the appropriateness class certification.

Moreover, Pfizer's brief contradicts that these intent standards "var[y]" among the states
with them.[175] The six applicable standards, according to Pfizer, are: (1) "'defendant knowingly

---

[169] Def.'s Resp. at 43.

[170] *Id*. at 44.

[171] *Suchanek I*, 764 F.3d at 757 (emphasis added).

[172] *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013).

[173] *Id.* at 460.

[174] *Id.*

[175] Def.'s Resp. at 42.

engaged in a deceptive trade practice'" (Colorado); (2) "defendant 'intended [for] . . . members of the class to rely on the deception'" (Illinois); (3) defendant acted with "'an intent to deceive'" (Michigan); (4) defendant acted "'with the intent that others rely' on the deceptive conduct" (Minnesota); (5) defendant acted with a "degree of knowledge or intent," (New Hampshire); and (6) defendant acted "knowingly"[176] (New Mexico). These standards may not use precisely the same wording, but they do not differ in any *meaningful* way. So separate jury instructions for each state on intent would be redundant. From a practical standpoint, the Court need (at most) issue two instructions: one asking the jury to determine "whether Pfizer knowingly engaged in a deceptive act" (Colorado, New Hampshire, New Mexico) and another asking the jury "whether Pfizer intended deceive consumers with its conduct" (Illinois, Michigan, Minnesota). Or the Court could issue one instruction asking "whether Pfizer acted with knowledge that it was engaging in a deceptive act or practice, and with the intent to deceive consumers by doing so." But neither scenario is "unworkable" and the questions are effectively the same.

More importantly, the intent inquiry focuses solely on the conduct and motives of Pfizer, meaning any evidence would be common to the class.[177] Nor will that evidence differ from state to state; common sense confirms that the same evidence used to prove Pfizer acted "with intent" can prove Pfizer acted "knowingly." Thus, the mere existence of a scienter element in six states does not preclude resolving the multi-state consumer fraud claims in a single trial.

---

[176] *Id*. at 43.

[177] *See Suchanek I*, 764 F.3d at 756 ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims . . . there is a common question."); *Greene v. Sears Prot. Co.*, No. 15-CV-2546, 2018 U.S. Dist. LEXIS 105489, at *8 (N.D. Ill. June 25, 2018) (recognizing issues regarding alleged course of conduct are central issues capable of common proof).

### b. The deception standards align, so a single trial using common evidence is not only possible, but "makes good sense."

The outcome is no different when one examines deceptive conduct. As explained in Plaintiff's opening brief, each state uses an objective standard to measure deception, meaning any evidence will focus on the conduct of Pfizer and the representations on the packaging. Such questions "can be proved through evidence common to the class."[178] Pfizer does not dispute this.[179] But, according to Pfizer, these states cannot be certified in a multi-state class because those objective standards, while similar, differ in certain respects; namely, some states ask whether the misrepresentation would be "material" to a reasonable consumer while others ask if it had the "tendency to deceive" a reasonable consumer.[180] Therefore, Pfizer contends, a "classwide verdict as to all consumers in multiple states that does not account for these differences would not be consistent with some states' laws."[181] This argument reflects a profound misunderstanding of class certification.

On class certification, the Court asks whether the claims common to the class are capable of resolution in a single *trial*, not a single *verdict*.[182] Thus, the Court needn't certify these states because they have identical consumer fraud standards, so one jury instruction and one verdict could stand for all. Rather, the Court should certify the proposed multi-state class because each state employs deception standards that mirror each other so its adjudicating those claims in one

---

[178] *Amgen*, 568 U.S. at 467.

[179] *See* Def.'s Resp. at 34–38.

[180] *Id*. at 39.

[181] *Id*. at 40.

[182] *Wal–Mart,* 131 S.Ct. at 2551 ("What matters to class certification . . . [is] the capacity of a classwide proceeding . . . .") (internal quotation marks omitted).

trial using the same evidence "makes good sense."[183] That's the purpose of Rule 23.[184] And it is the takeaway from the Seventh Circuit's opinion in *Suchanek*.

The deception standards "differed" in *Suchanek* as Pfizer submits here: "[a]ll of the applicable state consumer protection laws require proof that a statement is either (1) literally false, or (2) likely to mislead (either through a statement or material omission) a reasonable consumer."[185] Yet, the Seventh Circuit still held that the district court erred in denying class certification.[186] Despite minor differences, the significant overlap between the legal elements meant "it would be extraordinarily duplicative and wasteful" to litigate the case any other way.[187] The circumstances here are similar. The jurisdictions in Consumer Protection Multi-State Class utilize those same standards for deception, making "a decentralized process of multiple trials . . . [un]necessary for an accurate evaluation of the claims."[188] Rule 23 exists to eliminate such inefficiencies to resolve claims in one trial. Common issues of deception predominate.

> c.    **Plaintiff can prove causation using common evidence under either a "reasonable person" or "proximate cause" standard.**

The ability to resolve consumer claims in a single class trial does not change with the causation element either, for which Plaintiff proposes two subclasses: a "reasonable consumer" subclass and a proximate cause subclass. Regarding first subclass, Pfizer challenges its viability

---

[183] *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

[184] *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974) ("[M]ultiplicity of activity" is "precisely [that] which Rule 23 was designed to avoid . . . .").

[185] *Suchanek I*, 764 F.3d at 756.

[186] *Id.*

[187] *Suchanek II*, 311 F.R.D. at 259.

[188] *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).

only by claiming two states—California and Massachusetts—do not impose a reasonable consumer causation standard. Pfizer gets both states' respective laws wrong.

In California, "[f]or purposes of class certification, [its various consumer fraud statutes] are materially indistinguishable."[189] And "[e]ach statute allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material."[190] So "a California class suing under the state's consumer protection statutes ***need not show individualized reliance*** if it can establish the materiality of the [representation] to a reasonable consumer."[191] Pfizer's contention that a classwide showing of materiality "is not possible" in California where one part of the label "clarified" another part of the label lacks any basis in the law.[192] Pfizer relies on a single 27-year old decision, *Caro v. Procter & Gamble, Co.*, that states no such thing and that court never implied that the reasonable person standard would not apply in a case with deceptive packaging.[193] On top of this, Pfizer's label does not clarify the deception challenged here.[194]

---

[189] *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015) (internal citations and quotations omitted).

[190] *See id.* (internal citations and quotations omitted) (collecting cases); *see also Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1288 (Cal. App. Ct. 2002) ("California courts have repeatedly held that relief under the UCL is available without individualized proof of deception, reliance and injury."); *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) ("Nor does a plaintiff need to demonstrate individualized reliance on specific misrepresentations . . . .").

[191] *Id.* (emphasis added).

[192] Def.'s Resp. at 41.

[193] 22 Cal. Rptr. 2d 419, 433 (Cal. App. Ct. 1993).

[194] *Al Haj II*, 2019 U.S. Dist. LEXIS 117930, at *11–12 ("Even if the 'See New Dosing' alert would have led a reasonable consumer to read the 20 ml dosage information on the other side, the consumer would not have known that Maximum Strength Robitussin had a lower concentration of active ingredients than Regular Strength Robitussin . . . .").

Massachusetts also applies the "reasonable consumer" standard for causation. While claims under Massachusetts General Laws Chapter 93A generally require some proof of a "causal connection" between the purchase and the loss,[195] the "reasonable person" standard satisfies that inquiry where a product's label contained deceptive advertising.[196] As Massachusetts' Supreme Court explained, "[i]t follows that, if the violations of G.L. c. 93A alleged by the plaintiffs are proved, all members of the class . . . will have been injured . . . ."[197] And, "because [the product] was falsely labeled," all class members would have purchased "a product that was deceptively advertised, as a matter of law," meaning "all [class members] will be entitled to statutory damages . . . ."[198] So where "deceptive advertising 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted,' causation [is] established."[199] Thus, the reasonable consumer test can satisfy causation.

Regarding the states employing proximate cause standards, Pfizer resorts to cherry-picking minor phrasing divergences without indicating how those differences render a trial using common proof impossible.[200] But the proximate cause standards are practically indistinguishable because they all aim to establish the same thing: a "causal link" between (1) the misrepresentation and (2) the loss alleged.[201] Known as "loss causation," it's proven by

---

[195] *Hershenow v. Enter. Rent-A-Car Co. Of Bos.*, Inc., 840 N.E.2d 526, 532 (2006).

[196] *See Aspinall v. Philip Morris Companies, Inc.*, 813 N.E.2d 476, 492 (2004).

[197] *Id.*

[198] *Id.*

[199] *Hershenow*, 445 Mass. at 801 (quoting *Aspinall*, 442 Mass. at 394).

[200] Def.'s Resp. at 41–42.

[201] Pl.'s Mem. at 29–30.

"compar[ing] the actual value of the item to the value of the item as if it had been as represented at the time of the transaction."[202] To prove this, Plaintiff will draw upon common evidence.

Even if certain states required individual evidence to satisfy causation, this *still* does not bar multi-state certification. The Court can certify those states as "liability only" classes because "the individual issues in those cases could be 'readily determined' in individualized follow-on proceedings."[203] Or the Court could remove a state or states from the certified group altogether. The district court did the former on remand in *Suchanek*.[204] Pfizer ignores these possibilities, preferring the hatchet of class certification denial as opposed to a reasoned scalpel.

Ultimately, the direction from the Seventh Circuit is clear: district courts should not be so quick to reject class certification based on subtly and should rather focus on what the predominance inquiry truly requires.[205] Certification does not require a complete lack of individual issues; it asks whether common issues *predominate* to make a single trial a practical option. "Every consumer fraud case" involves at least some "individual elements of reliance or causation."[206] To require "100% commonality" would not only invoke the wrong standard, but also "would eviscerate consumer-fraud class actions" altogether, eliminating an "important device in vindicating the rights of consumers . . . ."[207] As a result, "'[p]redominance is a test readily met in certain cases alleging consumer . . . fraud.'"[208] This case is no exception.

---

[202] *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009).

[203] *Suchanek I*, 764 F.3d at 760.

[204] *See Suchanek v. Sturm Foods*, No. 11-cv-565-NJR-RJD, 2018 U.S. Dist. LEXIS 213658, at **46–47 (S.D. Ill. Jul. 3, 2018) (*Suchanek IV*).

[205] *Suchanek I*, 764 F.3d at 759–61.

[206] *Id.* at 759.

[207] *Id.*

[208] *Id.* at 760 (citing *Amchem*, 521 U.S. at 625).

### 3. Unjust enrichment laws do not vary how Pfizer contends.

Unjust enrichment laws also do not vary how Pfizer argues. First, no state requires that a plaintiff acted "wrongfully;" rather, this remains a consideration regarding whether retention of the benefit would be "unjust." Pfizer cites Arkansas as requiring wrongful conduct, but "[i]t is not necessary, in order to create an obligation to make restitution, that the party unjustly enriched should have been guilty of any tortious or fraudulent act; the question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled?"[209] This rule does not differ in New Mexico or Missouri either. Pfizer's New Mexico case affirmed summary judgment because the plaintiff "consented to [the] use of [its] assets," disproving that the funds were "unjustly retained;" the Court did not require proof of "wrongful" conduct.[210] And in Missouri, courts cite wrongful conduct as *an example* of what makes benefit retention unjust.[211]

Pfizer also errs in arguing New York and Missouri require a "direct" benefit.[212] For New York, Pfizer bases its position primarily on a *California* federal decision, ignoring that *New York* courts have disagreed with this stance. In New York, "[i]t does not matter whether the benefit is directly or indirectly conveyed."[213] For Missouri, Pfizer's authority undercuts its position, which

---

[209] *Frigillana v. Frigillana*, 266 Ark. 296, 306, 584 S.W.2d 30, 34 (1979); *see also Smith v. Whitener*, 42 Ark. App. 225, 228, 856 S.W.2d 328, 330 (1993) ("Even an innocent party who has been unjustly enriched may be compelled to surrender the fruits to another more deserving party."); *Day v. Case Credit Corp.*, 427 F.3d 1148, 1154 (8th Cir. 2005) ("It is not necessary to show the party unjustly enriched committed any wrongdoing.").

[210] *Buke, LLC v. Cross Country Auto Sales, LLC*, 331 P.3d 942, 953 (N.M. 2014).

[211] *See Aughenbaugh v. Williams*, 569 S.W.3d 514, 527 (Mo. Ct. App. 2018) (for the retention of a benefit to be "unjust" there should exist "something more than passive acquiescence, such as fault or undue advantage on the part of the defendant").

[212] Def.'s Resp. at 48.

[213] *Manufacturers Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 117, 559 N.Y.S.2d 704, 708 (1990); *see also Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215, 863 N.E.2d 1012, 1018 (2007) ("a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment"); *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40, 778 N.Y.S.2d 147, 149 (2004) (reversing the district court for

explains no "case applying Missouri law that has rejected a claim for unjust enrichment on the basis that the defendant did not receive a benefit directly from the plaintiff."[214]

Finally, while some states limit recovery to unjust enrichment restitution *or* consumer fraud damages, Plaintiff brings the unjust enrichment claims in the alternative. However, while one "may only *recover* on one claim" in some states,[215] Plaintiff "is not 'required to guess' . . . whether it will be successful" on other claims.[216] Until a recovery, this concern is premature.

## F. Plaintiff's Damage Theories Are Consistent With *Comcast's* Requirements

Plaintiff's damages approaches follow the guidance in *Comcast Corp. v. Behernd.*[217] At the heart of *Comcast* was the fact that the damage calculations also included calculations for legal theories that the district court did not certify. So the class in *Comcast* sought "damages beyond those flowing from the theory of antitrust injury alleged by the plaintiffs . . . ."[218] Here, however, no similar disconnect exists because the damage models track theories of injury available under consumer fraud or unjust enrichment law. The Court should reject Pfizer's argument that the class-wide damage models are not sufficiently tethered to Plaintiff's theory of liability in this case.[219]

---

"erroneously" holding that "indirect purchasers" of a defendant's products could not state a claim for unjust enrichment).

[214] *Cromeans v. Morgan Keegan & Co.*, No. 2:12-CV-04269-NKL, 2013 U.S. Dist. LEXIS 201933, at *5 (W.D. Mo. Nov. 5, 2013).

[215] *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 CIV. 4770 (SAS), 2003 U.S. Dist. LEXIS 5913, at *20 (S.D.N.Y. Apr. 10, 2003) (emphasis added).

[216] *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 197 (D.D.C. 2015).

[217] *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016)

[218] *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013).

[219] Def.'s Resp. at 26–27. Any remaining argument by Pfizer goes to the merits of Mr. Lesch's methodology, not whether it violates *Comcast,* and thus go beyond the Rule 23 inquiry and for rebuttal Plaintiff refers the Court to her motion to strike opposition. *See, e.g., In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919, 946 (C.D. Cal. 2015) ("Admissibility turns on whether [the] methodology is sufficiently reliable; whether it satisfies *Comcast* and shows that a class should be certified is another

***The NJCFA statutorily permits refund damages***. First, while Pfizer contests the basis for a refund,[220] the NJCFA directs that "[a]ny person violating the provisions of the within act *shall be liable for a refund of all moneys* acquired by means of any practice declared herein to be unlawful."[221] On top of this, Pfizer's cases do not apply. *Jones v. ConAgra Foods, Inc.* analyzed refunds under *California* statutes, not the NJCFA.[222] And in *Henry v. Somertime Pool & Spa Serv., Inc.*, the defendant *fixed* the problem at no additional cost to the plaintiff so "[b]y the time of trial, plaintiffs had received all they had bargained for at the cost they had agreed to pay."[223]

***Benefit-of-the-Bargain and Out-of-Pocket Damages***. Damages for the consumer fraud claims corresponds to Plaintiff's liability theory, particularly where a jury could find loss by paying "more for a product that had a lower concentration of active ingredients than its packaging implied."[224] Using accepted measurements of damages, Mr. Lesch analyzed benefit-of-the-bargain damages by starting with the standard definition for such claims, *i.e.*, calculating such losses as "the difference between the value of the property as represented and the actual

---

question altogether . . . .").

[220] Def.'s Resp. at 27.

[221] N.J. Stat. § 56:8-2.11 (emphasis added). *See also In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 383 (E.D.N.Y. 2010) ("seeking a full refund of the purchase price" in case involving New Jersey based defendant).

[222] *Jones v. ConAgra Foods, Inc*., No. C 12-01633 CRB, 2014 U.S. Dist. LEXIS 81292, at *72 (N.D. Cal. June 13, 2014) (involving UCL, FAL and CLRA.").

[223] *Henry v. Somertime Pool & Spa Serv.,* No. A-1179-05T2, 2006 N.J. Super. Unpub. LEXIS 1743, at *6 (Super. Ct. App. Div. July 27, 2006) ("Defendant corrected the diving defect at its own cost without any additional expense to plaintiffs. The jury awarded plaintiffs the sum it believed fully compensated for the loss," *i.e.*, $1,500 which was then trebled). *See also id.* at *3.

[224] *Al Haj II,* 2019 U.S. Dist. LEXIS 117930 at *19.

value received."[225] Similarly, Mr. Lesch analyzed out-of-pocket losses, calculating these as "the difference between the amount paid for the property and the actual value received."[226]

Such approaches are tied to plaintiffs' theory of liability. For example, in *Martin v. Monsanto*, Monsanto represented that a bottle of weed-killer concentrate "Makes up to 23 Gallons," but the bottle made nowhere close to 23 gallons.[227] The plaintiff adequately tied damages to her theory under both a benefit-of-the-bargain and an out-of-pocket model. As to the former, plaintiff's expert calculated an "underfill" percentage which could "then be multiplied by the retail price to obtain a standard damage amount for each bottle, and the total damages can be determined by multiplying the underfill percentage by the aggregate retail sales."[228] Similarly, the expert calculated out-of-pocket damages by taking "the average retail price divided by the number of gallons promised" and multiplying that value "by the number of gallons the products actually supplied, to determine the actual value of the products," then "calculating the difference between this price and the higher price they paid."[229] Tying Plaintiff's theory with the legal requirements, Mr. Lesch analyzed the number of bottles a consumer must purchase a bottle of Maximum Strength to achieve parity with a bottle of Regular.[230] While Pfizer may dispute the

---

[225] Lesch Report at ¶ 26.

[226] Lesch Report at ¶ 27. *See also id.* at ¶ 10 (outlining Plaintiff's allegations of harm).

[227] *Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 U.S. Dist. LEXIS 135351, at *4 (C.D. Cal. Mar. 24, 2017). *See also Mednick,* 320 F.R.D. at 156 ("Damages on a classwide basis can be computed by identifying a comparable product (or products) and calculating the pertinent price difference between this comparable product and the class products.") (citing *Suchanek,* 764 F.3d at 760); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 394 (S.D.N.Y. 2016) (recognizing damage calculations "can be as simple as computing the difference between the cost of the second best product in the product class (without a deceiving label) and the cost of the product at issue (with the label).").

[228] *Id.* at *23.

[229] *Id.* at *25.

[230] Lesch Report at ¶ 29.

inputs, ultimately the jury will determine whether "Maximum Strength Robitussin was 'worth less than what [Plaintiffs and the class] actually paid' – and even worth less than an equal volume of more potent Regular Strength Robitussin . . . ."[231]

     ***Disgorgement of profits is an appropriate unjust enrichment remedy***. As to Pfizer's profit argument, restitution "is measured by the inequitable gain to the defendant, not by the loss to the plaintiff."[232] Given the focus on the gain to a defendant, it follows that "disgorgement of profits is an appropriate remedy for an unjust enrichment claim."[233] Mr. Lesch's focus on profits follows unjust enrichment law.

### III.    CONCLUSION

     Plaintiff respectfully requests that the Court enter an order granting class certification, appoint Hagens Berman Sobol Shapiro LLP as class counsel, and provide Plaintiff all such other relief that the Court deems necessary and appropriate.

---

[231] *Al Haj II,* 2019 U.S. Dist. LEXIS 117930 at *22.

[232] Def.'s Resp. at 28; *Lincolnway Cmty. Bank v. Allianz Life Ins. Co. of N. Am.,* No. 11-CV-5907, 2013 U.S. Dist. LEXIS 132536, at *17 (N.D. Ill. Sep. 17, 2013) (citation omitted).

[233] *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 U.S. Dist. LEXIS 173964, at *14 (N.D. Ill. Dec. 17, 2014). *See also Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, No. 09-CV-00852, 2012 U.S. Dist. LEXIS 125677, at *22–23 (E.D. Wis. Sep. 5, 2012) ("The goal of unjust enrichment is to allow a plaintiff to recover profits . . . .").

Dated: January 24, 2020

Respectfully submitted,

By: _/s/Daniel J. Kurowski_
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Darren Malek
VERITAS LAW GROUP
Kalamazoo Building, 5th Floor
107 W. Michigan Avenue
Kalamazoo, MI 49007
(269) 270-3500
dmalek@veritaslawgroup.net

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a true and correct copy of the

foregoing, *Plaintiff's Reply in Support of Renewed Motion For Class Certification And*

*Appointment Of Class Counsel*, was filed electronically on the 24th day of January, 2020. Notice

and a copy of this filing will be served upon all counsel of record by operation of the Court's

CM/ECF electronic filing system.


  */s/ Daniel J. Kurowski*
  Daniel J. Kurowski